**FILED**

JUN - 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CYNTHIA WASHINGTON,               :
12303 Windbrook Drive
Clinton, Maryland 20735           :

HERBERT DOUGLAS,                  :
3808 71st Avenue
Landover Hills, MD 20784          :

LORENZO JENNINGS,                 :
9701 Varus Place
Upper Marlboro, MD 20772          :

DIONNE MAKINS,                    :
7301 Flag Harbor Drive
District Heights, MD 20747        :

ALPHONSO BRYANT,                  :
1273 Oates Street, N.E.
Washington, D.C. 20002            :

LOWANDA HINTON-SAUNDERS,          :
8402 Potomac Valley Court
Fort Washington, MD 20744         :

DARRYL LOVE,                      :
3622 Austin Street, S.E.
Washington, D.C. 20020            :

MALCOLM POINTER                   :
904 French Street, N.W.
Washington, D.C. 20001
                                  :

        Plaintiffs,               :

        v.                        :

                                  :

DISTRICT OF COLUMBIA,             :
A Municipal Corporation
Serve:  Mayor Adrian M. Fenty     :
c/o Tabitha Braxton
Office of the Secretary for the
Mayor of the District of Columbia :
John A. Wilson Building

Case: 1:07-cv-01031
Assigned To : Urbina, Ricardo M.
Assign. Date : 6/8/2007
Description: Employ. Discrim.

JURY ACTION

Case Number:

Suite 419                                          :
1350 Pennsylvania Avenue, N.W.
Washington, D.C. 20004                             :

                                                   :
Serve:  Attorney General
of the District of Columbia                        :
c/o Gale Rivers, Tonia Robinson
& Darlene Fields                                   :
441 4th St. NW
Suite 600S                                         :
Washington, D.C. 20001

                                                   :
DISTRICT OF COLUMBIA
DEPARTMENT OF CORRECTIONS,                          :
1923 Vermont Avenue, N.W.
Washington, D.C.  20001,                           :

DEVON BROWN,                                        :
Director
District of Columbia                               :
Department of Corrections
1923 Vermont Avenue, N.W.                           :
Washington, D.C.  20001

                                                   :
HENRY R. LESANSKY, Ph.D.,
District of Columbia                               :
Department of Corrections
1923 Vermont Avenue, N.W.                           :
Washington, D.C.  20001

                                                   :
STANLEY WALDREN,
Warden, Central Detention Facility                 :
District of Columbia
Department of Corrections                           :
1923 Vermont Avenue, N.W.
Washington, D.C.  20001                            :

          Defendants.                              :

## COMPLAINT FOR COMPENSATORY, INJUNCTIVE AND DECLARATORY RELIEF

Comes now Plaintiffs Cynthia Washington, Herbert Douglas, Lorenzo Jennings, Dionne

Makins, Alphonso Bryant, Lowanda Hinton-Saunders, Darryl Love and Malcolm Pointer ("DOC

Employees") through their attorneys with HANNON LAW GROUP, LLP and for their

Complaint against Defendants state as follows:

## NATURE OF THE CASE

This is an action for declaratory and injunctive relief and compensatory and punitive

damages on behalf of Plaintiffs, all employees of the District of Columbia Department of

Corrections ("DOC") and members of the bargaining unit of the Fraternal Order of

Police/Department of Corrections Labor Committee ("FOP/DOC").

These DOC Employees were summarily fired by Defendant DOC and Defendant Devon

Brown at a press conference on July 26, 2006, following a highly publicized Jail Escape by two

of the most dangerous offenders housed at the D.C. Jail. Defendant Devon Brown assigned the

administrative removal hearings for the DOC Employees to the D.C. Office of Administrative

Hearings. He did so because "it is necessary and desirable that the administrative proceedings

are held by a body that is independent of the Department of Corrections and that OAH possesses

the expertise and resources for conducting these hearing." The OAH Judges issued a Report and

Recommendation in each case on December 11, 2006, uniformly declaring that the DOC had

violated their constitutional rights and recommending they be returned to work. By the

requirements of D.C. personnel laws and the Collective Bargaining Agreement between

Defendant DOC and the FOP/DOC, Defendant Devon Brown was compelled to follow the

Recommendations and return the DOC Employees to work. Defendant Brown refused to return

the DOC Employees to work.

On March 12, 2007, the DOC Employees filed a Petition for Writ of Mandamus with the

District of Columbia Court of Appeals seeking an order compelling Defendants DOC and Devon

Brown to return them to work. On March 15, 2007, Defendants DOC and Devon Brown

rescinded the summary removal action, placed the DOC Employees on paid administrative leave, and served them with new notices of proposed termination based on the same allegations on which the OAH Judges had ruled. Defendant Devon Brown assigned the hearing (hereafter the "Do Over") to Defendant Henry R. Lesansky, Ph.D., the Health Services Administrator for Defendant DOC. Defendant Devon Brown did so with the expectation that Defendant Lesansky, hand-picked by Brown, would do Brown's bidding and recommend that Plaintiff DOC Employees be fired.

As a consequence of the Reports and Recommendations of the OAH Judges, Defendants DOC and Devon Brown are bound by law to return the DOC Employees to work. Defendants' refusal to return the DOC Employees to work and Defendants' manufacture of an unlawful "Do Over" before a Hearing Officer who owes his job to Defendant Devon Brown violate the Fifth Amendment of the United States Constitution by depriving Plaintiffs of their constitutionally protected right to their jobs without due process.

## JURISDICTION

Jurisdiction of this Court is found in Title 28 U.S.C. §§ 1331, 1342 and 1367 and in Title 42 U.S.C. §§ 1983 and 1988.

## PARTIES

1.      Plaintiffs are employees of the D.C. Department of Corrections and members of the Bargaining Unit of the Fraternal Order of Police, Department of Corrections Labor Committee.

2.      Defendant DISTRICT OF COLUMBIA is a municipal corporation that employs Defendants DEVON BROWN, STANLEY WALDREN, HENRY R. LESANSKY, Ph.D., and

Plaintiffs to operate the Department of Corrections. Defendant DEPARTMENT OF

CORRECTIONS is an agency of the DISTRICT OF COLUMBIA.

### FACTS COMMON TO ALL COUNTS

Plaintiffs submit that the following facts are common to all counts:

#### A.    Factual Background

3.    On June 3, 2006, two inmates escaped from the Central Detention Facility

("CDF") by smashing out the door and window of the Warden's office. The two escapees,

Joseph Leaks and Ricardo Jones, were among the most dangerous offenders housed at the DC

Jail. Inmate Leaks was awaiting trial in the D.C. Superior Court on a charge of Accessory After

the Fact to First Degree Murder While Armed. He had also violated his parole arising from a

1998 conviction for Assault with a Deadly Weapon. Defendant DOC also contends that Leaks

had a prior escape from the CDF in October of 2005, although no record of such escape was in

Leaks' Institutional File. Ricardo Jones was awaiting trial in the D.C. Superior Court in two

cases, one charging Assault with Intent to Kill and a second charging Murder in the First Degree.

Leaks and Jones are co-defendants in the murder case. Leaks and Jones are also suspects in an

Assault with Intent to Kill investigation in Greensboro, North Carolina.

4.    The escape was widely reported in the press, and was a direct result of the DOC's

and Director Devon Brown's failure to remedy safety issues which had been repeatedly brought

to his attention by the FOP/DOC Labor Committee. For example, during monthly meetings

before the jail escape, FOP representatives repeatedly told Defendant Brown that assaults on

corrections officers were increasing daily, a warning of lack of manpower. Defendant Brown's

response was to prepare posters warning inmates not to assault corrections officers and to

produce a videotape to be played to the inmates. In explaining news articles about increased

assaults, Defendant Brown explained that it was an election year, and politicians seek any means to get their names in the paper. Defendant Brown knew that in-service training of corrections officers was not being conducted. Defendant Brown knew that the DC Jail was woefully understaffed, and that corrections officers were subject to compulsory drafting to work double shifts. Defendant Brown knew that the DOC had no concrete plans for recruitment and training of new corrections officers. On May 18, 2006, Mr. Brown admitted that he was concerned regarding extensive overtime, and that he had concerns that overtime was adversely affecting the alertness and effectiveness of corrections officers. In February of 2006, the overtime budget for the DOC had been exhausted and the agency was $3,000,000 over budget.

5.    The complaints by the FOP/DOC at these monthly meetings foresaw the jail escape. On the day of the escape, the DC Jail was understaffed by 58 out of the 121 positions required. The "solution" was to force 41 officers to work overtime on that shift and to "shutdown" 17 posts. Seven of the DOC Employees fired were either working forced overtime, working posts for which they had not been trained, or working understaffed posts. On the morning of the escapes, representatives of the FOP/DOC requested that the Jail be locked down because of the shortage of personnel. This request was denied.

6.    On June 4, 2006, the two escapees were recaptured without incident. In an effort to deflect continued public attention from deplorable working conditions, severe management deficiencies, and criticism of his leadership of the DOC, Director Devon Brown on June 5, 2006, issued written notification to twelve DC Jail employees putting them on paid administrative leave pending further investigation of the escape. Those employees included six (6) Correctional Officers, one (1) Lead Correctional Officer (Sgt.), three (3) Correctional Treatment Specialists,

one (1) Correctional Program Specialist, and one (1) Captain. Among this group were the Plaintiffs.

7.    After the escape, public scrutiny continued. On June 26, 2006, a DOC Oversight Hearing chaired by Councilmember Phil Mendelson was held to continue review of the jail break and general safety issues at the DC Jail. At this hearing, Councilmember Mendelson questioned DOC Director Brown and asserted that the DOC was unduly delaying the completion of its investigation into the inmate escapes. Director Brown did not disclose to the Council that the Jail was dangerously understaffed that day, and that he knew that forced overtime was causing corrections officers to be less reactive and less efficient.

8.    Facing pressure from both the public and the D.C. City Council, during his testimony at the June 26, 2006 hearing, Director Brown announced that as a result of the escape, the DOC evaluated its operation and made immediate improvements. None of these improvements addressed understaffing and the increasing incidents of assaults on corrections officers.

9.    A month later, on July 26, 2006, the Mayor, DOC Director Brown and the City Administrator, Robert Bobb, spoke at the Mayor's Weekly Press Briefing, at which time they announced the summary firings of eleven of the thirteen DOC employees who had been on suspension in connection with the jail break. Plaintiff Employees were among those fired. Not one of the Plaintiffs or their Union was notified in advance of this public announcement.

10.    During the Press Briefing, DOC Director Brown coupled the announcement of the firings with a statement that there was an ongoing criminal investigation into the jail escapes. The Press Briefing and the summary firings, together with the announcement of a criminal investigation, were intended to and had the result of humiliating and embarrassing the discharged

Union members, casting them in the public light as felons who abetted a jail escape. These Union members learned of their firing from family and friends who had seen or heard the news in the media. The Chairperson of the FOP/DOC Labor Committee learned of the terminations from a television news reporter who called to obtain a reaction to the firings.

11.     Defendant Devon Brown made further statements to the press. On June 6, 2006, he was reported by the Washington Times to have stated that "authorities are investigating 'quite vigorously' the question of whether the two inmates had help in the escape." He criticized those Plaintiffs who worked in classification of inmates, stating that "we can definitely say that Mr. Leaks should not have been authorized to have the classification that allowed him free movement on detail." Defendant Brown coupled this, again, with a statement that the Plaintiffs were suspended "pending a criminal investigation of the jailbreak." Defendant Brown, whose office is located on the other side of the city from the DC Jail, told a citizens group that "When I arrived on the scene, the first thing I asked was, 'Did the siren go off?'" Defendant Brown insisted that the siren had been sounded, when it had not. Defendant Brown is reported as having stated that he would "make staff changes at the jail, including bringing in more younger corrections officers, who are physically up to the demands of the job." The Washington Post reported Defendant Brown as stating "investigators want to determine if any of the officers deliberately aided in the escape or unintentionally made mistakes that contributed to the breakout." In response to the increased level of assaults on corrections officers, Defendant Brown is reported by the D.C. Examiner to have stated "The older we get our reaction time is not as good, so if something is happening, a younger correctional force may be able to respond to it quicker before it escalates."

12.    In order to accomplish this public humiliation and summary firing, the DOC engaged in an unlawful and unconstitutional revision of existing D.C. laws which would have prevented them from conducting a summary discharge in a public press briefing. Id. The District of Columbia Personnel Manual ("DCPM"), until the Mayor's Weekly Press Briefing of July 26, 2006, provided that in cases of Summary Removal, proper written notification of the action was to be provided to the employee and the FOP/DOC within three (3) days of removal ("3 Day Rule"). DCPM § 1616.4. That notice must provide detailed information about the removal, including the reasons for Summary Removal along with identification of critical deadlines in the removal process and pertinent employee rights. Id. However, on the very date of the planned news conference, Director Brown and D.C. officials conspired to amend this provision of the DCPM so as to permit these firings in a summary fashion at the Mayor's Press Conference. The amendment, specifically applying to only these Plaintiffs, provided that the information supporting summary removal need not be provided until 30 days after removal. (See App. 15 at 8).

13.    A second change was made to the DCPM on July 28, 2006, to broaden the definition of employees to whom the change applied. The July 28, 2006 variation augments the July 26, 2006 amendment by including a twelfth employee who was summarily removed (on July 28, 2006) and provides that any subsequent firings resulting from the investigation into this jail break also will not be subject to the 3 Day Rule. Id. This variation is completely unlawful and constitutes an ex post facto deprivation of due process rights to the discharged DOC Employees, all to enable Director Brown to divert criticism from his leadership to the rank and file corrections officers and employees of the DOC. Moreover, compliance with the 3 Day Rule would have required disclosure of tape recorded interviews of the Plaintiffs, which would have

laid to rest the public assertions by Director Brown that the jail escapes could only have occurred as a result of a criminal conspiracy among correctional officers and inmates: a ludicrous accusation in light of the facts then known to Director Brown regarding the security deficiencies at the DC Jail.

14.    Summary Removal is permitted under D.C. law when an employee's conduct offers an immediate threat to the integrity of governmental operations; constitutes an immediate hazard to the agency, to other District employees or to the employee; or, is detrimental to public health, safety, or welfare, as provided for in D.C. Code § 1-616.51. None of these circumstances existed on or even near the date of the Respondents' Press Briefing that would justify an immediate firing. The summary removal of the Plaintiffs was unjustified and unconstitutional. These suspended employees were on paid administrative leave and posed a threat to no one. There was absolutely no lawful basis to summarily remove these employees at that particular time, as later confirmed by the OAH Judges in their Reports and Recommendations. The use of the Summary Removal procedure was unwarranted, and the fact that Defendant DOC and D.C. Office of Personnel officials manipulated the law to achieve this gratuitous end is a clear abuse of power, and a violation of the constitutional rights of these DOC Employees.

15.    On or about August 1, 2006, Plaintiff DOC Employees were formally delivered – or summoned to pick up – a packet of materials and a notice advising them that they had been summarily discharged from their employment with the DOC. This firing was accomplished with no notice and no opportunity to be heard of any kind in violation of the constitution of the United States. The written notice required by law was not prepared for each of the DOC Employees until August 24, 2006. That notice provided as follows:

> The Office of Administrative Hearings will conduct the administrative review and/or hearing of the proposed removal actions. . . . In conducting the

administrative review and/or hearing, your appointed Hearing Officer will review all of the documents giving rise to the charge . . . , this written notice and your response, if there is one. After conducting the administrative review, your assigned Hearing Officer will make a written report and recommendation to Director Devon Brown, the Deciding Official, <u>who will issue a final decision</u>.

(Emphasis supplied).

## B.    Procedural Background

16.    After the summary firings, Defendants DOC and Devon Brown then entered into a Memorandum of Understanding ("MOU") with the Office of Administrative Hearings ("OAH") to effectuate the promises made to the Plaintiffs in the letters of August 24, 2006, as set forth in ¶ 15 above. Pursuant to the MOU the Judge of the OAH would conduct the administrative hearings required in these cases consistent with Chapter 16 of the DCPM and the Collective Bargaining Agreement between Defendant DOC and FOP/DOC ("CBA"), and as the DOC Employees were advised in their written notices of August 24, 2006. Section 1612.2 of the DCPM requires that an "administrative review shall be conducted by a hearing officer." 6 DCMR 1612.2. Defendant Brown specifically noted in the MOU that "it is necessary and desirable that the administrative proceedings are held by a body that is independent of the Department of Corrections and that OAH possesses the expertise and resources for conducting these hearing." Defendants DOC and Devon Brown promised that this Agreement would "remain in effect <u>through the latest date that the Director of DOC issues a final decision</u> in any of the Disciplinary Actions." (Emphasis supplied).

17.    DOC Director Devon Brown was required by the DCPM to issue a Final Decision within 45 days of the delivery of the summary removal notices:

The final decision in the case of summary suspension or summary removal action taken pursuant to §§ 1615-1616, respectively, shall be rendered not later than forty-five (45) days from date of delivery of the summary suspension or summary removal notice, as appropriate except that the period may be extended as follows:

(a) when the employee requests and is granted an extension of time in which to respond under § 1611.2; or

(b) when the employee agrees to an extension of time requested by the agency.

6 DCMR 1614.3.

18.    In addition, both the CBA and the DCPM require that DOC Director Devon

Brown follow the recommendation of the OAH Judges in this case. Article 11, Section 9(D) of

the CBA specifically states (emphasis supplied):

Deciding Official shall issue a final decision after reviewing the recommendation of the Disinterested Designee/Hearing Officer. The deciding official may sustain or reduce the penalty recommended by the Disinterested Designee, remand the matter for further consideration by the Hearing Officer, or dismiss the charge but may not increase the penalty recommended by the Disinterested Designee/Hearing Officer.

Furthermore, Section 1613.2 of the DCPM also states with specificity that (emphasis supplied):

The deciding official shall either sustain the penalty proposed, reduce it, remand the action with instruction for further consideration, or dismiss the action with or without prejudice, but in no event shall he or she increase the penalty. 6 DCMR § 1613.2.

19.    The original Summary Removals were dated July 26, 2006. The DOC arranged

for the D.C. Personnel Regulations to be altered in order to extend the DOC's deadline to present

the requisite elements of Summary Removal to the Employees. On or about August 24, 2006,

the DOC issued its written "follow-up" Summary Removal notice to the Employees. The notice

required a six (6) day deadline for the employees to respond, and the Employees abided by that

deadline. The Forty-five within which Defendant Brown must make a final decision from the

date of the "follow-up" Summary Removal notice would have been October 7, 2006.

20.    However, at a September 8 status hearing, the DOC admitted that the record upon

which the Agency based the Summary Removal was incomplete. As no administrative review

could take place with an incomplete record, the OAH granted the DOC until September 15, 2006 to complete the record. The Judges of the OAH recognized that this action implicated the 45-day deadline to issue a final decision, unless the employees requested an extension of time, pursuant to 6 DCMR 1614.3(a). The parties agreed at the September 8, 2006 status conference to extend the deadline for the Agency Final Decision to October 25, 2006, because of the DOC's need for additional time to complete the record. The OAH's September 11, 2006 scheduling order memorializes this agreement and the deadline. On September 27, 2006, the employees filed individual responses to the removal notice, a motion for an extension of the deadline for responses, as well as a Motion for Summary Dismissal. The OAH granted the extension of the deadline for responses and accepted them accordingly.

21.    The DOC filed its reply to the Motion for Summary Dismissal of the matter on October 13, 2006. The parties again met at a second status hearing on the Motion for Summary Dismissal on October 19, 2006. Following the administrative hearing, the OAH Judges issued an order on October 26, 2006 denying the Employee's Motion for Summary Dismissal submitting to the parties that it would consider the arguments contained in the Motion as part of the individual reports and recommendations to be issued for each Employee. In the October 26, 2006 Order, denying Employees' Motion for Summary Dismissal, the OAH Judges also noted that "the administrative review must be completed before a final decision can be issued," and that it would issues its report and recommendation at that time. Consequently, the 45-day deadline for a final decision was once again modified and required that the DOC Director issue his final decision by December 15, 2006. The OAH issued a Report and Recommendation in each case on December 11, 2006, concluding that the summary removals could not be sustained and recommending that the Employees be returned to work.

22.    Instead of issuing a final decision returning the Employees to work as he was required to do by the DCPM and the CBA, and as he promised in the MOU and in the August 24, 2006, written notices to the DOC Employees, DOC Director Devon Brown submitted remand notices for most of the employees,[1] well beyond the 45 day deadline, on January 9, 2007, directing the panel of administrative law judges to re-consider the determination and recommendations included in their Final Reports and Recommendation issued to the DOC pursuant to 6 DCMR 1616.6(a).

23.    The Employees filed a Motion to Strike the Remand Notices on January 16, 2007, arguing that the Remand Notices were untimely. The DOC filed its response to the Motion to Strike the Remand Notices on January 29, 2007 and the Employees filed their Reply on February 2, 2007. A hearing was held by the OAH Judges on February 5, 2007 in reference to the Remand Notices and the subsequent Response by the DOC. The OAH Judges issued their Report and Recommendation on Remand in the individual Employees' cases on March 2, 2007, and once again recommended that Director Devon Brown reinstate the Plaintiff DOC Employees. Further, the OAH Judges opined that the Remand Notices were filed late and that Director Brown unlawfully violated the 45-Day Rule requiring a final agency decision.

24.    In each Report and Recommendation issued by the OAH in this matter, the Judges found that Summary Removal could not be sustained. Further, each report contained a procedural summary which acknowledged that the October 26, 2006 Order established a

---

[1]    Director Brown sent by letter Remand Notices to the single OAH Judge (Hon. Paul B. Handy) hearing the cases for Darryl Love and Malcolm Pointer on December 14, 2006. The Remand Notices contained no certificate of service. They were not filed with the OAH, nor were they served on their counsel or any other counsel in the cases. However, the OAH Judge assumed that the parties were provided with copies of the Notice. On December 28, 2006 the OAH Judge signed and dated a Report and Recommendation After Remand ("Report") in each of the two cases. The Report did not contain a completed Certificate of Service. At the February 5, 2007 status hearing, it was brought to the attention of the OAH Judge that none of the parties received a copy of the Report. Consequently, the OAH Judge ultimately refused to consider the Remand Notices. He also found that there was no basis to reconsider his previous recommendation.

deadline for the final agency decision as December 15, 2006. From the outset of this entire process, Defendants DOC and Devon Brown have refused to comply with the established rules of due process set out by the DCPM, the CBA, the MOU, and the August 24 notice of proposed removal. The regulations are clear that a final decision in these types of cases must be rendered within 45 days of delivery of the record. The regulations and the CBA are also clear that Director Brown may not depart from the recommendations of the OAH Judges because they recommend reinstatement. Director Brown is not free to impose a harsher sanction.

25.     When Director Brown failed to issue a final decision, Plaintiffs filed a Petition for Writ of Mandamus with the District of Columbia Court of Appeals on March 12, 2007, to compel Defendant Brown to return them to work. Four days later, senior management at the DOC simultaneously rescinded and cancelled the proposals for summary removal of the Employees in order to avoid an adverse decision by the District of Columbia Court of Appeals. Director Brown, and others with the Department of Corrections including their counsel, conspired among themselves to lead Plaintiffs to believe that their proposed discipline was over and they were being returned to work permanently. Specifically, DOC employees Joan E. Murphy and Denise Shell were instructed to contact Plaintiffs directly – who were then represented by counsel – and lead the employees to believe they were being returned to work. In violation of ethical rules prohibiting a party from contacting another party except through counsel, Murphy and Shell lured the joyful Plaintiffs to report to DOC headquarters on Friday, March 16, 2007, to be "reinstated."

26.     In furtherance of this scheme, on the afternoon of March 15, 2007, Defendant Devon Brown himself placed a personal telephone call to Cpl. Nila Ritenour, Chairperson of the FOP/DOC. The FOP/DOC was also represented by counsel in the jail escape matter at that time,

as Director Brown well knew. This telephone call was in violation of ethical rules prohibiting a party from contacting another party except through counsel, a rule that Director Brown was aware of by virtue of his having attended law school. In that telephone call, Director Brown told Cpl. Ritenour that all of the Plaintiffs would be reinstated to their positions with all back pay and benefits. Director Brown said he wanted Cpl. Ritenour to hear the news directly from him. He stated that he had just signed the papers for reinstatement. It was a congratulatory telephone call, even though Director Brown well knew that he intended to immediately place the Plaintiffs on leave pending a further effort to have them fired. Director Brown did not disclose his intention to conduct an unlawful "Do Over", knowing full well that Cpl. Ritenour would report the "good news" to Plaintiffs and others.

27.      Similarly, on March 15, 2007, counsel for the Plaintiffs telephoned counsel for Defendant Department of Corrections to confirm the "good news." Counsel for Defendant DOC had been directed by Defendant Brown not to disclose the truth as to his intended conduct. Consequently, counsel for Defendant DOC confirmed to counsel for Plaintiffs that the DOC "is bringing them all back to work."

28.      When Plaintiffs reported to DOC headquarters in the morning of March 16, 2007, they were indeed given a reinstatement letter promising back pay and benefits. At the same time, Plaintiffs were given a second letter putting them all on leave pending a new hearing to sustain Defendant Brown's pre-ordained desire to have them all fired. As Defendant Brown no doubt anticipated, at roll call at the D.C. Jail early that morning, Cpl. Ritenour had announced the "good news", only to be humiliated when Defendant Brown's true intentions became known. Plaintiffs to this date, with one exception, have not received their back pay and benefits.

29.    Defendant Warden Stanley Waldren signed the March 12, 2007, notices of proposed removal without reading them, without conducting any investigation, and under direct orders of Defendant Devon Brown.

30.    Defendant Henry R. Lesansky, Ph.D., employed by the DOC, was appointed to be the new hearing officer for the proposed termination hearings. Dr. Lesansky is not an "independent" hearing officer as promised to the DOC Employees in their August 24, 2006, notices of removal. In February of 2002, Dr. Lesansky resigned from his position as the top official with the Maryland Department of Juvenile Justice after disclosures that he twice understated the number of assaults against teens at Maryland juvenile jails. Dr. Lesansky became unemployable in corrections work until hired by the District of Columbia. He serves at the pleasure of Defendant Devon Brown.

31.    Defendants refusal to adhere to the procedures for adjudication of the firings of Plaintiffs and their efforts to have a "Do Over" violate Plaintiffs' Fifth Amendment rights to due process of law and an abridgement of their Fifth Amendment property interest in their Career Service positions with Defendant DOC.

### COUNT I—Violation of 42 U.S.C. §1983

32.    Plaintiffs repeat each and every allegation contained in all preceding paragraphs and incorporate the same herein.

33.    Defendants in their own right and in conspiracy and agreement with each other and others within the DC DOC and the DC Government sought to and did violate the constitutional rights of Plaintiffs in that Defendants sought to and did deprive Plaintiffs of life, liberty and property without due process of law.

34. The actions of Defendants and those of their co-conspirators were done with evil motive, actual malice, oppression, with intent to injure, in willful disregard for the rights of Plaintiffs, and these actions were outrageous, grossly fraudulent, and reckless towards the well-being and rights of Plaintiffs.

35. In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court advanced the proposition that government employees are afforded procedural guarantees before they can be terminated. These guarantees are born of the Due Process Clause of the United States Constitution. The resulting and inherent property interest in employment derives from a legitimate claim of entitlement that arises not from the United States Constitution, but from independent sources such as state statutes, agency rules or policies, or agreements as to employment. *Board of Regents v. Roth*, 408 U.S. 564, 577-78 (1972).

36. The Due Process analysis found in *Loudermill* applies to DC government employees and, in this case, the DOC employees specifically. "It is undisputed that the Comprehensive Merit Protection Act ("CMPA") creates a property interest for employees governed by it. The CMPA establishes a Career Service for employees in which they are guaranteed to be promoted based on merit and cannot be terminated without cause.... Under CMPA, employees can only be disciplined for cause and prior notice must be given." *Fonville v. D.C.*, 448 F. Supp. 2d 21 (D.D.C. 2006) (internal citations omitted). See also, *D.C. Department of Corrections v. Teamsters' Union Local*, 554 A.2d 319, 323 (D.C. 1989).

In this context, "agencies cannot relax or modify regulations.... [W]hen agencies establish ... pre-termination procedures they are bound to follow them." *Lerner v. District of Columbia*, 362 F. Supp. 2d 149, 161, 2005 U.S. Dist. LEXIS 3565 (D.D.C. March 4, 2005), citing *Lopez v. FAA*, 355 U.S. App. D.C. 51, 318 F.3d 242, 247 (D.C. Cir. 2003). Also, "[t]he D.C. Circuit has not

required any additional due process requirements [beyond those defined in *Loudermill*] for the termination of its public employees." *Crockett v. D.C. Metro. Police Dep't.*, 293 F. Supp. 2d 63, 68 U.S. Dist. LEXIS 23632 (2003), citing *Kropat v. Fed. Aviation Admin.*, 333 U.S. App. D.C. 239, 162 F.3d 129, 132-34 (D.C. Cir. 1998).

37.    Plaintiff DOC Employees were fired without notice and without an opportunity to be heard.

38.    In order to accomplish a very public humiliation and summary firing of the Plaintiffs, Defendants engaged in an unlawful and unconstitutional revision of existing DC laws which would have prevented them from such conduct otherwise. Plaintiff DOC Employees contend that the summary removal provisions of DCPM § 1616.4 are unconstitutional and unconstitutional as applied to them.

39.    Plaintiff DOC Employees contend that the summary revision of the 3 Day Rule by promulgation of variations to the DCPM was unconstitutional and unconstitutional as applied to them.

40.    Plaintiff DOC Employees contend that Defendants are without legal authority to require that the Plaintiffs be subject to the administrative process a second time for a disciplinary action that has been adjudicated in their favor. The DOC has been unable to cite any legal authority which gives them the right to a "Do Over".

41.    Defendants are obligated by the constitution to abide by internal, procedural regulations defining their due process rights when proposing the dismissal of employees. See Lopez v. FAA, 318 F.2d 242, 246 (D.C. Cir. 2003). The Supreme Court has long recognized that "an agency is bound to the standards by which it professes its actions to be judged." Service v. Dulles, 354 U.S. 363, 373-76 (1957). Furthermore, a government agency must engage in

"scrupulous compliance" with its own procedures for discipline and removal of employees. *Lerner v. District of Columbia*, 362 F. Supp.2d 149, 161 (2005) U.S. Dist. LEXIS 3565 (D.D.C. March 4, 2005). (See also *Mazaleski v. Treusdell*, 562 F.2d 701, 720 (D.C. Cir. 1977) (stating, "[w]here .... a government employee has no procedural due process rights apart from those which the agency has chosen to create by its own regulations, scrupulous compliance with those regulations is required to avoid any injustice.")). Any manipulation of such procedures is an unconstitutional violation of due process.

42.     Government agencies are precluded from modifying or relaxing regulations that "provide the only safeguard [employees] have against unlimited agency discretion in hiring and termination." *Lopez v. FAA*, 318 F2d. at 247. Defendant DOC solicited the assistance of the OAH and asked that it serve as the Hearing Officer in this matter. At the conclusion of the administrative proceedings outlined by the CBA, the ALJ's issued recommendations that all the Employees be returned to work. The CBA has specifically articulated the authority of the DC DOC with respect to the Hearing Officer's recommendations. Defendant DOC and Director Devon Brown may not, at their own whim, confer upon themselves more authority than the controlling regulation allows. In this case, the controlling regulations, the CBA and the CMPA, require that the Employees' be returned work.

43.     As a direct and proximate result of Defendants' violating Plaintiffs' Fifth Amendment rights, Plaintiffs suffered loss of income and other employment benefits and damage to their professional and personal reputations. Further, as a direct and proximate cause of Defendants' violating their Fifth Amendment rights, Plaintiffs have endured mental and physical pain and suffering, embarrassment, humiliation, mental anguish, and the costs and attorneys' fees of this action.

## COUNT II—Defamation Plus

44.    Plaintiffs repeat each and every allegation contained in all preceding paragraphs and incorporate the same herein.

45.    Defendants immediately following the jail escape and thereafter negligently made and published false statements to others both inside the D.C. government and publicly about Plaintiffs that were defamatory and defamatory per se, as a consequence of which the Plaintiffs suffered actual injury in their trade, profession, community standing and which lowered the Plaintiffs in the estimation of their community.

46.    While defamation and slander typically do not provide a basis for recovery in a due process claim, "a plaintiff may prevail, however, if he can demonstrate either a 'reputation plus' claim, that is defamation accompanied by an adverse employment action, or 'foreclosure claims,' in which the government's actions foreclosed potential job opportunities." See *Fonville* at 28 (internal citations omitted).

47.    In *Fonville*, this court defined the requirements for "reputation plus" as those "comments that imply an inherent or persistent personal condition." *Id.* Specific examples of those behaviors that rise to a constitutional violation include "accusations of dishonesty, commission of a serious felony, manifest racism, serious mental illness, or a lack of intellectual ability." See *Fonville* at 29.

48.    Here, the Defendants have engaged in behavior that rises to the level of a constitutional violation. Director Brown frequently and publicly has accused the Plaintiffs of perpetrating criminal acts in connection with the jail escape. He accused them of being too old to do their jobs. He accused them of being unable to apply the classification system. One example of this is a press release that has been on the DOC web site since July 27, 2006. It

states, in relevant part, "As a result of this investigation, 11 individuals have been terminated from employment with the DOC *for their roles leading to the escape* and to the breach of security.... The United States Attorney's Office is currently conducting a criminal investigation into the escape." See DC DOC website at www.dc.gov (emphasis added).

49.    As a direct and proximate result of Defendants' defamatory acts, Plaintiffs suffered loss of income and other employment benefits and damage to their professional and personal reputations. Further, as a direct and proximate cause of Defendants' defamatory acts, Plaintiffs have endured mental and physical pain and suffering, embarrassment, humiliation, mental anguish, and the costs and attorneys' fees of this action.

## COUNT III—Intentional and Negligent Infliction of Emotional Distress.

50.    Plaintiffs repeat each and every allegation contained in all preceding paragraphs and incorporate the same herein.

51.    Defendants acted in an extreme and outrageous fashion and negligently in terminating Plaintiffs with the intent and/or result of causing them emotional distress.

52.    As a direct and proximate result of Defendants' acts, Plaintiffs suffered loss of income and other employment benefits and damage to their professional and personal reputations. Further, as a direct and proximate cause of Defendants' acts, Plaintiffs have endured mental and physical pain and suffering, embarrassment, humiliation, mental anguish, and the costs and attorneys' fees of this action.

## COUNT IV- Injunctive Relief

53.    Plaintiffs repeat each and every allegation contained in all preceding paragraphs and incorporate the same herein.

54.     Plaintiffs request the Court to enjoin the Defendants' from pursuing any discipline as a result of the jail escape.

55.     Plaintiffs request that they be restored to their rightful positions within the Department of Corrections with restoration of all back pay, lost benefits, and the costs and attorneys' fees of this and all other actions resulting from defending the Plaintiffs from their unconstitutional terminations.

### COUNT V—Compensatory and Punitive Damages and Attorneys' Fees

56.     Plaintiffs repeat each and every allegation contained in all preceding paragraphs and incorporate the same herein.

57.     Defendants acted with evil motive, actual malice, deliberate oppression, with intent to injure Plaintiffs and in willful disregard for the rights of Plaintiffs.  Defendants' conduct was itself outrageous, grossly fraudulent, and reckless toward Plaintiffs, for which Plaintiffs demand punitive damages and the costs and attorneys' fees of this action in an amount to be determined by a jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that they be awarded compensatory damages in an amount in excess of the jurisdictional amount in controversy, punitive damages to be determined by a jury, costs and attorneys' fees of this action, a declaration that they are entitled to be reinstated unconditionally to their positions, and a permanent injunction returning them to their former positions with all back pay and benefits to which they are entitled, including attorneys' fees of this action and all other actions resulting from defending the Plaintiffs from their wrongful terminations, and such further relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all Counts triable by jury and of all factual allegations required for the determination of this Complaint.

Respectfully submitted,

HANNON LAW GROUP, LLP

J. Michael Hannon, #352526
1901 18th Street, NW
Washington, DC 20009
(202) 232-1907
Fax: (202) 232-3704
jhannon@hannonlawgroup.com

*Attorneys for Plaintiffs*

**I (a) PLAINTIFFS**

Cynthia Washington, Herbert Douglas, Lorenzo Jennings, Dionne Makins, Alphonso Bryant, Lowanda Hinton-Saunders and Darryl Lover

88888

**DEFENDANTS**

District of Columbia, D.C. Department of Corrections, Devon Brown, Henry Lesansky, Ph.D., and Stanley Waldren

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**    88888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

J. Michael Hannon, Esq.
HANNON LAW GROUP, LLP
1901 18th Street, N.W.
Washington, D.C. 20009

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-01031
Assigned To : Urbina, Ricardo M.
Assign. Date : 6/8/2007
Description: Employ. Discrim.

JURY ACTION

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(5)

| G. Habeas Corpus/ 2255 | H. Employment Discrimination | I. FOIA/PRIVACY ACT | J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☑ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| K. Labor/ERISA (non-employment) | L. Other Civil Rights (non-employment) | M. Contract | N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Title 28 U.S.C. §§ 1331, 1342 and 1367 and in Title 42 U.S.C. §§ 1983 and 1988; violation of civil right to due process of law.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____ Check YES only if demanded in complaint   JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE June 8, 2007   SIGNATURE OF ATTORNEY OF RECORD _Michael Hannon_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

