**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CYNTHIA WASHINGTON, *et al.,* | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Case Number: 1:07-cv-01031 (RMU) |
| | : | |
| v. | : | |
| | : | |
| DISTRICT OF COLUMBIA, *et al.,* | : | |
| | : | |
| Defendants. | : | |

**MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

Come now Plaintiffs Cynthia Washington, Herbert Douglas, Lorenzo Jennings, Dionne

Makins, Alphonso Bryant, Lowanda Hinton-Saunders, Darryl Love, Malcolm Pointer and

Shantell Hatton ("DOC Employees") through their attorneys with HANNON LAW GROUP,

LLP and present this Motion for Leave to File a Second Amended Complaint and state as

follows:

In this matter, the Plaintiffs filed their original Complaint on June 8, 2007.  A First

Amended Complaint was filed as a matter of right on July 12, 2007, for the sole purpose of

adding Plaintiff Shantell Hatton to the suit.  The Defendants have filed a Motion to Dismiss the

First Amended Complaint.

Undersigned counsel sought but did not receive consent from Assistant Attorney General

David Jackson to file the Second Amended Complaint, attached hereto, in this action. Therefore

Plaintiffs request this Court grant leave to file the Second Amended Complaint.  Rule 15(a) of

the Federal Rules of Civil Procedure allows a party to amend a pleading "by leave of court" and

"leave shall be freely given when justice so requires."  The interests of justice are served by

granting this leave to amend as Plaintiffs' Second Amended Complaint seeks merely to clarify

elements of the original Complaint filed in this matter.  Defendants will not be prejudiced by this action.

Dated September 18, 2007                                  Respectfully submitted,

                                                         HANNON LAW GROUP, LLP


                                                         _____/s/ J. Michael Hannon_____
                                                         J. Michael Hannon, #352526
                                                         1901 18th Street, NW
                                                         Washington, DC 20009
                                                         (202) 232-1907
                                                         Fax:  (202) 232-3704
                                                         jhannon@hannonlawgroup.com

                                                         *Attorneys for Plaintiffs*



## CERTIFICATE OF SERVICE

        I hereby certify that a copy of the foregoing, **Plaintiffs' Motion for Leave to File Second Amended Complaint, Memorandum of Points and Authorities in Support of Plaintiffs' Motion, Second Amended Complaint for Compensatory, Injunctive and Declaratory Relief and form of Order** were sent via electronic filing, this 18th day of September, 2007 to:

David Jackson, Esq.
Office of the Attorney General
441 Fourth Street, NW
6 South
Washington, DC 20001


                                                         _____/s/ J. Michael Hannon_____
                                                         J. Michael Hannon

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CYNTHIA WASHINGTON, *et al.,* | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Case Number: 1:07-cv-01031 (RMU) |
| | : | |
| v. | : | |
| | : | |
| DISTRICT OF COLUMBIA,  *et al.,* | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE
TO FILE SECOND AMENDED COMPLAINT**

Come now Plaintiffs Cynthia Washington, Herbert Douglas, Lorenzo Jennings, Dionne Makins, Alphonso Bryant, Lowanda Hinton-Saunders, Darryl Love, Malcolm Pointer and Shantell Hatton ("DOC Employees") through their attorneys with HANNON LAW GROUP, LLP and present this Memorandum of Points and Authorities in Support of their Motion for Leave to File a Second Amended Complaint and state as follows:

**INTRODUCTION**

The DOC Employees filed a Complaint in the United States District Court for the District of Columbia on June 8, 2007, outlining the basis of this litigation.  On July 12, 2007 a First Amended Complaint was filed as a matter of right for the sole purpose of adding Shantell Hatton to the suit.  This is an action for declaratory and injunctive relief and compensatory and punitive damages on behalf of Plaintiffs, all employees of the District of Columbia Department of Corrections ("DOC") and members of the bargaining unit of the Fraternal Order of Police/Department of Corrections Labor Committee ("FOP/DOC").

These DOC Employees were summarily fired by Defendant DOC and Defendant Devon Brown at a press conference on July 26, 2006, following a highly publicized Jail Escape. Defendant Devon Brown assigned the administrative removal hearings for the DOC Employees to the D.C. Office of Administrative Hearings. The OAH Judges issued a Report and Recommendation in each case on December 11, 2006, uniformly declaring that the DOC had violated their constitutional rights and recommending they be returned to work. By the requirements of D.C. personnel laws and the Collective Bargaining Agreement between Defendant DOC and the FOP/DOC, Defendant Devon Brown was compelled to follow the Recommendations and return the DOC Employees to work. Defendant Brown refused to return the DOC Employees to work. On March 12, 2007, the DOC Employees filed a Petition for Writ of Mandamus with the District of Columbia Court of Appeals seeking an order compelling Defendants DOC and Devon Brown to return them to work. On March 15, 2007, Defendants DOC and Devon Brown rescinded the summary removal action, placed the DOC Employees on paid administrative leave, and served them with new notices of proposed termination based on the same allegations on which the OAH Judges had ruled. Defendant Devon Brown assigned the hearing (hereafter the "Do Over") to Defendant Henry R. Lesansky, Ph.D., the Health Services Administrator for Defendant DOC. Defendant Devon Brown did so with the expectation that Defendant Lesansky, hand-picked by Brown, would do Brown's bidding and recommend that Plaintiff DOC Employees be fired. As a consequence of the Reports and Recommendations of the OAH Judges, Defendants DOC and Devon Brown are bound by law to return the DOC Employees to work. Defendants' refusal to return the DOC Employees to work and Defendants' manufacture of an unlawful "Do Over" before a Hearing Officer who owes his job to Defendant Devon Brown violate the Fifth

2

Amendment of the United States Constitution by depriving Plaintiffs of their constitutionally protected right to their jobs without due process.

Therefore, Plaintiff requests that the Court grant leave to file Plaintiffs' Second Amended Complaint which includes evidence that satisfies D.C. Code 12-309, the statutory notice requirement, and further clarifies the factual and legal basis of Plaintiffs' claims against Defendants.  Plaintiffs' Second Amended Complaint is based on the same set of circumstances detailed in the First Amended Complaint; however, it identifies clearly that Defendant Brown and Defendant Lesansky are being named in their individual capacity and that the constitutional violations committed against the DOC Employees are the product of a District of Columbia policy or custom.

## ARGUMENT

### A.    The Law Favors Liberal Amendment of Pleadings.

Federal Rule of Civil Procedure 15 allows the amendment of pleadings to relate back to the original pleading when:

The claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading….

Fed. Rule of Civ. Pro. 15(c)(2).

In addition, Rule 15 provides that leave "shall be freely given when justice so requires." Fed. Rule of Civ. Pro. 15(a).  Rule 15(a) of the Federal Rules of Civil Procedure instructs that when permission to file a pleading must be obtained from the Court, "leave *shall* be freely given when justice so requires." (Emphasis added). Fed. Rule Civ. Pro. 15(a).  While the Court has sole discretion to grant or deny a request for leave to amend, unless there is a reason for not doing so, such as undue delay, bad faith, dilatory tactics, repeated failure to cure deficiencies, or undue

prejudice to the opposing party, "the leave sought should . . . be 'freely given.'" <u>Foman v. Davis,</u> 371 U.S. 178, 182, (1962) (quoting Fed. R. Civ. P. 15(a)); see also <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (acknowledging that it is an abuse of discretion for a district court to deny leave to amend absent a sufficient reason). The rationale behind this liberal granting of leave to amend a complaint is that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test h[er] claim on the merits." <u>Kidd v. Howard Univ. Sch. of Law,</u> 2007 U.S. Dist. LEXIS 45444 (D.D.C. 2007), citing <u>Foman</u>, 371 U.S. at 182.

**B.    Plaintiffs DOC Employees  Should Be Granted Leave to File the Second Amended Complaint.**

Plaintiffs DOC Employees should be granted leave to file this Second Amended Complaint.  The additional allegations included in the Second Amended Complaint relate back to the original complaint as required by Rule 15.  Furthermore, there has been no delay in filing which will delay the pretrial or trial process.  The Second Amended Complaint contains within it information that is intended to cure points raised in the Defendants' Motion to Dismiss.  The new information will not create further discovery than is currently anticipated by the parties. Granting Plaintiffs' Motion will not interfere in the orderly administration of the impending trial on the merits of Plaintiff's claims, and will not cause substantial prejudice to Defendants. Defendants have not yet filed an Answer to Plaintiffs' First Amended Complaint and Defendants retain the right to defend the Second Amended Complaint on its merits.

In the interest of justice Plaintiffs DOC Employees should be permitted to amend their Complaint for a trial on the merits of the facts actually produced in discovery.

4

**C.    Local Rule LCvR7(i) Provides for Amendment.**

The Rules of the United States District Court for the District of Columbia provides for amended pleadings in recognition that actions should be tried on their merits as set out in discovery.  See LCvR7(i).

WHEREFORE, Plaintiff respectfully requests that this motion be granted.

Dated September 18, 2007                    Respectfully submitted,

                                            HANNON LAW GROUP, LLP


                                            _____/s/ J. Michael Hannon_____
                                            J. Michael Hannon, #352526
                                            1901 18th Street, NW
                                            Washington, DC 20009
                                            (202) 232-1907
                                            Fax:  (202) 232-3704
                                            jhannon@hannonlawgroup.com

                                            *Attorneys for Plaintiffs*

5

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CYNTHIA WASHINGTON, *et al.,* | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Case Number: 1:07-cv-01031 (RMU) |
| | : | |
| v. | : | |
| | : | |
| DISTRICT OF COLUMBIA, *et al.,* | : | |
| | : | |
| Defendants. | : | |

**<u>ORDER</u>**

Upon consideration of Plaintiffs' Motion for Leave to File Plaintiffs' Second Amended

Complaint, it is, by the Court, this day of _____, 2007, **ORDERED:**

That the said Motion be, and the same hereby is **GRANTED** and the Second Amended

Complaint is deemed to relate back to the original complaint under Federal Rule of Civil

Procedure 15.  The Clerk of this Court is hereby authorized and directed to accept "Plaintiffs'

Second Amended Complaint," as appended to the Motion, and this Second Amended Complaint

is deemed to have been filed on the date of the granting of this motion per LCvR 7(i).


**SO ORDERED.**



_____
THE HONORABLE RICARDO M. URBINA
District Court Judge

Copies to:

David Jackson, Esq.
Office of the Attorney General
441 Fourth Street, NW
6 South
Washington, DC 20001

J. Michael Hannon, Esq.
HANNON LAW GROUP, LLP
1901 18th Street, N.W.
Washington, D.C.  20009

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CYNTHIA WASHINGTON, *et al.,*       :
      :
      :
          Plaintiffs,       :       Case Number: 1:07-cv-01031 (RMU)
      :
      v.       :
      :
DISTRICT OF COLUMBIA, *et al.,*       :
      :
          Defendants.       :

**SECOND AMENDED COMPLAINT FOR
COMPENSATORY, INJUNCTIVE AND DECLARATORY RELIEF**

Come now Plaintiffs Cynthia Washington, Herbert Douglas, Lorenzo Jennings, Dionne Makins, Alphonso Bryant, Lowanda Hinton-Saunders, Darryl Love, Malcolm Pointer and Shantell Hatton ("DOC Employees") through their attorneys with HANNON LAW GROUP, LLP and present their Second Amended Complaint against Defendants and state as follows:

**NATURE OF THE CASE**

This is an action for declaratory and injunctive relief and compensatory and punitive damages on behalf of Plaintiffs, all employees of the District of Columbia Department of Corrections ("DOC") and members of the bargaining unit of the Fraternal Order of Police/Department of Corrections Labor Committee ("FOP/DOC").

These DOC Employees were summarily fired by Defendant DOC and Defendant Devon Brown at a press conference on July 26, 2006, following a highly publicized Jail Escape by two of the most dangerous offenders housed at the D.C. Jail. Defendant Devon Brown assigned the administrative removal hearings for the DOC Employees to the D.C. Office of Administrative Hearings. He did so because "it is necessary and desirable that the administrative proceedings

are held by a body that is independent of the Department of Corrections and that OAH possesses the expertise and resources for conducting these hearing." The OAH Judges issued a Report and Recommendation in each case on December 11, 2006, uniformly declaring that the DOC had violated their constitutional rights and recommending they be returned to work. By the requirements of D.C. personnel laws and the Collective Bargaining Agreement between Defendant DOC and the FOP/DOC, Defendant Devon Brown was compelled to follow the Recommendations and return the DOC Employees to work. Defendant Brown refused to return the DOC Employees to work.

On March 12, 2007, the DOC Employees filed a Petition for Writ of Mandamus with the District of Columbia Court of Appeals seeking an order compelling Defendants DOC and Devon Brown to return them to work. On March 15, 2007, Defendants DOC and Devon Brown rescinded the summary removal action, placed the DOC Employees on paid administrative leave, and served them with new notices of proposed termination based on the same allegations on which the OAH Judges had ruled. Defendant Devon Brown assigned the hearing (hereafter the "Do Over") to Defendant Henry R. Lesansky, Ph.D., the Health Services Administrator for Defendant DOC. Defendant Devon Brown did so with the expectation that Defendant Lesansky, hand-picked by Brown, would do Brown's bidding and recommend that Plaintiff DOC Employees be fired.

As a consequence of the Reports and Recommendations of the OAH Judges, Defendants DOC and Devon Brown are bound by law to return the DOC Employees to work. Defendants' refusal to return the DOC Employees to work and Defendants' manufacture of an unlawful "Do Over" before a Hearing Officer who owes his job to Defendant Devon Brown violate the Fifth

Amendment of the United States Constitution by depriving Plaintiffs of their constitutionally protected right to their jobs without due process.

## JURISDICTION

Jurisdiction of this Court is found in Title 28 U.S.C. §§ 1331, 1342 and 1367 and in Title 42 U.S.C. §§ 1983 and 1988.

Pursuant to D.C. Code § 12-309, the Plaintiffs have provided notice of the approximate time, place, cause and circumstances of the injury or damage to the Mayor.  The Plaintiffs were effectively injured on March 15, 2007.  On August 24, 2007, Plaintiffs served Mayor Adrian Fenty with the required statutory notice which satisfies the six month time frame wherein notice must be given.  See Exhibit A, Letter to Mayor Adrian Fenty.

## PARTIES

1.      Plaintiffs are employees of the D.C. Department of Corrections and members of the Bargaining Unit of the Fraternal Order of Police, Department of Corrections Labor Committee.

2.      Defendant DISTRICT OF COLUMBIA is a municipal corporation that employs Defendants DEVON BROWN, STANLEY WALDREN, HENRY R. LESANSKY, Ph.D., and Plaintiffs to operate the Department of Corrections.

2(a).      Defendant DEPARTMENT OF CORRECTIONS is no longer being named as a defendant in this action as it is a sub-agency of the named defendant DISTRICT OF COLUMBIA and cannot be sued as a separate entity subject to D.C. Code § 24-211.01 et seq.

## FACTS COMMON TO ALL COUNTS

Plaintiffs submit that the following facts are common to all counts:

**A.     Factual Background**

3.     On June 3, 2006, two inmates escaped from the Central Detention Facility
("CDF") by smashing out the door and window of the Warden's office.  The two escapees,
Joseph Leaks and Ricardo Jones, were among the most dangerous offenders housed at the DC
Jail.  Inmate Leaks was awaiting trial in the D.C. Superior Court on a charge of Accessory After
the Fact to First Degree Murder While Armed.  He had also violated his parole arising from a
1998 conviction for Assault with a Deadly Weapon.  Defendant DOC also contends that Leaks
had a prior escape from the CDF in October of 2005, although no record of such escape was in
Leaks' Institutional File.  Ricardo Jones was awaiting trial in the D.C. Superior Court in two
cases, one charging Assault with Intent to Kill and a second charging Murder in the First Degree.
Leaks and Jones are co-defendants in the murder case.  Leaks and Jones are also suspects in an
Assault with Intent to Kill investigation in Greensboro, North Carolina.

4.     The escape was widely reported in the press, and was a direct result of the DOC's
and Director Devon Brown's failure to remedy safety issues which had been repeatedly brought
to his attention by the FOP/DOC Labor Committee.  For example, during monthly meetings
before the jail escape, FOP representatives repeatedly told Defendant Brown that assaults on
corrections officers were increasing daily, a warning of lack of manpower.  Defendant Brown's
response was to prepare posters warning inmates not to assault corrections officers and to
produce a videotape to be played to the inmates.  In explaining news articles about increased
assaults, Defendant Brown explained that it was an election year, and politicians seek any means
to get their names in the paper. Defendant Brown knew that in-service training of corrections

officers was not being conducted.  Defendant Brown knew that the DC Jail was woefully understaffed, and that corrections officers were subject to compulsory drafting to work double shifts.  Defendant Brown knew that the DOC had no concrete plans for recruitment and training of new corrections officers.  On May 18, 2006, Mr. Brown admitted that he was concerned regarding extensive overtime, and that he had concerns that overtime was adversely affecting the alertness and effectiveness of corrections officers.  In February of 2006, the overtime budget for the DOC had been exhausted and the agency was $3,000,000 over budget.

5.     The complaints by the FOP/DOC at these monthly meetings foresaw the jail escape.  On the day of the escape, the DC Jail was understaffed by 58 out of the 121 positions required.  The "solution" was to force 41 officers to work overtime on that shift and to "shutdown" 17 posts.  Seven of the DOC Employees fired were either working forced overtime, working posts for which they had not been trained, or working understaffed posts.  On the morning of the escapes, representatives of the FOP/DOC requested that the Jail be locked down because of the shortage of personnel.  This request was denied.

6.     On June 4, 2006, the two escapees were recaptured without incident.  In an effort to deflect continued public attention from deplorable working conditions, severe management deficiencies, and criticism of his leadership of the DOC, Director Devon Brown on June 5, 2006, issued written notification to twelve DC Jail employees putting them on paid administrative leave pending further investigation of the escape.  Those employees included six (6) Correctional Officers, one (1) Lead Correctional Officer (Sgt.), three (3) Correctional Treatment Specialists, one (1) Correctional Program Specialist, and one (1) Captain.  Among this group were the Plaintiffs.

7.    After the escape, public scrutiny continued.  On June 26, 2006, a DOC Oversight Hearing chaired by Councilmember Phil Mendelson was held to continue review of the jail break and general safety issues at the DC Jail.  At this hearing, Councilmember Mendelson questioned DOC Director Brown and asserted that the DOC was unduly delaying the completion of its investigation into the inmate escapes.  Director Brown did not disclose to the Council that the Jail was dangerously understaffed that day, and that he knew that forced overtime was causing corrections officers to be less reactive and less efficient.

8.    Facing pressure from both the public and the D.C. City Council, during his testimony at the June 26, 2006 hearing, Director Brown announced that as a result of the escape, the DOC evaluated its operation and made immediate improvements.  None of these improvements addressed understaffing and the increasing incidents of assaults on corrections officers.

9.    A month later, on July 26, 2006, the Mayor, DOC Director Brown and the City Administrator, Robert Bobb, spoke at the Mayor's Weekly Press Briefing, at which time they announced the summary firings of eleven of the thirteen DOC employees who had been on suspension in connection with the jail break.  Plaintiff Employees were among those fired.  Not one of the Plaintiffs or their Union was notified in advance of this public announcement.

10.    During the Press Briefing, DOC Director Brown coupled the announcement of the firings with a statement that there was an ongoing criminal investigation into the jail escapes. The Press Briefing and the summary firings, together with the announcement of a criminal investigation, were intended to and had the result of humiliating and embarrassing the discharged Union members, casting them in the public light as felons who abetted a jail escape.  These Union members learned of their firing from family and friends who had seen or heard the news

in the media.  The Chairperson of the FOP/DOC Labor Committee learned of the terminations

from a television news reporter who called to obtain a reaction to the firings.

11.     Defendant Devon Brown made further statements to the press.  On June 6, 2006,

he was reported by the Washington Times to have stated that "authorities are investigating 'quite

vigorously' the question of whether the two inmates had help in the escape."  He criticized those

Plaintiffs who worked in classification of inmates, stating that "we can definitely say that Mr.

Leaks should not have been authorized to have the classification that allowed him free movement

on detail."  Defendant Brown coupled this, again, with a statement that the Plaintiffs were

suspended "pending a criminal investigation of the jailbreak."  Defendant Brown, whose office is

located on the other side of the city from the DC Jail, told a citizens group that "When I arrived

on the scene, the first thing I asked was, 'Did the siren go off?'"  Defendant Brown insisted that

the siren had been sounded, when it had not.  Defendant Brown is reported as having stated that

he would "make staff changes at the jail, including bringing in more younger corrections

officers, who are physically up to the demands of the job."  The Washington Post reported

Defendant Brown as stating "investigators want to determine if any of the officers deliberately

aided in the escape or unintentionally made mistakes that contributed to the breakout."  In

response to the increased level of assaults on corrections officers, Defendant Brown is reported

by the D.C. Examiner to have stated "The older we get our reaction time is not as good, so if

something is happening, a younger correctional force may be able to respond to it quicker before

it escalates."

12.     In order to accomplish this public humiliation and summary firing, the DOC

engaged in an unlawful and unconstitutional revision of existing D.C. laws which would have

prevented them from conducting a summary discharge in a public press briefing.  Id.  The

District of Columbia Personnel Manual ("DCPM"), until the Mayor's Weekly Press Briefing of

July 26, 2006, provided that in cases of Summary Removal, proper written notification of the

action was to be provided to the employee and the FOP/DOC within three (3) days of removal

("3 Day Rule"). DCPM § 1616.4. That notice must provide detailed information about the

removal, including the reasons for Summary Removal along with identification of critical

deadlines in the removal process and pertinent employee rights. Id. However, on the very date

of the planned news conference, Director Brown and D.C. officials conspired to amend this

provision of the DCPM so as to permit these firings in a summary fashion at the Mayor's Press

Conference. The amendment, specifically applying to only these Plaintiffs, provided that the

information supporting summary removal need not be provided until 30 days after removal. (See

App. 15 at 8).

13.    A second change was made to the DCPM on July 28, 2006, to broaden the

definition of employees to whom the change applied. The July 28, 2006 variation augments the

July 26, 2006 amendment by including a twelfth employee who was summarily removed (on

July 28, 2006) and provides that any subsequent firings resulting from the investigation into this

jail break also will not be subject to the 3 Day Rule. Id. This variation is completely unlawful

and constitutes an ex post facto deprivation of due process rights to the discharged DOC

Employees, all to enable Director Brown to divert criticism from his leadership to the rank and

file corrections officers and employees of the DOC. Moreover, compliance with the 3 Day Rule

would have required disclosure of tape recorded interviews of the Plaintiffs, which would have

laid to rest the public assertions by Director Brown that the jail escapes could only have occurred

as a result of a criminal conspiracy among correctional officers and inmates: a ludicrous

accusation in light of the facts then known to Director Brown regarding the security deficiencies at the DC Jail.

14.     Summary Removal is permitted under D.C. law when an employee's conduct offers an immediate threat to the integrity of governmental operations; constitutes an immediate hazard to the agency, to other District employees or to the employee; or, is detrimental to public health, safety, or welfare, as provided for in D.C. Code § 1-616.51.  None of these circumstances existed on or even near the date of the Respondents' Press Briefing that would justify an immediate firing.  The summary removal of the Plaintiffs was unjustified and unconstitutional.  These suspended employees were on paid administrative leave and posed a threat to no one.  There was absolutely no lawful basis to summarily remove these employees at that particular time, as later confirmed by the OAH Judges in their Reports and Recommendations.  The use of the Summary Removal procedure was unwarranted, and the fact that Defendant DOC and D.C. Office of Personnel officials manipulated the law to achieve this gratuitous end is a clear abuse of power, and a violation of the constitutional rights of these DOC Employees.

15.     On or about August 1, 2006, Plaintiff DOC Employees were formally delivered – or summoned to pick up – a packet of materials and a notice advising them that they had been summarily discharged from their employment with the DOC.  This firing was accomplished with no notice and no opportunity to be heard of any kind in violation of the constitution of the United States.  The written notice required by law was not prepared for each of the DOC Employees until August 24, 2006.  That notice provided as follows:

> The Office of Administrative Hearings will conduct the administrative review and/or hearing of the proposed removal actions. . . .  In conducting the administrative review and/or hearing, your appointed Hearing Officer will review all of the documents giving rise to the charge . . . , this written notice and your response, if there is one.  After conducting the administrative review, your

assigned Hearing Officer will make a written report and recommendation to
Director Devon Brown, the Deciding Official, <u>who will issue a final decision</u>.

(Emphasis supplied).

### B.    Procedural Background

16.    After the summary firings, Defendants DOC and Devon Brown then entered into

a Memorandum of Understanding ("MOU") with the Office of Administrative Hearings

("OAH") to effectuate the promises made to the Plaintiffs in the letters of August 24, 2006, as set

forth in ¶ 15 above.  Pursuant to the MOU the Judge of the OAH would conduct the

administrative hearings required in these cases consistent with Chapter 16 of the DCPM and the

Collective Bargaining Agreement between Defendant DOC and FOP/DOC ("CBA"), and as the

DOC Employees were advised in their written notices of August 24, 2006.  Section 1612.2 of the

DCPM requires that an "administrative review shall be conducted by a hearing officer."  6

DCMR 1612.2.  Defendant Brown specifically noted in the MOU that "it is necessary and

desirable that the administrative proceedings are held by a body that is independent of the

Department of Corrections and that OAH possesses the expertise and resources for conducting

these hearing."  Defendants DOC and Devon Brown promised that this Agreement would

"remain in effect <u>through the latest date that the Director of DOC issues a final decision</u> in any of

the Disciplinary Actions."  (Emphasis supplied).

17.    DOC Director Devon Brown was required by the DCPM to issue a Final Decision

within 45 days of the delivery of the summary removal notices:

> The final decision in the case of summary suspension or summary removal action
> taken pursuant to §§ 1615-1616, respectively, shall be rendered not later than
> forty-five (45) days from date of delivery of the summary suspension or summary
> removal notice, as appropriate except that the period may be extended as follows:
>
> > (a) when the employee requests and is granted an extension of time in
> > which to respond  under § 1611.2; or

(b) when the employee agrees to an extension of time requested by the agency.

6 DCMR 1614.3.

18.    In addition, both the CBA and the DCPM require that DOC Director Devon Brown follow the recommendation of the OAH Judges in this case.  Article 11, Section 9(D) of the CBA specifically states (emphasis supplied):

Deciding Official shall issue a final decision after reviewing the recommendation of the Disinterested Designee/Hearing Officer.  The deciding official may sustain or reduce the penalty recommended by the Disinterested Designee, remand the matter for further consideration by the Hearing Officer, or dismiss the charge but may not increase the penalty recommended by the Disinterested Designee/Hearing Officer.

Furthermore, Section 1613.2 of the DCPM also states with specificity that (emphasis supplied):

The deciding official shall either sustain the penalty proposed, reduce it, remand the action with instruction for further consideration, or dismiss the action with or without prejudice, but in no event shall he or she increase the penalty. 6 DCMR § 1613.2.

19.    The original Summary Removals were dated July 26, 2006.  The DOC arranged for the D.C. Personnel Regulations to be altered in order to extend the DOC's deadline to present the requisite elements of Summary Removal to the Employees.  On or about August 24, 2006, the DOC issued its written "follow-up" Summary Removal notice to the Employees.  The notice required a six (6) day deadline for the employees to respond, and the Employees abided by that deadline.  The Forty-five within which Defendant Brown must make a final decision from the date of the "follow-up" Summary Removal notice would have been October 7, 2006.

20.    However, at a September 8 status hearing, the DOC admitted that the record upon which the Agency based the Summary Removal was incomplete.  As no administrative review could take place with an incomplete record, the OAH granted the DOC until September 15, 2006

to complete the record.  The Judges of the OAH recognized that this action implicated the 45-day

deadline to issue a final decision, unless the employees requested an extension of time, pursuant

to 6 DCMR 1614.3(a).  The parties agreed at the September 8, 2006 status conference to extend

the deadline for the Agency Final Decision to October 25, 2006, because of the DOC's need for

additional time to complete the record.  The OAH's September 11, 2006 scheduling order

memorializes this agreement and the deadline.  On September 27, 2006, the employees filed

individual responses to the removal notice, a motion for an extension of the deadline for

responses, as well as a Motion for Summary Dismissal.  The OAH granted the extension of the

deadline for responses and accepted them accordingly.

21.      The DOC filed its reply to the Motion for Summary Dismissal of the matter on

October 13, 2006.  The parties again met at a second status hearing on the Motion for Summary

Dismissal on October 19, 2006.  Following the administrative hearing, the OAH Judges issued

an order on October 26, 2006 denying the Employee's Motion for Summary Dismissal

submitting to the parties that it would consider the arguments contained in the Motion as part of

the individual reports and recommendations to be issued for each Employee.  In the October 26,

2006 Order, denying Employees' Motion for Summary Dismissal, the OAH Judges also noted

that "the administrative review must be completed before a final decision can be issued," and

that it would issues its report and recommendation at that time.  Consequently, the 45-day

deadline for a final decision was once again modified and required that the DOC Director issue

his final decision by December 15, 2006.  The OAH issued a Report and Recommendation in

each case on December 11, 2006, concluding that the summary removals could not be sustained

and recommending that the Employees be returned to work.

22.     Instead of issuing a final decision returning the Employees to work as he was required to do by the DCPM and the CBA, and as he promised in the MOU and in the August 24, 2006, written notices to the DOC Employees, DOC Director Devon Brown submitted remand notices for most of the employees,[1] well beyond the 45 day deadline, on January 9, 2007, directing the panel of administrative law judges to re-consider the determination and recommendations included in their Final Reports and Recommendation issued to the DOC pursuant to 6 DCMR 1616.6(a).

23.     The Employees filed a Motion to Strike the Remand Notices on January 16, 2007, arguing that the Remand Notices were untimely.  The DOC filed its response to the Motion to Strike the Remand Notices on January 29, 2007 and the Employees filed their Reply on February 2, 2007.  A hearing was held by the OAH Judges on February 5, 2007 in reference to the Remand Notices and the subsequent Response by the DOC.  The OAH Judges issued their Report and Recommendation on Remand in the individual Employees' cases on March 2, 2007, and once again recommended that Director Devon Brown reinstate the Plaintiff DOC Employees.  Further, the OAH Judges opined that the Remand Notices were filed late and that Director Brown unlawfully violated the 45-Day Rule requiring a final agency decision.

24.     In each Report and Recommendation issued by the OAH in this matter, the Judges found that Summary Removal could not be sustained.  Further, each report contained a procedural summary which acknowledged that the October 26, 2006 Order established a

---

[1]     Director Brown sent by letter Remand Notices to the single OAH Judge (Hon. Paul B. Handy) hearing the cases for Darryl Love and Malcolm Pointer on December 14, 2006.  The Remand Notices contained no certificate of service.  They were not filed with the OAH, nor were they served on their counsel or any other counsel in the cases. However, the OAH Judge assumed that the parties were provided with copies of the Notice.  On December 28, 2006 the OAH Judge signed and dated a Report and Recommendation After Remand ("Report") in each of the two cases. The Report did not contain a completed Certificate of Service.  At the February 5, 2007 status hearing, it was brought to the attention of the OAH Judge that none of the parties received a copy of the Report.  Consequently, the OAH Judge ultimately refused to consider the Remand Notices.  He also found that there was no basis to reconsider his previous recommendation.

deadline for the final agency decision as December 15, 2006. From the outset of this entire

process, Defendants DOC and Devon Brown have refused to comply with the established rules

of due process set out by the DCPM, the CBA, the MOU, and the August 24 notice of proposed

removal. The regulations are clear that a final decision in these types of cases must be rendered

within 45 days of delivery of the record. The regulations and the CBA are also clear that

Director Brown may not depart from the recommendations of the OAH Judges because they

recommend reinstatement. Director Brown is not free to impose a harsher sanction.

25.    When Director Brown failed to issue a final decision, Plaintiffs filed a Petition for

Writ of Mandamus with the District of Columbia Court of Appeals on March 12, 2007, to

compel Defendant Brown to return them to work. Four days later, senior management at the

DOC simultaneously rescinded and cancelled the proposals for summary removal of the

Employees in order to avoid an adverse decision by the District of Columbia Court of Appeals.

Director Brown, and others with the Department of Corrections including their counsel,

conspired among themselves to lead Plaintiffs to believe that their proposed discipline was over

and they were being returned to work permanently. Specifically, DOC employees Joan E.

Murphy and Denise Shell were instructed to contact Plaintiffs directly – who were then

represented by counsel – and lead the employees to believe they were being returned to work. In

violation of ethical rules prohibiting a party from contacting another party except through

counsel, Murphy and Shell lured the joyful Plaintiffs to report to DOC headquarters on Friday,

March 16, 2007, to be "reinstated."

26.    In furtherance of this scheme, on the afternoon of March 15, 2007, Defendant

Devon Brown himself placed a personal telephone call to Cpl. Nila Ritenour, Chairperson of the

FOP/DOC. The FOP/DOC was also represented by counsel in the jail escape matter at that time,

27.     Similarly, on March 15, 2007, counsel for the Plaintiffs telephoned counsel for Defendant Department of Corrections to confirm the "good news."  Counsel for Defendant DOC had been directed by Defendant Brown not to disclose the truth as to his intended conduct. Consequently, counsel for Defendant DOC confirmed to counsel for Plaintiffs that the DOC "is bringing them all back to work."

28.     When Plaintiffs reported to DOC headquarters in the morning of March 16, 2007, they were indeed given a reinstatement letter promising back pay and benefits.  At the same time, Plaintiffs were given a second letter putting them all on leave pending a new hearing to sustain Defendant Brown's pre-ordained desire to have them all fired.  As Defendant Brown no doubt anticipated, at roll call at the D.C. Jail early that morning, Cpl. Ritenour had announced the "good news", only to be humiliated when Defendant Brown's true intentions became known. Plaintiffs to this date, with one exception, have not received their back pay and benefits.

29.     Defendant Warden Stanley Waldren signed the March 12, 2007, notices of proposed removal without reading them, without conducting any investigation, and under direct orders of Defendant Devon Brown.

30.     Defendant Henry R. Lesansky, Ph.D., employed by the DOC, was appointed to be the new hearing officer for the proposed termination hearings.  Dr. Lesansky is not an "independent" hearing officer as promised to the DOC Employees in their August 24, 2006, notices of removal.  In February of 2002, Dr. Lesansky resigned from his position as the top official with the Maryland Department of Juvenile Justice after disclosures that he twice understated the number of assaults against teens at Maryland juvenile jails.  Dr. Lesansky became unemployable in corrections work until hired by the District of Columbia.  He serves at the pleasure of Defendant Devon Brown.

31.     Defendants refusal to adhere to the procedures for adjudication of the firings of Plaintiffs and their efforts to have a "Do Over" violate Plaintiffs' Fifth Amendment rights to due process of law and an abridgement of their Fifth Amendment property interest in their Career Service positions with Defendant DOC.

## COUNT I—Violation of 42 U.S.C. §1983

32.     Plaintiffs repeat each and every allegation contained in all preceding paragraphs and incorporate the same herein.

33.     Defendants in their own right and in conspiracy and agreement with each other and others within the DC DOC and the DC Government sought to and did violate the constitutional rights of Plaintiffs in that Defendants sought to and did deprive Plaintiffs of life, liberty and property without due process of law.

34.     The actions of Defendants and those of their co-conspirators were done with evil motive, actual malice, oppression, with intent to injure, in willful disregard for the rights of Plaintiffs, and these actions were outrageous, grossly fraudulent, and reckless towards the well-being and rights of Plaintiffs.

35.     In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court advanced the proposition that government employees are afforded procedural guarantees <u>before</u> they can be terminated.  These guarantees are born of the Due Process Clause of the United States Constitution.  The resulting and inherent property interest in employment derives from a legitimate claim of entitlement that arises not from the United States Constitution, but from independent sources such as state statutes, agency rules or policies, or agreements as to employment.  *Board of Regents v. Roth*, 408 U.S. 564, 577-78 (1972).

36.     The Due Process analysis found in *Loudermill* applies to DC government employees and, in this case, the DOC employees specifically.  "It is undisputed that the Comprehensive Merit Protection Act ("CMPA") creates a property interest for employees governed by it. The CMPA establishes a Career Service for employees in which they are guaranteed to be promoted based on merit and cannot be terminated without cause…. Under CMPA, employees can only be disciplined for cause and prior notice must be given." *Fonville v. D.C.*, 448 F. Supp. 2d 21 (D.D.C. 2006) (internal citations omitted).  See also, *D.C. Department of Corrections v. Teamsters' Union Local*, 554 A.2d 319, 323 (D.C. 1989).

In this context, "agencies cannot relax or modify regulations…. [W]hen agencies establish … pre-termination procedures they are bound to follow them."  *Lerner v. District of Columbia*, 362 F. Supp. 2d 149, 161, 2005 U.S. Dist. LEXIS 3565 (D.D.C. March 4, 2005), citing *Lopez v. FAA*, 355 U.S. App. D.C. 51, 318 F.3d 242, 247 (D.C. Cir. 2003).  Also, "[t]he D.C. Circuit has not

required any additional due process requirements [beyond those defined in *Loudermill*] for the termination of its public employees."  *Crockett v. D.C. Metro. Police Dep't.*, 293 F. Supp. 2d 63, 68 U.S. Dist. LEXIS 23632 (2003), citing *Kropat v. Fed. Aviation Admin.,* 333 U.S. App. D.C. 239, 162 F.3d 129, 132-34 (D.C. Cir. 1998).

37.    Plaintiff DOC Employees were fired without notice and without an opportunity to be heard.

38.    In order to accomplish a very public humiliation and summary firing of the Plaintiffs, Defendants engaged in an unlawful and unconstitutional revision of existing DC laws which would have prevented them from such conduct otherwise.  Plaintiff DOC Employees contend that the summary removal provisions of DCPM § 1616.4 are unconstitutional and unconstitutional as applied to them.

39.    Plaintiff DOC Employees contend that the summary revision of the 3 Day Rule by promulgation of variations to the DCPM was unconstitutional and unconstitutional as applied to them.

40.    Plaintiff DOC Employees contend that Defendants are without legal authority to require that the Plaintiffs be subject to the administrative process a second time for a disciplinary action that has been adjudicated in their favor.  The DOC has been unable to cite any legal authority which gives them the right to a "Do Over".

41.    Defendants are obligated by the constitution to abide by internal, procedural regulations defining their due process rights when proposing the dismissal of employees.  See Lopez v. FAA, 318 F.2d 242, 246 (D.C. Cir. 2003).  The Supreme Court has long recognized that "an agency is bound to the standards by which it professes its actions to be judged." Service v. Dulles, 354 U.S. 363, 373-76 (1957).  Furthermore, a government agency must engage in

"scrupulous compliance" with its own procedures for discipline and removal of employees. *Lerner v. District of Columbia*, 362 F. Supp.2d 149, 161 (2005) U.S. Dist. LEXIS 3565 (D.D.C. March 4, 2005). (See also *Mazaleski v. Treusdell*, 562 F.2d 701, 720 (D.C. Cir. 1977) (stating, "[w]here …. a government employee has no procedural due process rights apart from those which the agency has chosen to create by its own regulations, scrupulous compliance with those regulations is required to avoid any injustice.")). Any manipulation of such procedures is an unconstitutional violation of due process.

42.    Government agencies are precluded from modifying or relaxing regulations that "provide the only safeguard [employees] have against unlimited agency discretion in hiring and termination." *Lopez v. FAA*, 318 F2d. at 247. Defendant DOC solicited the assistance of the OAH and asked that it serve as the Hearing Officer in this matter. At the conclusion of the administrative proceedings outlined by the CBA, the ALJ's issued recommendations that all the Employees be returned to work. The CBA has specifically articulated the authority of the DC DOC with respect to the Hearing Officer's recommendations. Defendant DOC and Director Devon Brown may not, at their own whim, confer upon themselves more authority than the controlling regulation allows. In this case, the controlling regulations, the CBA and the CMPA, require that the Employees' be returned work.

43.    As a direct and proximate result of Defendants' violating Plaintiffs' Fifth Amendment rights, Plaintiffs suffered loss of income and other employment benefits and damage to their professional and personal reputations. Further, as a direct and proximate cause of Defendants' violating their Fifth Amendment rights, Plaintiffs have endured mental and physical pain and suffering, embarrassment, humiliation, mental anguish, and the costs and attorneys' fees of this action.

43(a).    Defendants have repeatedly violated personnel regulations and the due process requirements of DOC employees.  These repeated actions over time have become a  "custom" of the Department of Corrections and its Director to engage in these activities in an effort to terminate employees unconstitutionally.

43(b).    The DOC Employees in this case were intentionally led to believe they were being returned to work when in truth they were to receive the notice of proposed termination. Achieving that result required a coordinated effort on the part of the Director and Department of Corrections employees and was knowingly misleading and deceptive.

43(c).    Pursuant to <u>Monell v. Department of Social Services of the City of New York et al</u>, 436 U.S. 658, 690-691 (1978), local governing bodies, such as the District of Columbia and their sub-agencies, "could be sued directly for monetary, declaratory, or injunctive relief where the action that was alleged to be unconstitutional implemented a policy statement, ordinance, regulation or decision officially adopted by that body's officers, or where constitutional deprivations were visited pursuant to governmental 'custom,' even though such custom had not received formal approval through the body's decisionmaking channels."

43(d).    The Defendants actions have no basis in law.  They are the direct result of a persistent pattern of conduct by the Director and others in his employ and it has clearly become customary in the Department of Corrections to ignore decisions of hearing officers, to deceive employees, to ignore the requirements of progressive discipline, to fail to honor arbitration awards, to fail to honor orders and decisions of the Public Employees Relations Board for the District of Columbia, to fail to comply with local court orders, and to take insupportable legal positions in litigation.  These practices constitute a governmental custom within the Department

of Corrections, thereby subjecting the DISTRICT OF COLUMBIA to liability for violations of 42 U.S.C. § 1983.

43(e).    Further, Defendant DEVON BROWN is being named in his individual capacity and not solely as an official representative of the District of Columbia and its sub-agency the Department of Corrections.  Along with implementing the unconstitutional customs of the agency, the Director has clearly acted beyond the reasonable bounds of his position.  As stated in Anderson v. Creighton, "no reasonable officer could have believed that the action taken was not in violation of the clearly established constitutional law."  483 U.S. 635, 638 (1987).  Director Brown's actions and delight in deliberately seducing these DOC employees into believing they were being returned to work and then attempting a new termination thus subjects him to individual liability.

43(f).    Finally, Defendant HENRY LESANSKY, PH.D is being named in his individual capacity and not solely as an official representative of the District of Columbia.  Dr. Lesansky accepted the appointment as hearing officer in the second attempt to terminate these employees knowing he was not a disinterested party.  In denying the DOC Employees request to stay the "do over" termination proceedings, Dr. Lesansky furthered the violation of the DOC Employees' constitutional rights.  Dr. Lesansky has prodded the DOC Employees to proceed with the administrative hearing process under the implicit threat of adverse consequences should they fail to meet his requirements.  Therefore, Dr. Lesansky is individually liable for the 42 U.S.C. § 1983 violation.

## COUNT II—Defamation Plus

44.    Plaintiffs repeat each and every allegation contained in all preceding paragraphs and incorporate the same herein.

45.    Defendants immediately following the jail escape and thereafter negligently made and published false statements to others both inside the D.C. government and publicly about Plaintiffs that were defamatory and defamatory per se, as a consequence of which the Plaintiffs suffered actual injury in their trade, profession, community standing and which lowered the Plaintiffs in the estimation of their community.

46.    While defamation and slander typically do not provide a basis for recovery in a due process claim, "a plaintiff may prevail, however, if he can demonstrate either a 'reputation plus' claim, that is defamation accompanied by an adverse employment action, or 'foreclosure claims,' in which the government's actions foreclosed potential job opportunities."  See *Fonville* at 28 (internal citations omitted).

47.    In *Fonville*, this court defined the requirements for "reputation plus" as those "comments that imply an inherent or persistent personal condition."  *Id*.  Specific examples of those behaviors that rise to a constitutional violation include "accusations of dishonesty, commission of a serious felony, manifest racism, serious mental illness, or a lack of intellectual ability."  See *Fonville* at 29.

48.    Here, the Defendants have engaged in behavior that rises to the level of a constitutional violation.  Director Brown frequently and publicly has accused the Plaintiffs of perpetrating criminal acts in connection with the jail escape.  He accused them of being too old to do their jobs.  He accused them of being unable to apply the classification system.  One example of this is a press release that has been on the DOC web site since July 27, 2006.  It states, in relevant part, "As a result of this investigation, 11 individuals have been terminated from employment with the DOC *for their roles leading to the escape* and to the breach of

security…. The United States Attorney's Office is currently conducting a criminal investigation

into the escape." See DC DOC website at www.dc.gov (emphasis added).

49.    As a direct and proximate result of Defendants' defamatory acts, Plaintiffs

suffered loss of income and other employment benefits and damage to their professional and

personal reputations. Further, as a direct and proximate cause of Defendants' defamatory acts,

Plaintiffs have endured mental and physical pain and suffering, embarrassment, humiliation,

mental anguish, and the costs and attorneys' fees of this action.

### COUNT III—Intentional and Negligent Infliction of Emotional Distress.

50.    Plaintiffs repeat each and every allegation contained in all preceding paragraphs

and incorporate the same herein.

51.    Defendants acted in an extreme and outrageous fashion and negligently in

terminating Plaintiffs with the intent and/or result of causing them emotional distress.

52.    As a direct and proximate result of Defendants' acts, Plaintiffs suffered loss of

income and other employment benefits and damage to their professional and personal

reputations. Further, as a direct and proximate cause of Defendants' acts, Plaintiffs have endured

mental and physical pain and suffering, embarrassment, humiliation, mental anguish, and the

costs and attorneys' fees of this action.

### COUNT IV- Injunctive Relief

53.    Plaintiffs repeat each and every allegation contained in all preceding paragraphs

and incorporate the same herein.

54.    Plaintiffs request the Court to enjoin the Defendants' from pursuing any discipline

as a result of the jail escape.

55.     Plaintiffs request that they be restored to their rightful positions within the Department of Corrections with restoration of all back pay, lost benefits, and the costs and attorneys' fees of this and all other actions resulting from defending the Plaintiffs from their unconstitutional terminations.

## COUNT V—Compensatory and Punitive Damages and Attorneys' Fees

56.     Plaintiffs repeat each and every allegation contained in all preceding paragraphs and incorporate the same herein.

57.     Defendants acted with evil motive, actual malice, deliberate oppression, with intent to injure Plaintiffs and in willful disregard for the rights of Plaintiffs. Defendants' conduct was itself outrageous, grossly fraudulent, and reckless toward Plaintiffs, for which Plaintiffs demand punitive damages and the costs and attorneys' fees of this action in an amount to be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that they be awarded compensatory damages in an amount in excess of the jurisdictional amount in controversy, punitive damages to be determined by a jury, costs and attorneys' fees of this action, a declaration that they are entitled to be reinstated unconditionally to their positions, and a permanent injunction returning them to their former positions with all back pay and benefits to which they are entitled, including attorneys' fees of this action and all other actions resulting from defending the Plaintiffs from their wrongful terminations, and such further relief as the Court may deem appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury of all Counts triable by jury and of all factual allegations required for the determination of this Complaint.

Dated September 18, 2007                    Respectfully submitted,

                                           HANNON LAW GROUP, LLP


                                           _____*/s/ J. Michael Hannon*_____
                                           J. Michael Hannon, #352526
                                           1901 18th Street, NW
                                           Washington, DC 20009
                                           (202) 232-1907
                                           Fax:  (202) 232-3704
                                           jhannon@hannonlawgroup.com

                                           *Attorneys for Plaintiffs*