UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CYNTHIA WASHINGTON, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case Number: 1:07-cv-01031 (RMU) |
| | : | |
| v. | : | |
| | : | |
| DISTRICT OF COLUMBIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Come now Plaintiffs Cynthia Washington, Herbert Douglas, Lorenzo Jennings, Dionne Makins, Alphonso Bryant, Lowanda Hinton-Saunders, Darryl Love, Malcolm Pointer and Shantell Hatton ("DOC Employees") through their attorneys with HANNON LAW GROUP, LLP and present this Reply to Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment. The DOC Employees move for Partial Summary Judgment against these Defendants as to Count IV (Injunctive Relief).

**INTRODUCTION**

On June 3, 2006, two inmates escaped from the Department of Corrections ("DOC") Central Detention Facility ("CDF"). The escape was widely reported in the press and was a direct result of the DOC's and Director Brown's failure to remedy safety issues which had been repeatedly brought to their attention by the FOP/DOC Labor Committee ("Union"). Amidst the publicity backlash, the DOC Employees were publicly and summarily fired by Director Brown from their employment at DOC. None of the fired Employees or their Union were notified in advance of the public announcement.

Defendant Brown assigned the administrative hearings that followed the firings to the D.C. Office of Administrative Hearings ("OAH"). The OAH Judges issued a Report and Recommendation in each case on December 11, 2006, uniformly declaring that the DOC had violated the DOC Employees' constitutional rights and recommending they be returned to work. By the requirements of D.C. personnel laws and the Collective Bargaining Agreement ("CBA") between Defendant DOC and the FOP/DOC, Defendant Brown was compelled to follow the Recommendations and return the DOC Employees to work. Defendant Brown did not comply with that recommendation and refused to return the DOC Employees to work.

Instead, without any legal basis and in violation of established laws, Defendant Brown rescinded the original summary removal action, placed the DOC Employees on paid administrative leave, and served them with new notices of proposed termination based on the same allegations reviewed by the OAH Judges. The "Do Over" hearings were assigned to Defendant Henry R. Lesansky, Ph.D., the Health Services Administrator for Defendant DOC, with the expectation that Defendant Lesansky would do Brown's bidding and recommend that the DOC Employees be fired.

The Defendants refusal to return the DOC Employees to work and their manufacture of an unlawful "Do Over" before a compromised Hearing Officer violate the Fifth Amendment of the Constitution by depriving them of their constitutionally protected right to their jobs. Consequently, the DOC Employees contend that this Court should grant Summary Judgment on Count IV (Injunctive Relief). Disposition of this claim would expedite resolution of this matter.

**ARGUMENT**

**I.      THE DOC EMPLOYEES ARE ENTITLED TO SUMMARY
         JUDGMENT AS TO COUNT IV, INJUNCTIVE RELIEF.**

In Count IV, the DOC Employees seek an order from the Court enjoining the Defendants from pursuing any disciplinary action against the DOC Employees as a result of the jail escape. The DOC Employees are seeking a judicial declaration that they were: (1) wrongfully denied their jobs by the Defendants when the OAH Judges' recommendations were not implemented and (2) entitled to be reinstated unconditionally to their positions with back pay. A declaration of these rights would merely award to these DOC Employees that which they have earned through the procedures established by Defendants.

**A.      This Court Has Subject Matter Jurisdiction to Grant Plaintiffs' Motion for
         Partial Summary Judgment.**

As established by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), courts may exercise jurisdiction and declare the rights of the parties when there is an actual controversy between the parties. Citizen Elecs. Co. v. Osram GmbH, 377 F. Supp. 2d 149, 152 (D.D.C. 2005); EMC Corp. v. Norand Group., 89 F.3d 807, 810 (Fed. Cir. 1996). In order to determine whether an actual controversy exists, the court must evaluate each case individually and determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227 (1937).

Declaratory relief is appropriate and warranted in this case because it, "permits an early adjudication of the rights and legal remedies involved in a dispute, regardless of whether claims for damages or injunctive relief have arisen or would otherwise need to be tried in the future."

See Moore's Federal Practice – Civil § 57.04.  Further, it "enables parties to adjudicate their disputes before either suffers great damages."  Id at § 57.03.  In this case, the DOC Employees have already suffered through the lengthy OAH hearing process and have been unable to attend their jobs since their original summary removal on July 26, 2007.  Declaratory judgment promotes judicial economy in this matter, and this Court should grant Declaratory relief in the DOC Employees favor.

      Defendants' argue in their Opposition to Plaintiffs' Motion for Partial Summary Judgment that the Declaratory Judgment Act is, "not an independent source of federal jurisdiction."  See Defendants' Opposition P.1.  Defendants' further argue that Plaintiffs' alleged constitutional violation is intertwined with a statutory one.  Id At 2.  Plaintiffs' basis for federal jurisdiction; however, does not arise solely out of the Declaratory Judgment Act nor is it a "state law claim dressed in federal garb" as suggested by Defendant.  Id at 3.  Instead Plaintiffs have stated a clear violation of federal law, 42 U.S.C. § 1983 by Defendants, when they were denied their property as a direct result of actions taken by Defendants.  Plaintiffs' Fifth Amendment right to their statutorily created property interest has been denied and that provides the jurisdictional basis of their claim.

      The DOC Employees do not claim a violation of local law at this point, as argued by the Defendants.  Id.  Local law, namely the D.C. CMPA, created their property interest in their jobs.  Local law was followed by the Plaintiffs in response to the attempted summary removal.  Pursuant to local law it was determined that they could not be summarily removed and that they were entitled to be reinstated to their positions.  Now, it has become a violation of their constitutional property rights to continue to deny them their positions within the DOC.  Contrary to Defendants' assertion that "Plaintiffs claim of a violation of local law does not rise to the level

4

of a constitutional violation," Plaintiffs' claim is in fact a direct claim based on the Constitution and not local law. See Defendants Opposition P. 5. Having already complied with local law procedures, Plaintiffs seek an enforcement of their constitutional rights.

### 1. Plaintiffs have exhausted administrative remedies.

Throughout Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment there is the repeated reference to the need to exhaust administrative remedies. See Defendants' Opposition P.2. As explained in greater detail in the DOC Employees' Motion for Partial Summary Judgment and Opposition to Defendants' Motion to Dismiss, there are no other remedies for the DOC Employees to exhaust, other than objecting to the procedures Defendants have made up. Defendants argue that the DOC Employees must wait through another procedure that has no basis in the law, and then appeal what the DOC Employees predict will be an adverse outcome. However, there is no need for them to do so. They have already won. They have nothing to appeal. Under Defendants' theory, this process could go on forever, wasting the taxpayers' money paying employees not to work.

Further, actions filed pursuant to 42 U.S.C. § 1983 do not require an exhaustion of administrative remedies as a prerequisite. See Roache v. District of Columbia, 654 A.2d 1283 (D.C. 1995) citing Patsy v. Board of Regents, 457 U.S. 496 (1982). Defendants' argument that DOC Employees are required to exhaust administrative remedies prior to bringing this suit is therefore without merit. It is inaccurate to suggest, as Defendants do, that DOC Employees are challenging their termination. Rather, it has already been determined their terminations were improper, and DOC Employees merely seek enforcement of that determination and an injunction against any efforts to restart termination proceedings against them. These constitutionally based claims of entitlement to due process are not subject to the exclusivity doctrine.

### 2. The equitable restraint doctrine does not require denial of Plaintiffs' motion.

Defendants cite Younger v. Harris and Ford v. Tait for the proposition that the "equitable restraint" doctrine requires this Court to deny Plaintiffs' motion based on lack of subject matter jurisdiction. Younger involved an attempt by a defendant in a criminal matter to in enjoin the state criminal proceedings against him with a federal court injunction. See Younger v. Harris, 401 U.S. 37 (1971). In Ford, Judge Urbina applied the principles of Younger and wrote about the doctrine of equitable restraint and when it is appropriate for a federal court to refrain from hearing what is essentially a state court matter. Ford v. Tait, 163 F. Supp. 2d 57 (D.D.C. 2001). It was noted that, "the doctrine is not overly broad" and "it has never been suggested that Younger requires abstention and deference to a state judicial proceeding reviewing legislative or executive action." Ford, 163 at 64.

In applying the Younger doctrine to this case, it is true that there is an ongoing proceeding that is judicial in nature; however, the proceeding at issue completely lacks legitimacy as Defendants can cite no provision that supports their repeated attempts to terminate employees for the same alleged misconduct or failed job performance. The current state proceeding deserves no deference as the original proceeding has already deliberated the "actual controversy" that exists between the parties. Id.

Secondly, there is no important state interest in this case as it pertains to these DOC Employees. State laws were followed by the DOC Employees and state procedures were followed throughout the first round of administrative hearings. The District of Columbia's interest in seeing its rules and regulations enforced has already been served as the DOC Employees submitted to the process and a fair and final adjudication on the merits was reached.

The District of Columbia is no longer being served by the continued persecution of these DOC Employees by persons attempting to terminate these employees in direct violation of an administrative judge ruling.

Finally, it is clear from Director Brown's appointment of Henry Lesansky as hearing officer and in his decision to ignore the initial ruling of the administrative law judges that the DOC Employees will **not** have, "a fair and adequate opportunity to raise [their] federal claims in the state proceeding." Id at 65. These DOC Employees are ultimately seeking remedies that are not available to them at the administrative/state level based directly on federal claims including deprivation of property rights and defamation plus. The hearing officer, even if he were so inclined, is not in a position to issue the injunction the DOC Employees seek nor could he grant the damages the DOC Employees ultimately seek in their Complaint. The Younger test is therefore satisfied in favor of this Court not showing equitable restraint in this case and making a determination on the merits of this Motion.

### B.  Injunctive Relief Should Be Granted.

Plaintiffs' Motion for Partial Summary Judgment satisfies each element of the four part required for a permanent injunction: (1) a substantial likelihood to succeed on the merits; (2) that they would suffer irreparable harm if the relief is denied; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction. Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.D.C. 1998); Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 259 F.2d 921, 925 (1958).

#### 1.  Plaintiffs have shown a likelihood to succeed on the merits.

Both the Plaintiffs' Motion for Partial Summary Judgment and their Opposition to Defendants' Motion to Dismiss fully set forth Plaintiffs' argument as to why they are entitled to

relief sought in this case. Plaintiffs have exhausted their administrative remedies in that they have already taken part in the administrative hearing process where administrative law judges resoundingly stated they could not be summarily removed and must be returned to work. Plaintiffs have also laid out the case law before this Court establishing their property interest in their jobs and therefore their Constitutional right to not be deprived of that property without due process. In support of their argument that Plaintiffs are likely to succeed on the merits, Plaintiffs would simply request this Court review the arguments made in their Motion for Partial Summary Judgment and their Opposition to Defendants Motion to Dismiss.

### 2. Plaintiffs continue to suffer irreparable injury.

Defendants cite Sampson v. Murray in support of their argument that Plaintiffs cannot demonstrate they will suffer irreparable injury without the requested injunction. Defendants' brief incorrectly asserts that the, "Plaintiffs claims are directly analogous to those made, and rejected," in Sampson. See Defendants' Opposition P. 6. The plaintiff in Sampson had not yet been discharged from a civil service position and was arguing before the Court that any proposed discharge would fail to conform to the rules of the administrative process. See Sampson v. Murray, 415 US 61 (1974). Defendants would like this Court to believe that situation is analogous to the instant case; however, such an argument completely ignores the administrative procedures that have already taken place in this matter. Unlike the Plaintiff in Sampson, it has already been determined through the administrative hearing process that these DOC Employees CANNOT be summarily removed and are entitled to their positions. The Plaintiff in Sampson could make no such claim.

Additionally, the majority in the Sampson decision did speak to the requirement of irreparable injury and stated that, "The possibility that adequate compensatory or other corrective

relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Id at 90.  However, in the context of this case, the Plaintiffs have little reason to believe that corrective relief will be available at a later date.  After being vindicated in the initial round of administrative hearings, these Plaintiffs were not given the relief granted to them, namely their positions within the DOC.  Rather, a second round of hearings was instituted with a clearly biased hearing officer who is extremely unlikely to find in their favor.  Even given the remote possibility he would find in the DOC Employees favor, there are no assurances that that decision would result in their jobs being returned given Director Brown's clear intention to try every means, legitimate or otherwise, to terminate these DOC Employees.

    Defendants' Opposition also attempts to negate the injury suffered by these DOC Employees throughout this process and the irreparable damage it has done to their professional reputations.  The repeated attempts to terminate these DOC Employees have carried with them a strong implication that they aided and abetted criminals by facilitating their escape.  Although the majority in Sampson may have felt that, "no significant loss of reputation would be inflicted," it would seem that Justice Douglas' dissent more accurately captured the impact a wrongful termination, specifically in circumstances such as this, can have on a government employee when he wrote, "Employability is the greatest asset most people have. Once there is a discharge from a prestigious federal agency, dismissal may be a badge that bars the employee from other federal employment." Sampson, 415 U.S. at 94 (Douglas dissenting).

    Plaintiffs have therefore demonstrated an irreparable harm which satisfies this element of the injunction analysis.  While they may be on administrative leave with pay, the continued damage being done to their reputation may ultimately prove irreparable if the current attempt to

wrongfully terminate them proceeds.  As stated in Greene, "Although the primary reason for granting a preliminary injunction is to prevent irreparable harm, this factor is less decisive where the likelihood of success on the merits is very strong." District of Columbia v. Greene, 806 A.2d 216, 223 (D.C. 2002).  Given the DOC Employees strong argument, supported by the findings of the administrative judges that they are entitled to their jobs, this factor should not prove decisive for this Court.

### 3.   The balance of harm favors granting the injunction.

If the second round of termination hearings is allowed to continue and the injunction is not granted, Plaintiffs will suffer great harm in the form of lost employment, damage to reputation and future employment possibilities.  The Defendants will suffer no harm at all if the injunction is granted as they have already had the opportunity to litigate and determine whether these DOC Employees may be terminated.  The Defendants have already had every opportunity in the initial administrative hearings to terminate these DOC employees in a manner which comported with DC Law.  At that time they were able to make any argument available to them as to why these DOC Employees should no longer hold their positions.  An injunction denying them a second opportunity to go after these same DOC Employees will not cause any harm to the DOC other than requiring them to follow their own procedures.

As the Defendants properly stated, "The Court's interference in the daily personnel decisions of an agency would severely handicap the agency in performing its functions." See Defendants Opposition P. 8.  An injunction is only appropriate here because the agency is in fact inviting the action of the Court by disregarding the valid findings of the administrative hearing judges and initiating a second series of terminations which have no basis in law.  If the agency had chosen to enforce the findings of the administrative judge there would be no "interference"

from the Court in agency functions. Instead, the Defendants, and specifically Director Brown have chosen to thumb their nose at the administrative process which has necessitated the request for this injunction.

### 4.    The public interest is best served by granting injunctive relief.

Plaintiffs agree with Defendants' citation of, "the public interest is advanced whenever the administrative process is completed" from District of Columbia v. Greene, 806 A.2d 216 (D.C. 2002). In the instant case, the public interest is best served by the enforcement of the administrative process which has already been completed. The public interest is best served when the government faithfully and dutifully implements the laws to which it is subject, including the laws its officers are trusted to administer. In this case, the DOC Employees placed their faith and in the procedures established by the CMPA and the Collective Bargaining Agreement. They dutifully participated in the administrative process and were ultimately vindicated with a statement from the administrative judges that they were entitled to their jobs. At that stage the administrative process was completed and the public interest would best be served by the enforcement of the findings of that process. Given those facts, this prong of the injunction analysis is clearly satisfied as the public interest is best served by proper enforcement of the administrative proceedings upon their completion.

WHEREFORE, this Court should grant Plaintiffs' Motion for Partial Summary Judgment as to Count IV in this matter.

Respectfully submitted,

HANNON LAW GROUP, LLP


      */s/ J. Michael Hannon*
J. Michael Hannon, #352526
1901 18th Street, NW
Washington, DC 20009
(202) 232-1907
Fax: (202) 232-3704
jhannon@hannonlawgroup.com

*Attorneys for Plaintiffs*


# CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing, **Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment** was sent via electronic filing, this 2nd day of October, 2007 to:

David Jackson, Esq.
Office of the Attorney General
441 Fourth Street, NW
6 South
Washington, DC 20001


      */s/ J. Michael Hannon*
J. Michael Hannon