## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CYNTHIA WASHINGTON, *et al.,* | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Case Number: 1:07-cv-01031 (RMU) |
| | : | |
| v. | : | |
| | : | |
| DISTRICT OF COLUMBIA, *et al.,* | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Come now Plaintiffs Cynthia Washington, Herbert Douglas, Lorenzo Jennings, Dionne

Makins, Alphonso Bryant, Lowanda Hinton-Saunders, Darryl Love, and Shantell Hatton ("DOC

Employees")[1] through their attorneys, HANNON LAW GROUP, LLP and submit this motion

for preliminary injunction pursuant to Federal Rule of Civil Procedure 65 and Local Rule of

Civil Procedure 65.1 (c).  The DOC Employees seek an order from the Court enjoining the

Defendants from removing the Employees from their current positions until the outcome of the

pending litigation in this matter.

In support of this motion, the DOC employees rely upon the Memorandum of Points and

Authorities, the Declarations and Exhibits filed herewith as well as their previously filed Motion

for Partial Summary Judgment.

## REQUEST FOR HEARING

Plaintiffs request that a hearing be scheduled in 20 days.  Should the Court not grant

Plaintiffs' Motion for an Emergency Temporary Restraining Order, Plaintiffs shall be discharged

from their Government employment pending the outcome of this litigation.  Plaintiffs have

---

[1]     Malcolm Pointer has retired from the DOC since this action was filed.  Therefore, he is not participating in this motion.

previously filed a Motion for Partial Summary Judgment seeking a judicial order finding that

they are entitled to their jobs.  This motion seeks an accelerated schedule to determine that issue,

since Defendants have given notice of their intent to discharge these Employees as of December

17, 2007.  The pre-emptive decision jeopardizes the livelihood of these DOC Employees, causes

a deprivation of their property rights, and otherwise causes irreparable harm.  Plaintiffs contend

that Defendant Devon Brown orchestrated the timing of their firing to coincide with the

Christmas season out of vindictiveness, personal animosity, and bad faith.

Plaintiffs also request leave to take expedited discovery of Defendants in preparation for

a hearing on this motion.

WHEREFORE, the DOC Employees, respectfully request that their motion for

preliminary injunctive relief be granted.

Respectfully submitted,

December 20, 2007                     HANNON LAW GROUP, LLP

_____*/s/ J. Michael Hannon*_____
J. Michael Hannon, #352526
1901 18th Street, NW
Washington, DC 20009
(202) 232-1907
Fax:  (202) 232-3704
jhannon@hannonlawgroup.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing, **Plaintiffs' Motion for Preliminary Injunction, Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction, Amended Statement of Material Facts Not in Dispute in Support of Plaintiffs' Motion for Partial Summary Judgment and Proposed Order** was sent via messenger and electronic filing, this 20th day of December, 2007 to:

David A. Jackson, Esq.
Office of the Attorney General
441 Fourth Street, NW
6 South
Washington, DC 20001


　　　　　　　　　　　　　　　*/s/ J. Michael Hannon*
　　　　　　　　　　　　　　　J. Michael Hannon

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CYNTHIA WASHINGTON, *et al.,* | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Case Number: 1:07-cv-01031 (RMU) |
| | : | |
| v. | : | |
| | : | |
| DISTRICT OF COLUMBIA, *et al.,* | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs Cynthia Washington, Herbert Douglas, Lorenzo Jennings, Dionne Makins, Alphonso Bryant, Lowanda Hinton-Saunders, Darryl Love, and Shantell Hatton ("DOC Employees")[1] through their attorneys, HANNON LAW GROUP, LLP, respectfully submit this Memorandum of Points and Authorities in support of their Motion for an Emergency Restraining Order and Preliminary Injunction.  The DOC Employees seek an order from the Court enjoining the Defendants from terminating them from their current positions until the outcome of this litigation.

Plaintiffs have filed a Motion for Partial Summary Judgment seeking a ruling in their favor on their claim for Injunctive Relief.  With the motion, the DOC Employees also filed a Statement of Material Facts Not in Dispute, supported by 46 Exhibits.  The basis for this motion is much the same as that for the motion for partial summary judgment.  We would ask the Court to accept those pleadings in support of this motion.  In addition, we have filed with this motion

---

[1]    Plaintiff Malcolm Pointer has retired from the DOC since the filing of this lawsuit.  Therefore, he is not participating in this motion.

an Amended Statement of Material Facts Not in Dispute which includes additional information requiring this motion.

## **FACTUAL BACKGROUND**

The following statement of facts is a summary of the facts contained in Plaintiff's Motion for Partial Summary Judgment and the Memorandum in Support thereof ("MPSJ"). In addition, Plaintiffs include summary information about events that have transpired since the filing of the Motion for Summary Judgment and included in further detail in the Amended Statement of Material Facts being filed contemporaneously.

Two of the Central Detention Facility's ("CDF") most dangerous inmates, Joseph Leaks and Ricardo Jones, escaped from the D.C. Jail on June 3, 2006. The escape was widely reported in the press, and was a direct result of the DOC's and Director Brown's failure to remedy safety issues, such as a skeleton work force and forced overtime, which had been repeatedly brought to his attention by the FOP/DOC Labor Committee. See MPSJ at 3. The complaints by the FOP/DOC foresaw the jail escape.

On the day of the escape, the DC Jail was understaffed by 58 out of the 121 positions required. The "solution" was to force 41 officers to work overtime on that shift and to "shutdown" 17 posts. Seven of the DOC Employees fired were working forced overtime, working posts for which they had not been trained, or working understaffed posts. In an effort to deflect continued public attention from deplorable working conditions, severe management deficiencies, and criticism of his leadership of the DOC, Director Brown on June 5, 2006, issued written notification to the DOC Employees named in this lawsuit putting them on paid administrative leave pending further investigation of the escape.

2

On June 26, 2006, a DOC Oversight Hearing chaired by Councilmember Phil Mendelson was held to continue review of the jail escape and the general safety and management of the CDF.  At this hearing, Councilmember Mendelson questioned DOC Director Brown.  <u>See</u> MPSJ at 5.  Director Brown failed to disclose to the Council that the CDF was dangerously understaffed that day, and that he knew that forced overtime was causing corrections officers to be less reactive and less efficient.  A month later, on July 26, 2006, at the Mayor's Weekly Press Briefing, the Mayor, DOC Director Brown and the City Administrator, Robert Bobb, announced the summary firings of the DOC Employees who had been on paid administrative leave.  The DOC Employees were not notified of their firing prior to the Weekly Press Briefing.  Instead, DOC Director Brown intentionally humiliated and embarrassed the fired DOC Employees on television casting them in the public light as felons who abetted a jail escape as he coupled their firings with an announcement that a criminal investigation, targeting them, was pending.  <u>See</u> MPSJ at 5-6.

In order to accomplish this public humiliation and summary firing, the DOC engaged in an unlawful and unconstitutional revision of existing D.C. laws which would have prevented them from conducting a summary discharge in a public press briefing.  The District of Columbia amended provisions to the District of Columbia Personnel Manual ("DCPM").  The DCPM provided that in cases of Summary Removal, proper written notification of the action was to be provided to the employee and the FOP/DOC within three (3) days of removal ("3 Day Rule").  DCPM § 1616.4.  <u>See</u> MPSJ at 7-8; Amended Statement of Material Facts (ASMF) at ¶ 1a.  On the date of the news conference, the DCPM was amended so that the information supporting summary removal need not be provided until 30 days after removal.  <u>See</u> MPSJ at 7-8.

The variation which allowed for this ex post facto deprivation of due process rights to the discharged DOC Employees was issued by the Director of Personnel relying on information provided by Joan Murphy of the DOC Human Resources Office that tape recorded interviews of the Employees had not been transcribed.  See AMSF at ¶ 1b.  However, during a December 6 hearing before the D.C. Public Employee Relations Board in PERB Case No. 06-U-50, testimony by Neal R. Gross of Neal R. Gross and Co., Inc., a court reporting company which transcribed the aforementioned interviews, contradicted the DOC's claims.  In fact, Mr. Gross testified that the vast majority of the tapes (13) had been transcribed and delivered to the DOC on June 27, 2006, a month before the Variation was issued.  Mr. Gross further testified, that tapes of four other interviews of some of the DOC Employees were ordered by the DOC on July 25, 2006, and were delivered by email on July 27, 2006, the day after the Variation was executed.  See AMSF at ¶¶ 1c-1e.  The DOC lied to the Director of Personnel in order to effect the summary dismissal of the DOC Employees at the Mayor's News Conference.

Summary Removal is permitted under D.C. law when an employee's conduct offers an immediate threat to the integrity of governmental operations; constitutes an immediate hazard to the agency, to other District Employees or to the employee; or, is detrimental to public health, safety, or welfare, as provided for in D.C. Code § 1-616.51.  None of these circumstances existed on or even near the date of the DOC Employees' firings.  See MPSJ at 8.  The DOC Employees contend that this statute is unconstitutional as a violation of due process and as applied to them.

On or about August 1, 2006, almost two months after the jail escape, the DOC Employees were finally provided written notice by the DOC that they had been summarily discharged from their employment with the DOC.  In violation of their constitutional rights they were given no notice or a right to be heard.  See MPSJ at 8-9.  Not until almost four weeks later,

4

On August 24, 2006, did the DOC Employees receive the constitutionally required notice

informing them that an administrative review would be conducted by the Office of

Administrative Hearings (OAH).  OAH agreed to conduct the review at the request of the DOC.

See Id.[2]

The Judges of the OAH conducted administrative hearings required in these cases

consistent with Chapter 16 of the DCPM and the Collective Bargaining Agreement between

Defendant DOC and FOP/DOC ("CBA").[3]  The Judges of OAH issued a Report and

Recommendation in each case on December 11, 2006, concluding that the summary removals

could not be sustained and recommending that the Employees be returned to work.  Instead of

issuing a final decision returning the Employees to work as he was required to do by the DCPM

and the CBA, Director Brown submitted remand notices for most of the Employees. These

notices were issued on January 7, 2007, in violation of a 45-day deadline required by D.C. laws.

See MPSJ at 11-12.  The remand notices directed the panel of administrative law judges to re-

consider the determination and recommendations included in their Final Reports and

Recommendation issued to the DOC pursuant to 6 DCMR § 1616.6(a).

The OAH Judges issued a second round of Reports and Recommendations on Remand in

the individual Employees' cases on March 2, 2007, again finding that Summary Removal could

not be sustained and directing that the DOC Employees be reinstated to their positions

immediately.   Further, the OAH judges noted that Director Devon Brown filed the Remand

notices late and that he was in direct violation of the 45-day rule requiring a final agency

---

[2]        The OAH is an independent office of the District of Columbia Government created to provide experienced
and independent hearing officers to review disputed matters of various D.C. Agencies.  The appointment of the
OAH Judges was optimistically received by the DOC/FOP because of the practice of the DOC assigning hearings to
its own administrative staff who are conflicted by their relationship to the Director.

[3]        See Memorandum MPSJ at 10-11 for an articulation of the requirements set forth in Chapter 16 of the
DCPM and the CBA.

decision within the statutory time frame.  <u>See</u> MPSJ at 11-12.  Unmoved by the reprimand of the OAH Judges, Director Devon Brown simply refused to issue a final decision at all as required by law.

Upon Director Brown's refusal to issue a final decision returning them to work, DOC Employees filed a Petition for Writ of Mandamus with the District of Columbia Court of Appeals on March 12, 2007, to compel Defendant Brown to return them to work.  In response, senior management at the DOC simultaneously rescinded and cancelled the proposals for summary removal of the Employees in order to avoid an adverse decision by the District of Columbia Court of Appeals.  In addition, the DOC Employees were lead to believe by DOC personnel that they were being returned to work, as they were each told to report to DOC headquarters to be "reinstated."  <u>See</u> MPSJ at 12-13.

Upon reporting to DOC headquarters on the morning of March 16, 2007 as instructed, the DOC Employees were given a letter of rescission and reinstatement in one hand and a letter putting them all on administrative leave in the other.  Director Brown rescinded the summary removals and replaced them with 20-day termination notices based on the exact same allegations.  <u>See</u> ASMF at ¶ 13.  New hearings would be held under the review of hearing officer Defendant Henry R. Lesansky, Ph.D., in order to ensure that Director Brown's desire to terminate the employees would be fulfilled.  As an Excepted Service employee of the DOC, under Director Brown's direct supervision, it was guaranteed that Dr. Lesansky would do his bidding.   He serves at the pleasure of Defendant Brown.  <u>See</u> MPSJ at 14.

There is no statutory provision nor is there a section of the applicable CBA which allows the DOC the "do-over" which Director Brown has gifted himself and imposed upon the DOC employees.  <u>See</u> ASMF at ¶ 16.  Nonetheless, the DOC Employees participated in the unlawful

second-round hearings.  See ASMF at ¶ 17.  Predictably, Dr. Lesansky recommended removal

for all DOC Employees, and Director Brown promptly issued second round decisions on

December 14, 2007 terminating the DOC Employees under the same misguided allegations

presented to the Office of Administrative in the initial hearings.  See ASMF at ¶ 18.

A complaint was filed with this Court on June 8, 2007 commencing a lawsuit in this

matter.  The lawsuit is based in large part on the unlawful revision of the 3 Day Rule, the

Director's refusal to return the Employees to work as required by law, and the "do-over" by

Director Brown.  Plaintiffs "own" their jobs and have earned them back through the procedures

required under D.C. law.  There is no basis in law for terminating them in Director Brown's

abhorrent and vindictive effort to avoid personal responsibility for the Jail Escape.  In addition,

the record presented by these Employees is replete with abusive conduct by Director Brown:

failing to copy counsel with pleadings filed with the OAH; making public statements defaming

these Employees; intentionally misleading these Employees into believing they were being

returned to work; directing his counsel to mislead undersigned counsel regarding the so-called

return to work; evading a decision by the D.C. Court of Appeals by constructing an unlawful

"Do Over"; postponing his coup de grace until December 14, 2007, the day before the DOC/FOP

Holiday Party and the peak of the Christmas season.

## **ARGUMENT**

### I.    **STANDARD GOVERNING THE ISSUANCE OF A PRELIMINARY INJUNCTION**

In deciding whether a preliminary injunction is appropriate, the Court must consider four

factors: (1) plaintiff's likelihood of success on the merits; (2) the threat that plaintiffs will suffer

irreparable harm if an injunction is denied; (3) the likelihood that defendants will suffer

substantial harm if an injunction is granted; and (4) the public interest. Nat'l Treas. Employees Union v. United States Dept. of Treas., 838 F. Supp. 631, 636 (D.D.C. 1993) (H.Greene, J.). Injunctive relief is warranted in this matter to enjoin Defendants from terminating the DOC Employees until the outcome of this litigation. Absent such an injunction, the DOC Employees will suffer irreparable injury. Plaintiffs refer to and adopt the arguments in their Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, and in Support of Plaintiffs' Motion for Partial Summary Judgment and their Reply to Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment previously filed in this matter. In addition, the DOC Employees submit the arguments below.

**A.     The DOC Employees are Likely to Succeed on the Merits of This Case.**

**1.     The DOC Employees Have Been Deprived Their Property Right.**

The underlying facts in this case are clear and undisputed. In August, 2006, the DOC Employees were given notices of summary removal and administrative hearings were held to examine the legality of the summary removals. These hearings were conducted by disinterested administrative law judges through the Office of Administrative Hearings. The judges examined whether these DOC Employees had committed "misconduct" or "gross misconduct" justifying their summary removal.

In each case, the Report and Recommendation of the assigned Judge with the Office of Administrative Hearings concluded that the employee could not be summarily removed and that the DOC Employees should be returned to work. The District of Columbia Municipal Regulations, the FOP/DOC Collective Bargaining Agreement, and the Comprehensive Merit Protection Act required Director Brown to return the Employees to work based on the recommendations of the Judges of the OAH. He refused. Instead, DOC Director Devon Brown

rescinded the original summary removal action, placed the DOC Employees on paid administrative leave, and served them with new notices of proposed termination based on the same allegations reviewed by the OAH Judges.  Defendants have conceded that there is no statutory or other legal authority supporting their effort to re-litigate the discharge of the DOC Employees as related to the jail escape of June 3, 2006, and now terminate them.

The DOC Employees have a property interest in their public employment.  Their rights are born of the Due Process Clause of the United States Constitution, which states that no person shall be, "deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."  United States Constitution, Amendment V.  In the public employment context the "*resulting and inherent property interest in employment*" derives from a legitimate claim of entitlement that arises not from the United States Constitution, but from independent sources such as state statutes, agency rules or policies, or agreements as to employment.  Board of Regents v. Roth, 408 U.S. 564, 577-78 (1972). (emphasis added).

Pursuant to this formula, the District of Columbia Comprehensive Merit Protection Act and the CBA gives the DOC Employees a property interest in their jobs.  "It is undisputed that the Comprehensive Merit Protection Act ("CMPA") creates a property interest for Employees governed by it.  The CMPA establishes a Career Service for Employees in which they are guaranteed to be promoted based on merit and cannot be terminated without cause…. Under the CMPA, Employees can only be disciplined for cause and prior notice must be given." Fonville v. D.C., 448 F. Supp. 2d 21 (D.D.C. 2006) (internal citations omitted).  See also, D.C. Department of Corrections v. Teamsters' Union Local, 554 A.2d 319, 323 (D.C. 1989).

Because the DOC Employees have a property interest in their public employment, the District of Columbia must abide by procedures as are necessary to afford procedural due process before taking any adverse action.  See Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985).  In Loudermill, the Supreme Court advanced the proposition that government Employees must be afforded procedural guarantees before they can be terminated, precisely because they have an inherent property interest in those jobs.  The administrative hearing process of the CMPA and the CBA, which the Employees fully complied with, are those procedures for the DOC Employees.

Both the CMPA and the CBA outline the methods by which an employee's property rights are protected and how that termination can be appealed and reviewed.  Defendants are obligated by the Constitution to abide by internal, procedural regulations defining due process rights when proposing the dismissal of employees.  See Lopez v. FAA, 318 F.2d 242, 246 (D.C. Cir. 2003).  Abiding by the pre-termination procedures in these matters meant that Director Brown must follow the recommendations of the OAH judges.  After having chosen to remove these Employees via summary removal, Defendants were bound by the outcome of those proceedings.  DOC Director Brown was required by the DCPM to issue a Final Decision within 45 days of the delivery of the initial summary removal notices:

> The final decision in the case of summary suspension or summary removal action taken pursuant to §§ 1615-1616, respectively, shall be rendered not later than forty-five (45) days from date of delivery of the summary suspension or summary removal notice, as appropriate except that the period may be extended as follows:
>
> > (a) when the employee requests and is granted an extension of time in which to respond  under § 1611.2; or
> >
> > (b) when the employee agrees to an extension of time requested by the agency.

6 DCMR 1614.3. In addition, both the CBA and the DCPM require that DOC Director Brown

follow the recommendation of the OAH Judges in this case. Article 11, Section 9(D) of the CBA

specifically states (emphasis supplied):

> Deciding Official shall issue a final decision after reviewing the recommendation
> of the Disinterested Designee/Hearing Officer. The deciding official may sustain
> or reduce the penalty recommended by the Disinterested Designee, remand the
> matter for further consideration by the Hearing Officer, or dismiss the charge <u>but
> may not increase the penalty recommended by the Disinterested
> Designee/Hearing Officer</u>.

Furthermore, Section 1613.2 of the DCPM also states with specificity that (emphasis supplied):

> The deciding official shall either sustain the penalty proposed, reduce it, remand
> the action with instruction for further consideration, or dismiss the action with or
> without prejudice, <u>but in no event shall he or she increase the penalty</u>. 6 DCMR §
> 1613.2.

The CBA offers the DOC only three options in response to the Hearing Officer's (the

Judges of the OAH) recommendations. The DOC is allowed to 1) sustain or reduce the penalty

proposed; 2) remand the matter for further consideration; or 3) dismiss the charges. CBA Article

11, Section 9(D). DOC Director Brown may not increase the recommended penalty, and there is

certainly no language in the CBA which allows for the cancellation of the proposed action and

then re-adjudication of the matter.

Any manipulation of such procedures is an unconstitutional violation of due process. On

December 11, 2006, Reports and Recommendations were issued by the administrative law

judges assigned by the OAH to undertake review of the proposed summary removals. After

complying fastidiously with the administrative process, each DOC Employee was found entitled

to be returned to his or her position within the DOC.

## 2.    <u>The DOC Does Not Have a Right to a "Do Over"</u>

11

The Director chose to use the summary removal procedure to terminate these Employees and had every opportunity to substantiate the allegations during the administrative review process. Unable to justify the summary removal of the Employees, Defendants are not free to simply "take back" their initial termination attempt and try another method. Granting government employers the right to attempt to terminate Employees for the same infractions in repeated hearings denies the Employees due process in that no procedure is "meaningful" until the government agency finds the outcome it desires. What resolution can a government employee with a protected property interest in his employment hope to find from an administrative review procedure if there is no guarantee the outcome is enforceable?

Each report of the Judges of the OAH clearly stated that the employee could not be summarily removed and such removal would be a violation of due process. Given the recommendations, Defendant Brown did not have the option of removing the DOC Employees based on allegations arising out of the June 3, 2006 escape. His actions were confined to those clearly outlined in the Collective Bargaining Agreement, District Municipal Regulations and the Memorandum of Understanding. The Supreme Court has long recognized that "an agency is bound to the standards by which it professes its actions to be judged." Service v. Dulles, 354 U.S. 363, 373-76 (1957). Furthermore, a government agency must engage in "scrupulous compliance" with its own procedures for discipline and removal of employees. Lerner v. District of Columbia, 362 F. Supp.2d 149, 161 (2005) U.S. Dist. LEXIS 3565 (D.D.C. 2005).

Additionally, under the legal doctrine of res judicata, one party in a legal proceeding is prevented from obtaining another day in court after receiving an unsatisfactory result to his/her claim. There is an abundance of legal precedent supporting this doctrine. Judge Harris has held that "a final judgment on the merits of an action precludes the parties or their

12

privies from re-litigating issues that were or could have been raised in that action." Arakawa v. Reagan, 666 F. Supp. 254, 262 (1987), citing Allen v. McCurry, 449 U.S. 90, 94 (1980). Judge Harris reasons that "[t]his preclusive effect attaches to administrative proceedings when, as with proceedings before the MSPB, the administrative tribunal 'is acting in a judicial capacity and resolves issues of fact properly before it which the parties have had an adequate opportunity to litigate' and there is an opportunity for judicial review of adverse decisions." Id. (internal citations omitted).

This is a clear case of res judicata, which is itself a constitutional principle. Director Brown has done nothing more than gift the Agency with a "do over" with the most recent proposed and effected termination of the DOC Employees. It is important to note that the bases for the most recent termination of the DOC Employees are *identical* to the allegations made in the initial proposed summary removal. The Director did not agree with the decision of the OAH Hearing Officers, and found a more receptive audience within the confines of the DOC in order to obtain the result he wants – unlawful termination of the DOC Employees. There are no duly ordained procedures which allow this.

**B.      Plaintiffs Will Suffer Irreparable Harm if the DOC is Allowed to Terminate the Employees Before the Conclusion of This Lawsuit.**

One of the most salient factors in the injunctive relief analysis is that of irreparable harm. Farris v. Rice, 433 F. Supp. 2d 76, 78 (D.D.C. 2006)(Urbina, J.). In the context of government employment, irreparable harm requires more than a showing of financial distress or inability to find other employment. McElrath v. Kemp, 714 F. Supp. 23, 28 (D.D.C. 1989) (Sporkin, J). A preliminary injunction will not be issued unless the applicant can show irreparable harm in the form of "extraordinary" circumstances. Farris v. Rice, 433 F. Supp.

2d at 80.  Specifically in employment cases, the Court is charged with giving significant consideration to the "obviously disruptive effect which the grant of temporary relief is likely to have on the administrative process."  Id. (citing, Sampson v. Murray, 415 U.S. 61, 83-84 (1974).

The DOC Employees submit to the Court that administrative procedures have already taken place in this matter.  The administrative hearings in these proceedings have already been held and decisions made.  In fact, the OAH Judges who heard this matter, at the request of the Defendants, determined that the DOC Employees cannot be summarily removed and are entitled to be reinstated in their positions.  The second round of removal notices with the predictable outcome of termination is a second bite at the apple to which the Defendants are not entitled.

The recent termination of the DOC Employees falls squarely within the realm of extraordinary circumstances.  The circumstances depart so far from any normal case of injury to a discharged employee that a grant of injunctive relief is appropriate.  See Bonds v. Heyman, 950 F. Supp. 1202, 1211 (D.D.C. 1997) (Lamberth, J.).  In Bonds, Judge Lamberth granted preliminary injunctive relief, barring the Defendant employer, Smithsonian Institution, from terminating an employee pending the outcome of a civil rights lawsuit against the federal employer.  The court granted such relief after observing that the plaintiff (1) was 58 years old, (2) was an employee of the Smithsonian Institution for 40 years, (3) was not college educated, (4) worked her way up from a typist to a program analyst, and (5) was unlikely to find work with a commensurate level of responsibility, if she could find work at all.  Id. at 1215.  The DOC Employees share similar circumstances with the additional exception that they have already earned their jobs back through the administrative process

14

established by Defendants. Unlike the employee in <u>Bonds</u>, the DOC Employees have already earned reinstatement. The "Do Over" created by Defendants has taken away that to which these Employees are entitled: the substantive due process right of return to work.

This Court's decision in <u>Farris v. Rice</u> and Judge Lamberth's decision in <u>Bonds</u> both flow from the Supreme Court's opinion in <u>Sampson v. Murray</u>, 415 U.S. 61 (1974), although the results differ. In <u>Sampson</u>, the Supreme Court considered whether injunctive relief was available to enjoin the wrongful discharge of a government employee. The Court stated that a plaintiff "at the very least must make a showing of irreparable injury sufficient in kind and degree to override [the] factors cutting against the general availability of preliminary injunctions in Government personnel cases." <u>Id.</u> at 84. The Court recognized that "extraordinary cases" may arise in which the circumstances with respect to the injury of the discharged employee "so far depart from the normal situation" that the grant of injunctive relief would be appropriate. <u>Id.</u> at 92 n. 68.

Since <u>Sampson</u>, several courts have been reluctant to issue preliminary injunctions in employment termination cases citing a failure of the plaintiff to show irreparable injury. <u>See</u> <u>Gonzalez v. Chasen</u> 506 F.Supp. 990, 998 (D.P.R. 1980). However, in accordance with <u>Sampson</u>, several courts have recognized the distinguishing circumstances of extraordinary cases. <u>Sampson</u> did not establish a per se rule against the issuance of preliminary injunctions in employment termination cases; therefore, the duty to scrutinize the facts and distinguishing circumstances of each case continues to rest on the courts.

In considering requests for relief, courts have held that the violation or deprivation of a constitutional right is sufficient to show irreparable harm. In fact, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of

15

irreparable injury is necessary." <u>Jessen v. Lyndon Station</u>, 519 F. Supp. 1183, 1189 (D. Wis. 1981) (<u>citing</u> Wright & Miller, Federal Practice and Procedure: Civil, §2948 at 440).  Loss of a constitutional right is a loss that cannot adequately be compensated, in that once the loss is suffered, no adequate means of restoring that right is available.  <u>See</u> <u>Jessen</u>, 519 F. Supp. at 1189.

In a case involving the dismissal of law enforcement employees, the United States District Court for the Eastern District of New York applied <u>Sampson's</u> own expressly qualifying language in enjoining the summary dismissal of the employees, stating that, in addition to other factors, the "total denial of due process" constituted sufficient irreparable injury to justify extraordinary relief.  <u>Keyer v. Civil Service Commission of City of New York</u>, 397 F. Supp. 1362 (E.D.N.Y. 1975).

Similarly, the United States District Court for the Western District of North Carolina issued a preliminary injunction in a case involving the discharge of a state employee finding that a constitutional violation had been established when the employee was discharged without a hearing.  The court found that a constitutional violation had been established and that the "continuing denial of liberty and property without due process [was] causing [the plaintiff] irreparable harm."  <u>Faulkner v. North Carolina Dep't of Corrections</u>, 428 F. Supp. 100, 103 (D.N.C. 1977).  Distinguishing <u>Sampson</u>, the court noted that unlike the interests and rights involved in the case before the court, there was no liberty interest infringed in <u>Sampson</u>.

Moreover, the United States Supreme Court has also recognized that violation or deprivation of constitutional rights is sufficient to show irreparable injury.  Specifically, the Court determined that a threat of discharge for exercising First Amendment rights was

sufficient to establish irreparable harm. <u>Elrod v. Burns</u>, 427 U.S. 347 (1976). The Court stated that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." <u>Id.</u> at 374. The situation in <u>Elrod</u> implicated First Amendment rights, and although "courts often give First Amendment values preferred or special status . . . , it does not follow . . . that other fundamental constitutional rights must necessarily receive less protection in all instances." <u>Jessen</u>, 519 F. Supp. at 1189 n.3.

The Supreme Court has noted that it is the threat of harm that cannot be undone that authorizes exercise of the equitable power of the courts to enjoin before the merits are fully determined. <u>See</u> <u>Sampson v. Murray</u>, <u>supra</u>, and <u>Beacon Theaters v. Westover</u>, 359 U.S. 500, 506-507 (1959). In <u>National Treasury Employees Union</u>, Judge Harold Greene found that the "threatened loss of constitutional rights" constituted injury that cannot be undone. 838 F. Supp. at 640. In the instant case, the Plaintiffs have suffered not just a threat but an <u>actual</u> loss of constitutional rights. As the Plaintiffs have suffered irreparable harm per se, they have a constitutional right to be sent back to work pending the outcome of this litigation.

The DOC Employees have served the DC DOC for decades in most cases. As a result, they have served the District of Columbia for enough years to soon retire and receive full retirement benefits. Termination of the employees at this point denies them the benefits that they are due upon retirement. Further, as District of Columbia Department of Corrections Correctional Officers, Plaintiffs are eligible to retire as law enforcement officials. Such status gives them the right to carry a registered firearm under federal law. The ability to carry a firearm as a retired law enforcement official not only permits them to protect themselves and their families from the residue of their employment history, but also provides them with significant benefits in future employment with significantly higher

17

salaries than they would be able to earn as disgraced ex-correctional officers.  The lives of

the DOC Employees are tied into their careers.  See Bonds v. Heyman, 950 F. Supp. at 1215.

Allowing them to be terminated and taking away their ability to retire as law enforcement

officials in essence takes away their ability to be employed in the only profession that they

have known for most of their working lives.

       With only one exception, none of these Employees has been able to obtain new

employment either in private security or in law enforcement.  In the parlance, they have been

"fried", and potential employers will not accept these persons as new employees.  One officer

who was previously "fried" had her marriage ruined as a result of the economic pressure

caused.  All of the employees have homes with mortgages, some with second mortgages.

Children's tuitions are at risk, as well as relationships and emotional well-being.  One

employee who has the most time in corrections is nearly despondent of being able to return to

this profession due to the destruction of his faith in the Government.

       Moreover, these Employees and their families shall lose critical medical and

retirement benefits.  During the many months when these Employees were removed without

pay, several depleted their retirement accounts.  Several went without health care, or resorted

to health care through their veterans' status.  None has been able to get a foot in the door of

any other law enforcement agency because of the pendency of this matter.  They have been

stigmatized by the press and denounced as felons by DOC Director Brown and former City

Administrator Robert Bobb on television.  They have also been played as fools by Director

Brown.

       Perhaps Director Brown will argue that these same circumstances exist with any

disciplined government employee.  However, he has picked on the cream of the crop, those

18

in the prime of their experience, and those whose employability has been destroyed. These employees are also entitled to special consideration by the Court because of the manner in which Director Brown has been permitted by this Government to conduct these proceedings. There is absolutely no precedent for the vengeful process he has charted. This escape occurred under his watch. Where is his sense of responsibility?

## C.     Preliminary Injunctive Relief Will Not Injure The Defendants.

The Defendants will suffer no harm at all if the preliminary injunction is granted, as they have already had the opportunity to litigate and determine whether these DOC Employees may be terminated. It was decided by the OAH Judges that the DOC Employees could not be terminated. It was further decided that the Plaintiffs should be reinstated. The Defendants have already had every opportunity in the initial administrative hearings to terminate these DOC employees in a manner which comported with DC Law. At that time they were able to make any argument available to them as to why these DOC Employees should no longer hold their positions. An injunction denying Defendants the opportunity to terminate the Plaintiffs unlawfully causes them no harm.

Moreover, granting this injunction shall actually benefit Defendants. These DOC Employees have not worked for over 18 months; yet, they have received their full salaries for the entire time period. Director Brown's determination to scape goat these employees for the Jail Escape has cost the District of Columbia well over a million dollars. These employees are willing actually to return to work, rather than continue on paid administrative leave which was their status until the most recent termination. This can only benefit the District of Columbia and alleviate the desperate understaffing at the Jail which was one of the real reasons for the Jail Escape. Their assistance would be welcomed by their colleagues.

D.     __The Public Interest is Best Served by Granting Injunctive Relief__.

In this case, the public interest is best served by the enforcement of the administrative process which has already been completed.  The public interest is best served when the government faithfully and dutifully implements the laws to which it is subject, including the laws its officers are trusted to create and administer.  The DOC Employees placed their faith in the procedures established by the CMPA and the Collective Bargaining Agreement.  They dutifully participated in the administrative process and were ultimately vindicated with a decision by the OAH judges that they were entitled to reinstatement.  At the time that the administrative law judges rendered their decision, the process was complete.  The public interest is best served by proper enforcement of the administrative proceedings upon their completion.  The DOC Employees cannot be terminated until this lawsuit is concluded and decisions are made about the lawfulness of the Defendants' self-serving "Do Over" in this matter.

WHEREFORE, the DOC Employees, respectfully request that their motion for an emergency restraining order and preliminary injunctive relief be granted.

Respectfully submitted,

December 20, 2007                              HANNON LAW GROUP, LLP


          _/s/ J. Michael Hannon_
J. Michael Hannon, #352526
1901 18th Street, NW
Washington, DC 20009
(202) 232-1907
Fax:  (202) 232-3704
jhannon@hannonlawgroup.com

*Attorneys for Plaintiffs*

20

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CYNTHIA WASHINGTON, *et al.,*              :

             Plaintiffs,              :              Case Number: 1:07-cv-01031(RMU)

    v.                                        :

DISTRICT OF COLUMBIA, *et al.,*            :

             Defendants.              :

**AMENDED STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

1.      The DOC Employees were summarily fired by Department of Corrections Director Devon Brown and City Administrator Robert Bobb at a news conference on July 26, 2006.

1a.      The District of Columbia amended provisions of the D.C. Personnel Manual ("DCPM") in order to effectuate the summary firing of the DOC Employees that occurred at the Press Briefing of July 26, 2006.  (First Amended Complaint at ¶¶ 12, 13, 14, 19, 38 and 39).   DCPM § 1616.4 provided that in cases of Summary Removal, written notification of the action was to be provided to the employee and the FOP/DOC within three (3) days of removal ("3 Day Rule").  That notice must provide detailed information about the removal, including the reasons for Summary Removal along with identification of critical deadlines in the removal process and pertinent employee rights. Id.

1b.      On the very date of the planned news conference, pursuant to the direction of Director Brown, the D.C. Office of Personnel issued a Variation to DCPM § 1616.4

which allowed the DOC 30 days to provide written notification to the DOC Employees

who were fired.  (<u>See</u> Variation, Exhibit 48, filed herewith).  The Director of Personnel

found that the variation was necessary and fulfilled the "sprit of the regulations <u>and</u> the

efficiency of the D.C. Government; and the integrity of the Career . . . Services."   She

found that the variation was necessary for the following reason:

> As part of the investigation that resulted in the summary removal actions
> taken by the DOC, the agency conducted an examination of witnesses
> (interviews) via tape recorder; however, as of July 26, 2006, the process to
> transcribe the tapes of the examination of witnesses has not been
> completed.

<u>Id</u>.[1]

1c.     The Director of Personnel based her decision on information provided by

Joan Murphy with the Human Resources Office of the DOC.  Ms. Murphy advised the

Director that the transcription of the tapes had not occurred and could not be completed

for at least 30 days.  (Affidavit of          , Exhibit A filed herewith).

1d.     During a hearing before the D.C. Public Employee Relations Board in

PERB Case No. 06-U-50, both Director Devon Brown and Joan Murphy stated under

oath that the request for the Variation was made on July 26 because the tapes had not

been transcribed.  This testimony occurred on December 6, 2007, in which the

undersigned acted as counsel for the Complainant.

1e.     In conflict with the testimony of Director Brown and Murphy, at the same

hearing and on the same date, Neal R. Gross of Neal R. Gross and Co., Inc., a court

reporting company, testified that the vast majority of the tapes (13) had already been

---

[1]     The Variation also provided: "The DOC anticipates that it will take approximately <u>30 days from</u>
<u>July 26, 2006</u>, for the transcription process to be completed (plus time for the affected employees to
review/approve the transcripts) and for the written summary removal notices to be drafted and issued to the
employees."  However, the employees were never requested to review and approve the transcripts and
preparation of written notices must be done even where the 3 Day Rule applies.

transcribed and delivered to the DOC on June 27, 2006, a month before the Variation..

(See Affidavit of Neal R. Gross, Exhibit 49 filed herewith).   Tapes of four other

interviews of some of the Plaintiffs were ordered by the DOC on July 25, 2006, and were

delivered by email on July 27, 2006, the day after the Variation was executed.  Therefore,

the rationale presented by the DOC for the Variation was false.

2.      The Department of Corrections did not provide the DOC Employees with

a written notice of the proposed summary removals until August 24, 2006.

3.      The notice of summary removals[2] provided that:

> The Office of Administrative Hearings will conduct the
> administrative review and/or hearing of the proposed removal
> actions…In conducting the administrative review and/or hearing,
> your appointed Hearing Officer will review all of the documents
> giving rise to the charge…this written notice and your response, if
> there is one.  After conducting the administrative review, your
> assigned Hearing Officer will make a written report and
> recommendation to Director Devon Brown, the Deciding Official,
> who will issue a final decision.

4.      Each Written Notice provided "Specifications" of the conduct the DOC

alleged supported the summary removals.[3]

5.      Department of Corrections Director Devon Brown entered into a

"Memorandum of Understanding"[4] with the Office of Administration Hearings,

assigning the role of "hearing officer" to the Judges of the Office and outlining the

---

[2]      See Exhibit 1, Cynthia Washington Written Notice; Exhibit 2, Herbert Douglas Written Notice; Exhibit 3, Dionne Makins Written Notice; Exhibit 4, Alphonso Bryant Written Notice; Exhibit 5, Lowanda Hinton-Saunders Written Notice; Exhibit 6, Darryl Love Written Notice; Exhibit 7, Malcolm Pointer Written Notice; Exhibit 8, Shantell Hatton Written Notice.

[3]      See Exhibits 1-8.

[4]      See Exhibit 9, Designation of Authority And Memorandum of Understanding Between The Office of Administration Hearings and the Department of Corrections for the District of Columbia, specifically Section D. Duration of MOU and Early Termination For Cause.

administrative hearing process. The MOU included the following language; "This Designation and MOU is effective October 1st, 2006 and will remain in effect through the latest date that the Director of DOC issues a final decision in any of the Disciplinary Actions.."

6.      The assigned administrative law judges each issued a Report and Recommendation regarding each DOC Employee on December 11, 2006.[5]

7.      The Report and Recommendation for each DOC Employee concluded that the employee could not be summarily removed and recommended they each be returned to work with the Department of Corrections.[6]

8.      Pursuant to the Collective Bargaining Agreement, the Comprehensive Merit Protection Act, § 1-601.01, *et seq*., and Memorandum of Understanding, Director Devon Brown was required to issue a Final Decision consistent with the recommendations. The Final Decision must either: sustain the recommendation, reduce the penalty proposed, remand the action, or dismiss the action. The final decision may not impose a harsher penalty than that recommended by the Administrative Judge.[7]

9.      Director Brown did not render a final decision returning the DOC Employees to work as he was obligated to do.

---

[5]      See Exhibit 10, Report and Recommendation Cynthia Washington; Exhibit 11, Report and Recommendation Herbert Douglas and Lorenzo Jennings; Exhibit 12, Report and Recommendation Dionne Makins; Exhibit 13, Report and Recommendation Alphonso Bryant; Exhibit 14, Report and Recommendation Lowanda Hinton-Saunders; Exhibit 15, Report and Recommendation Darryl Love; Exhibit 16, Report and Recommendation Malcolm Pointer; Exhibit 17, Report and Recommendation Shantell Hatton.

[6]      See Exhibits 10-17, Section III Recommendation.
[7]      See Exhibit 18, Collective Bargaining Agreement Section 9 D., See 6 DCMR§ 1616.6.

10.    In an effort to enforce their rights, the DOC Employees filed a Petition for Writ of Mandamus to Compel Agency Action in the District of Columbia Court of Appeals on March 12, 2007.[8]

11.    On March 15, 2007, Defendants Department of Correction and Devon Brown rescinded the summary removal action in an attempt to preempt the need for the Writ of Mandamus.  The DOC Employees were delivered these letters after being invited to return to work on March 16, 2007.[9]

12.    At the same time, the DOC Employees were served their notices that the summary removal action had been rescinded, the DOC Employees were each served a twenty day notice of proposed termination.  The specifications in support of the proposed terminations were the exact same acts used to support the summary removals.[10]

13.    Furthermore, the DOC Employees were given letters placing them on administrative leave with pay as of March 16, 2007.[11]

---

[8]    See Exhibit 19, Petition for Writ of Mandamus to Compel Agency Action.

[9]    See Exhibit 20, Summary Removal Rescission Cynthia Washington; Exhibit 21, Summary Removal Rescission Herbert Douglas; Exhibit 22, Summary Removal Rescission Lorenzo Jennings; Exhibit 23, Summary Removal Rescission Dionne Makins; Exhibit 24, Summary Removal Rescission Alphonso Bryant; Exhibit 25, Summary Removal Rescission Lowanda Hinton-Saunders; Exhibit 26, Summary Removal Rescission Darryl Love; Exhibit 27, Summary Removal Rescission Malcolm Pointer; Exhibit 28, Summary Removal Rescission Shantell Hatton.

[10]    See Exhibit 29, Cynthia Washington Notice of Proposed Termination; Exhibit 30, Herbert Douglas Notice of Proposed Termination; Exhibit 31, Lorenzo Jennings Notice of Proposed Termination; Exhibit 32, Dionne Makins Notice of Proposed Termination; Exhibit 33, Alphonso Bryant Notice of Proposed Termination; Exhibit 34, Lowanda Hinton-Saunders Notice of Proposed Termination; Exhibit 35, Darryl Love Notice of Proposed Termination; Exhibit 36, Malcolm Pointer Notice of Proposed Termination; Exhibit 37, Shantell Hatton Notice of Proposed Termination.

[11]    See Exhibit 38, Cynthia Washington Administrative Leave Notice; Exhibit 39, Herbert Douglas Administrative Leave Notice; Exhibit 40, Lorenzo Jennings Administrative Leave Notice; Exhibit 41, Dionne Makins Administrative Leave Notice; Exhibit 42, Alphonso Bryant Administrative Leave Notice; Exhibit 43, Lowanda Hinton-Saunders Administrative Leave Notice; Exhibit 44, Darryl Love Administrative Leave Notice; Exhibit 45, Malcolm Pointe Administrative Leave Notice; Exhibit 46, Shantell Hatton Administrative Leave Notice.

14.    Plaintiffs' notice of proposed termination stated that Henry R. Lesansky, Ph.D., Health Services Administrator, and an employee of the Department of Corrections, had been appointed as Hearing Officer for the new administrative review and/or administrative hearing.[12]

15.    The Collective Bargaining Agreement between District of Columbia Department of Corrections and Fraternal Order of Police Department of Correction Labor Committee guarantees that a "Disinterested Designee/Hearing Officer shall review the proposed action…. The Hearing Officer must be a DS-13 or higher and have no direct or personal knowledge of the matter contained in the disciplinary case, and not be in the chain of command between the proposing and deciding officials."[13]  Dr. Lesansky serves at the pleasure of the Director, the deciding official.

16.    No statute, regulation, or provision of the CBA authorizes the DOC to require these DOC Employees to go through a second administrative process.

17.    Nevertheless, the DOC Employees participated in good faith in the new hearings scheduled by Dr. Lesansky.  They presented written submissions and all but two Employees made oral presentations which were recorded.  (See Submission of Cynthia Washington, Exhibit 50; Submission of Herbert Douglas, Exhibit 51; Submission of Lorenzo Jennings, Exhibit 52; Submission of Dionne Makins, Exhibit 53; Submission of Alphonso Bryant, Exhibit 54; Submission of Lawanda Hinton-Saunders, Exhibit 55; Submission of Darryl Love, Exhibit 56; Submission of Shantell Hatton, Exhibit 57, filed herewith).  The available transcriptions are attached as Exhibits.  (See Oral Presentation of Cynthia Washington, Exhibit 58; Oral Presentation of Herbert Douglas, Exhibit 59;

---

[12]    See Exhibits 29-37.

[13]    See Exhibit 18, Article II, Section 9, C.

Oral Presentation of Lorenzo Jennings, Exhibit 60; Oral Presentation of Dionne Makins, Exhibit 61; Oral Presentation of Alphonso Bryant, Exhibit 62 ; Oral Presentation of Lawanda Hinton-Saunders, Exhibit 63; Oral Presentation of Darryl Love, Exhibit 64; Oral Presentation of Shantell Hatton, Exhibit 65 ).

18.    On December 14, 2007, the DOC Employees were again served with decisions by Director Brown finding unanimously that each employee was to be discharged from service with the DOC for the very same conduct which was previously presented to the judges of the Office of Administrative Hearings.  (See Dismissal of Cynthia Washington, Exhibit 66; Dismissal of Herbert Douglas, Exhibit 67; Dismissal of Lorenzo Jennings, Exhibit 68; Dismissal of Dionne Makins, Exhibit 69; Dismissal of Alphonso Bryant, Exhibit 70; Dismissal of Lowanda Hinton-Saunders, Exhibit 71; Dismissal of Darryl Love, Exhibit 72; Dismissal of Shantell Hatton, Exhibit 73, filed herewith).

Respectfully submitted,

HANNON LAW GROUP, LLP


_____ */s/ J. Michael Hannon* _____
J. Michael Hannon, #352526
1901 18th Street, NW
Washington, DC 20009
(202) 232-1907
Fax:  (202) 232-3704
jhannon@hannonlawgroup.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CYNTHIA WASHINGTON, *et al.,*     :
                                        :
                                        :
         Plaintiffs,           :     Case Number: 1:07-cv-01031 (RMU)
                                        :
     v.                       :
                                        :
DISTRICT OF COLUMBIA, *et al.,*    :
                                        :
         Defendants.       :

## ORDER

Upon consideration of the Plaintiffs' Motion for Preliminary Injunction and the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction, it is by the Court this _____ day of December, 2007,

     **ORDERED** that the Motion is **GRANTED**; and it is

     **FURTHER ORDERED**, for the reasons outlined below that Defendants in this case are immediately enjoined from terminating the Plaintiffs from their current positions within the Department of Correction until which time that the matters which are the subject of this case are resolved by this Court.  The said preliminary injunction has been issued in this matter for the foregoing reasons:

_____

_____

_____

_____

_____

**IT IS FURTHER ORDERED** that the granted preliminary injunction is binding upon the parties to this action, as well as upon the parties' officers, agents, servants, employees, and attorneys, and

**IT IS FURTHER ORDERED** that an accelerated hearing will be held on the _____ day of _____, _____ to determine whether Plaintiffs' are entitled to their jobs, and

**IT IS ORDERED** that Plaintiffs are granted leave to take expedited discovery of Defendants in preparation for the hearing on this motion.

_____
THE HONORABLE RICARDO M. URBINA
District Court Judge

Copies to:

David Jackson, Esq.
Office of the Attorney General
441 Fourth Street, NW
6 South
Washington, DC 20001

J. Michael Hannon, Esq.
HANNON LAW GROUP, LLP
1901 18th Street, N.W.
Washington, D.C.  20009