UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CYNTHIA WASHINGTON, *et al.*, | : |
| Plaintiffs | : |
| v. | No. 1:07cv1031 (RMU) |
| DISTRICT OF COLUMBIA, *et al.*, | : |
| Defendants. | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendants, by and through counsel, hereby submits this memorandum of points and authorities in opposition to Plaintiffs' Motion for a Preliminary Injunction to enjoin the District of Columbia Department of Corrections (hereinafter "DCDOC") from terminating Plaintiffs. For the reasons set forth below, this Honorable Court should deny Plaintiff's motion.

**PRELIMINARY STATEMENT**

The gravamen of Plaintiffs' motion for preliminary injunction is that the Defendants' decision to terminate Plaintiffs' employment with the DCDC violates their Fifth Amendment due process rights because the plaintiffs have been subjected to a second round (e.g., "do-over hearing") of termination proceedings in violation of the District's Comprehensive Merit Personnel Act "(CMPA"), DC. Code § 1-601.01, *et seq.*, the District's personnel regulations, 6 DCMR § 1612, and the Collective Bargains Agreement ("CBA"). The facts and circumstances surrounding the decision to terminate plaintiffs have been detailed in complaint and the defendants' motion to dismiss which is still pending before this Court. The issues raised in the

Defendants' motion to dismiss have been fully briefed by the parties and, therefore, need not be repeated here but are incorporated herein by reference. The defendants' legal arguments supporting their motion to dismiss are equally applicable here and support the defendants' request that the instant motion for a preliminary injunction be denied.

This court should deny Plaintiffs' motion for a preliminary injunction for the additional reasons set forth below.

## FACTS

Plaintiffs Cynthia Washington, Herbert Douglas, Lorenzo Jennings, Dionne Makins, Alphonso Bryant, Lowanda Hinton-Saunders, Darryl Love, Malcolm Pointer and Shantell Hatton ("Plaintiffs or DC Employees") are employed by DCDC. O n June 3, 2006, two inmates, Joseph Leaks ("Leaks") and Ricardo Jones ("Jones"), escaped from the District of Columbia Central Detention Facility by shattering a window in the warden's office and sliding down a canopy outside the window. (First Amended Complaint ¶ 3; Exhibit B, at 3, 13-15) The DCDOC Office of Internal Affairs ("OIA") conducted an investigation and determined that plaintiffs' neglect of their duties and intentional conduct contributed to the escape. The details of the escape and the plaintiff's involvement in the escape are set forth in the complaint, the motion to dismiss and the opposition to motion to dismiss. (See also, Exhibit B attached to Defendants' Motion to Dismiss)

The DCDOC summarily terminated plaintiffs pursuant 6 DCMR § 1616, which permits the District to terminate an employee *summarily* when: 1) there is general cause for termination under 6 DCMR § 1603 (including any on-duty act or omission that interferes with the efficiency or integrity of government operations) and 2) an agency head determines that the employee's conduct threatens the integrity of government operations or constitutes an immediate hazard to the agency. See 6 DCMR §§ 1616.1 and 1616.2.

On March 15, 2007, Director Brown rescinded and cancelled the summary removal actions against the plaintiffs, and directed that the employee be reinstated with appropriate back pay to that date. However, Director Brown then immediately issued each Plaintiff a new 20 day notice of proposed termination (on a non-summary basis) based on the same factual allegations underlying the rescinded summary terminations. Each employee was placed on administrative leave with pay pending Director Brown's final decision in the matter, and remains on pay status at this time.

Thereafter, plaintiffs were given a full hearing before the Office of Employee Appeals (OEA). The OEA found against plaintiffs and on December 14, 2007, Director Brown notified plaintiffs that their employment with the DCDOC would terminate on December 17, 2007. *(footnote: at the request of this Court, Director Brown agreed to suspend the terminations until mid-January 2008, at which time this Court would issue its ruling on the instant motion for preliminary injunction).*

The plaintiffs now request that this Court enjoin the defendants from terminating plaintiffs' employment. In additions to the reasons set forth in the defendants' motion to dismiss this Court should deny the plaintiffs' instant motion for the reasons set forth below.

## ARGUMENT

**I.    This Court lacks subject matter jurisdiction over this labor relations matter.**

It is well-settled that the Public Employee Relations Board ("PERB") has jurisdiction over claims involving grievances arising under a collective bargaining agreement. *Cooper v. AFSCME, Local 1033*, 656 A.2d 1141, 1143 n. 1 (D.C. 1995)("It is not questioned that PERB has exclusive jurisdiction over disputes involving grievances under a collective bargaining agreement."); *University of District of Columbia v. Myers*, 652 A.2d 642 (D.C. 1995)(employee

may not bypass remedies provided in collective bargaining agreement and sue directly in Superior Court). PERB's exclusive jurisdiction means that this Court lacks jurisdiction to rule on any aspect of the merits of the grievance; that issue belongs solely to the arbitrator in the first instance and then to PERB in an appellate capacity.

Labor relations disputes have long been resolved through labor arbitration and by expert administrative tribunals. As the Supreme Court has explained in the analogous context of enforcing arbitration clauses in collective bargaining agreements:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-37 (1987). One of the most important effects of respecting the limits of the judicial function is that it allows the law of the shop to develop through the mechanism chosen by the parties: "Furthermore, it must be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining. It is through these processes that the supplementary rules of the plant are established." Misco, 484 U.S. at 38. The presence of a constitutional issue does not alter this rule. *Marine Mammal Conservancy v. Department of Agric.*, 134 F.3d 409 (D.C. Cir. 1998) (exhaustion of administrative remedies required even though plaintiff alleged violation of the Fifth Amendment).

In this case, the DCDOC and the Fraternal Order of Police, Department of Corrections Labor Committee have entered into a Collective Bargaining Agreement (CBA), which sets forth plaintiffs' rights to challenge their termination. Under the CBA, an employee may grieve their

termination through the procedures set forth in the CBA or through the OEA. CBA, Article 11, § 2. If the employee chooses to seek redress from the OEA, the employee is subject to the "OEA rules and regulation." *Id*. § 2 (A). The "rules and regulations" of the OEA are set forth in the District's Comprehensive Merit Personnel Act "(CMPA"). DC. Code § 1-601.01, *et seq*. The CMPA provides that a District employee may challenge his or her termination in either of two ways: 1) by appeal to the Office of Employee Appeals ("OEA"), and from there to D.C. Superior Court; or 2) by any alternative procedure delineated in a collective bargaining agreement between the District and the employee's union. D.C. Code §§ 1-1616.52. Thus, under the CMPA, an employee who is dissatisfied with the decision of the OEA may appeal the decision to DC Superior Court. *Id.*

In this case, plaintiffs choose to grieve their termination to the OEA, as provided in the negotiated CBA. Since plaintiffs choose to proceed before the OEA, they are bound by that decision, and the rules and regulations of the OEA apply. Thus, plaintiffs' exclusive remedy to challenge the decision of the OEA is to appeal to the DC Superior Court.

For the reasons set forth above, this court lacks jurisdiction over this matter and, therefore, plaintiffs' motion for a preliminary injunction must be denied.

**II.     Standard for Preliminary Injunction Orders.**

This court may issue a preliminary injunction only if the Plaintiffs demonstrate each prong of the following four-part test: (1) that there is a substantial likelihood that he will prevail on the merits; (2) that he is in danger of suffering *extraordinary* irreparable harm during the pendency of the action absent interim relief. (3) that the interim relief would not significantly harm other interested parties; and (4) that the public interest would be served by granting the preliminary injunction. *Davenport v. Int'l Bhd of Teamsters*, 166 F.3d 356, 361

(D.C. Cir. 1999). This court has discretion to issue a preliminary junction but it should use its discretion sparingly. *Leboeuf, Lamb, Greene & Macrae, LLP v. Abraham, et al.*, 180 F. Supp. 2d 65, 71 (D.D.C. 2001). "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (quoting, *Mazurek v. Armstrong*, 520. U.S. 968, 972 (1997).

Plaintiffs' motion for a preliminary injunction must be denied because plaintiffs cannot meet their burden of persuasion.

### A. There is a substantial likelihood that Plaintiffs will not prevail on the merits.

The legal arguments set forth in defendants' motion to dismiss clearly demonstrate that there is a substantial likelihood that plaintiffs will not prevail on the merits. Those arguments will not be repeated here but, are incorporated herein by reference. Plaintiffs will not prevail on the merits for additional reasons.

The gravamen of plaintiffs' complaint is that the "do-over" hearing violated their Fifth Amendment due process rights. Plaintiffs claim that Director Brown's decision to rescind and cancel the initial summary removal action violated the CMPA and CBA because Administrative Law Judges (ALJ) had found in favor of plaintiffs during the initial proceedings. According to plaintiffs, under the CMPA and the CBA Director Brown could not issue a penalty harsher than the penalty recommended by an ALJ and, since the ALJ found in favor of plaintiffs, Director Brown was bound by that decision. Plaintiffs' assertion is without merit.

First, while it is true that the CBA prohibits the Director from increasing the recommended penalty, the grievance procedures set forth in the CBA do not apply to plaintiffs. See CBA, Article 11, § 9 D. As previously noted, plaintiffs chose to grieve their termination to the OEA and under the CBA the "rules and regulations" of the CMPA govern plaintiffs'

6

termination. Thus, since plaintiffs elected to go to OEA, the grievance provisions set forth in the CBA are not relevant here. Even if the grievance procedures were applicable to this case, Article 11, § 9 A exempt summary removals. The provisions for summary removals are specifically found in Article 10 of the CBA. Nothing in Article 10 prohibits Director Brown from rescinding and canceling the initial terminations notices and issuing new notices.

Plaintiffs are subject to the rules and regulations of the CMPA and thus, the District's personnel regulations govern plaintiffs' terminations. Title 6 DCMR § 6-1616, *et seq*. governs summary removals. Under § 1616.6 (a), Director Brown "after considering the report and recommendation of the hearing officer …, shall do one (1) of the following, as appropriate:

  (a)  Remand the summary action to the hearing officer;
  (b)  Designate a new hearing officer to conduct a review de novo: or
  (c)  Issue a final decision sustaining, reducing, or dismissing the summary removal

action.
Title 6 DCMR § 6-1616.

Here, the unambiguous language of § 6-1616 authorized Director Brown to dismiss the initial notices of summary removal and, that is essential what Director Brown did when he rescinded and cancelled the first notices of summary removal on March 15, 2007. Furthermore, nothing in § 6-1616 prohibited Director Brown from initiating new summary removals.

Plaintiffs' exclusive remedy to challenge their termination is through the CMPA. The D.C. Court of Appeals' has held that the CMPA is he exclusive remedy for a District employees who has a work related complaint of any kind, *Robinson v. District of Columbia,* 748 A.2d 409, 411 (D.C. 2000), and, therefore, this Court is bound to apply the CMPA's exhaustion requirement strictly. *Johnson v. District of Columbia, et al.*, 368 F. Supp. 2d 30, 43 (D.D.C. 2005); *Johnson v. District of Columbia, et al.*, Case No. 04-00250 (RCL) (Decide July 18, 2007)

(Lamberth, J) (Dismissing plaintiff's due process violation and common law claims for failing to exhaust administrative remedies under the CMPA and CBA). See Judge Lamberth's opinion attached to Defendants' Motion to Dismiss.

Plaintiffs' Fifth Amendment due process rights have not been violated. Plaintiffs are entitled to no more than notice and a right to be heard. *Cleveland Board of Education v. Loudermilk*, 470 U.S. 532 (1985). In this case, plaintiffs received all the notice they were required to receive. Plaintiffs have had a meaningful opportunity to grieve their termination under the CMPA. Plaintiffs now have the right to further challenge their termination by filing an appeal with the DC Superior Court.

For the reasons set forth herein and in the defendants' motion to dismiss there is a substantial likelihood that plaintiffs will not prevail on the merits and, therefore, this Court should deny plaintiffs' motion for a preliminary injunction.

    **B.**    **Plaintiffs Will Not Experience Irreparable Injury.**

In order to meet their burden of persuasion under this element, plaintiffs must show that they are in danger of suffering *extraordinary* irreparable harm. *Sampson v. Murray*, 415 U.S. 61 (1974). That there can be no irreparable harm from the mere loss of income has been firmly established by the Supreme Court, the U.S. Court of Appeals for the District of Columbia Circuit and nearly every federal court of appeals. Those precedents hold that loss of income and its attendant financial consequences do not, as a matter of law, constitute irreparable harm. *Id.*; *Virginia Petroleum Jobbers Ass'n*, 104 U.S. App. D.C. at 110, 259 F.2d at 925; *Davenport v. International Brotherhood of Teamsters*, 334 U.S. App. D.C. at 239, 166 F.3d at 367; *National Treasury Employees Union v. United States*, 288 U.S. App. D.C. 398, 401, 927 F.2d 1253, 1256 (1991); *Chilcott v. Orr*, 747 F.2d 29 (1' Cir. 1984); *Jayaraj v. Scappini*, 66 F.3d 36 (rd Cir.

1995); *Guitard v. Sec'y of Navy*, 967 F.2d 737 (2"d Cir. 1992); *Guerra v. Scruggs*, 942 F.2d 270 (4th Cir. 1991); *Smallwood v. Jefferson County, Ky*., 1996 U.S. App. LEXIS 24221 (6th Cir. 1996); *Hetreed v. Allstate*, 135 F.3d 1155 (7th Cir. 1998); *AdamMellang v. Apartment Search, Inc.*, 96 F.3d 297 (8th Cir. 1996); *Christie v. Garrett*, 1992 U.S. App. LEXIS 7108 (9th Cir. 1992). Plaintiffs themselves recognize that "irreparable harm requires more than a showing of financial distress or inability to find other employment." Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Emergency Restraining Order and Preliminary Injunction at 13 ("Pls' Memo.") (citing *McElrath v. Kemp*, 714 F. Supp. 23, 28 (D.D.C. 1989). However, plaintiffs ask this court to find extraordinary harm because they may suffer economic hardship in the future.

Here, plaintiffs allege a host of potential problems that may arise if they are terminated, including the inability to pay their mortgage and the loss of retirement benefits. Pls' Memo at 17-18. These claims, however, are bare allegations and are not supported by affidavit or other admissible evidence. As the United States Court of Appeals for the District of Columbia Circuit stated in *Wisconsin Gas v. FERC*,

> Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will <u>in</u> <u>fact</u> occur. The movant must provide proof . . . indicating that the harm is certain to occur in the near future.

758 F.2d 669, 674 (D.C. Cir. 1985). Moreover, as the Supreme Court reiterated in Sampson, supra,

> "The key word in this consideration is irreparable. Mere injuries, however, substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

Sampson, supra (quoting *Virginia Petroleum Jobbers Ass'n*, 104 U.S. App. D.C. at 110, 259 F.2d at 925).

In the ordinary course of litigation, plaintiffs have the right to appeal their terminations to the DC Superior Court.  If plaintiffs' appeal is successful, the Superior Court can order plaintiffs' employment to be reinstated and plaintiffs would be entitled to all benefits they would have been entitled to if they had not terminated.   Accordingly, they cannot demonstrate irreparable harm under these circumstances.

      **C.**    **The balance of the equities and public interest strongly favor the Defendants**.

Not only have Plaintiffs failed to show irreparable injury or that they are likely to succeed on the merits, Plaintiffs cannot show that the public interest favors them.   As the head of the DCDOC, Director Brown is charged by law with the responsibility for the "safekeeping, care, protection, instruction and discipline of all persons committed" to the custody of DCDOC. DC Code § 24-211.02.  Additionally, Director Brown is "accountable for the safekeeping of all prisoners legally committed" to the DCDOC.  DC Code § 24-201.15.

There can be little doubt that the DCDOC has a tremendous responsibility to the citizens of the District to ensure that dangerous offenders are not allowed to escape in the community. Director Brown is ultimately responsible for ensuring that correctional staff perform their duties correctly and maintain the integrity of the agency.   Local regulations authorize Director Brown to summarily remove an employee whose conduct: (a) threatens the integrity of government operations; (b) constitutes an immediate hazard to the agency, to other District employees, or to the employee; or (c) is detrimental to the public, safety, or welfare of others.   6 DCMR Chapter 16, § 1616.1.

In this case, two dangerous inmates, Leaks and Jones, escaped from the DC Jail on June 3, 2006. An internal investigation revealed that plaintiffs' neglect of duty and intentional conduct contributed to the escape. The OIA report showed that Plaintiffs Love and Pointer each negligently performed a custody classification analysis for inmate Leaks. As a result, inmate Leaks was improperly classified for medium security placement which made hit eligible to work off his unit, when in fact Leaks should have been classified as a maximum custody inmate where he would not have been eligible for such work. (See Exhs C and D, respectively, attached to Defendants'' Motion to Dismiss). Plaintiff Bryant improperly screened Leaks for participation in an off-unit work detail. Had he thoroughly reviewed the relevant records, he would have discovered an order mandating that Leaks and Jones be kept separated at all times. (See Exh. E, attached to Defendants'' Motion to Dismiss). Plaintiff Douglas negligently supervised Leaks on work detail the day of the escapes, and left a supply closet unlocked, giving Leaks access to the buffer machine that the inmates used to break out the window. (See Exh. F, attached to Defendants'' Motion to Dismiss). Plaintiffs Hatton, Makins, and Washington, were the three officers on Jones' housing unit on the day of the escapes, negligently allowed Jones out of the unit to go to the infirmary without verifying whether Jones was scheduled to be seen at the infirmary that day, which in fact he was not. (See Exhs. G, H and I respectively, attached to Defendants'' Motion to Dismiss). Plaintiff Jennings was negligent in improperly disposing of an inmate work detail ID badge he confiscated from another inmate three weeks before the escape, which allowed Inmate Jones somehow to come into possession of that ID card and wear it the day of the escape to gain access to the administrative area. (See Exh. J, attached to Defendants'' Motion to Dismiss). Plaintiff Hinton-Saunders negligently allowed inmate Jones through the Administrative Two door without noting that Jones' work detail badge belonged to another

11

inmate and bore the other inmate's name and photo. (See Exh. K, attached to Defendants'' Motion to Dismiss). The report also concluded that Lachonne Stewart[1] deliberately hid clothing in a trash can for the inmates to use during their escape. (See Exh. B, attached to Defendants'' Motion to Dismiss).

It is clear from the internal investigation that two of the District's most dangerous prisoners were allowed to escape from custody because of plaintiffs' neglect and intentional conduct. The harm to the DCDOC and the public is clear. The DCDOC is charged with assuring the citizens of the District of Columbia that dangerous criminals will not escape from its custody. The need to safe keep prisoners outweighs plaintiffs' right to continued employment, especially, where as here, it was the plaintiffs' conduct that contributed to the escape.

The DCDOC under the direction of Defendant Brown has an obligation to the government and the citizens of the District to ensure that danger prisoners remain in custody. To allow plaintiffs, under these circumstances, to continue to work in DCDOC will have a negative impact on the integrity of government. It will erode citizen's confidence in the ability of DCDOC to keep danger criminals of the streets and has the potential to put the safety of other DCDOC employees at risk.

## CONCLUSION

For the reasons set forth herein and the Defendants' Motion to Dismiss, this Court should deny Plaintiffs' Motion for a preliminary injunction.

                                                Respectfully submitted,

                                                LINDA SINGER
                                                Attorney General for the
                                                District of Columbia

---

[1] Ms. Stewart is not a named plaintiff in this civil matter.

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division


/s/NICOLE L. LYNCH/s/_____
NICOLE L. LYNCH [471953]
Chief Civil Litigation Division Section II

/s/David A. Jackson/s/_____
DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, 6 South
Washington, D.C.  20001
Direct Line: (202) 724-6618
Facsimile: (202) 727-3625
E-mail:  davida.jackson@dc.gov