**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CYNTHIA WASHINGTON, *et al.,*        :
                                     :
                                     :
            Plaintiffs,              :        Case Number: 1:07-cv-01031 (RMU)
                                     :
      v.                             :
                                     :
DISTRICT OF COLUMBIA, *et al.,*      :
                                     :
            Defendants.              :


**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Come now Plaintiffs Cynthia Washington, Herbert Douglas, Lorenzo Jennings, Dionne

Makins, Alphonso Bryant, Lowanda Hinton-Saunders, Darryl Love, and Shantell Hatton ("DOC

Employees") through their attorneys, HANNON LAW GROUP, LLP and present this Reply to

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction.  The DOC Employees

seek an order from the Court enjoining the Defendants from removing the Employees from their

current positions until the outcome of the pending litigation in this matter.

**<u>FACTUAL BACKGROUND</u>**

Since the filing of Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs learned by

way of another proceeding before the Public Employee Review Board, that the Department of

Corrections ("DOC") obtained the variation on the 3 Day Rule applicable to summary removal

by making false statements to the District of Columbia Director of Human Resources.  Plaintiffs

contend that summary removal itself, containing in the regulatory provisions of the

Comprehensive Merit Personnel Act ("CMPA"), is unconstitutional and unconstitutional as

applied here to the DOC Employees.  Removal before hearing is rarely allowed by the Courts

following the Supreme Court's decision in <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532 (1985).

Now Plaintiffs have learned that Defendants not only have acted unconstitutionally by employing summary removal of these DOC Employees, but also have corruptly changed the rules after the DOC Employees were summarily removed. The DOC Employees were summarily fired at a press conference on July 26, 2006. In the PERB proceeding, Joan Murphy, the Director of Human Resources for the DOC, testified under oath that she advised Director Brown after the firings that the DOC allegedly could not comply with the CMPA 3 Day Rule, requiring notice and delivery of evidence to the employees in advance of a hearing. <u>See</u> Murphy Testimony, p. 1013.[1] Ms. Murphy allegedly was advised that tape recordings of the interviews conducted of these DOC Employees by DOC Internal Affairs could not be transcribed in time to comply with the 3 Day Rule. <u>See</u> <u>id.</u> pp. 1008-10. Director Devon Brown also testified under oath that a variation of the 3 Day Rule was sought because the transcripts could not be produced for 30 days. <u>See</u> Brown Testimony, pp. 1269, 1319-20.[2]

The truth, as disclosed at the PERB hearing, was that the majority of transcripts had been prepared well before July 26, and the few remaining transcripts were delivered the next day on July 27, 2006. <u>See</u> Gross Testimony. pp. 1400-03.[3] Hence, the DOC leadership corruptly endeavored to eliminate the 3 Day Rule, which effectively postponed the post-termination hearings past the deadline required under D.C. law. The reason for this corrupt practice was to avoid making available to the DOC/FOP the evidence upon which the DOC had relied for the

---

[1]    The transcript of Joan E. Murphy's selected testimony before PERB was filed with the Court on January 2, 2008 in a Notice of Filing as Exhibit 82.

[2]    The transcript of Devon Brown's selected testimony before PERB was filed with the Court on January 2, 2008 in a Notice of Filing as Exhibit 83.

[3]    The transcript of Neal Gross' testimony before PERB was filed with the Court on January 2, 2008 in a Notice of Filing as Exhibit 84.

firings.  Had the tapes and the Internal Affairs Report been disclosed as required under the 3 Day

Rule, the DOC/FOP and these Employees would have publicly assailed Director Brown for

making them scapegoats, when the fundamental causes of the Jail Escape were Director Brown's

responsibility.

## ARGUMENT

### I.    THIS COURT HAS SUBJECT MATTER JURISDICTION TO GRANT PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants have rehashed the same argument that Plaintiffs have already sufficiently

addressed.  Defendants contend that jurisdiction is not proper in this Court because PERB has

exclusive jurisdiction over grievances arising under a collective bargaining agreement.  While

that assertion may be true insofar as it concerns PERB's jurisdiction over such grievances, it is

misapplied here because in the instant action Plaintiffs have not asked this Court to rule on the

merits of a grievance.  The cases cited by Defendants are not relevant in this context because

Plaintiffs' basis for jurisdiction in this Court does not arise under a collective bargaining

agreement.  Instead, jurisdiction is based on Defendants' clear violation of federal law, 42 U.S.C.

§ 1983, when, as a direct result of actions taken by Defendants, Plaintiffs were denied their

property right to public employment.  Plaintiffs' Fifth Amendment right to their statutorily

created property interest has been denied and that provides the jurisdictional basis of their claim.

Furthermore, Defendants suggest that the Collective Bargaining Agreement ("CBA"),

entered into between the DOC and the Fraternal Order of Police, Department of Corrections

Labor Committee, applies to this matter, and by its terms requires that the DOC Employees

challenge their termination through procedures set forth in the CBA or through the Office of

Employee Appeals ("OEA").  Plaintiffs submit that the CBA does not apply because this action

does not involve a grievance or arbitration pursuant to that agreement.  This action is not a

3

grievance under the CBA.  Thus, cases cited by Defendants that limit the role of the courts in

labor relations disputes are not relevant in this context.  Plaintiffs are being subjected to removal

through a corrupt and *ex post facto* revision of the CMPA, through the invention of a "Do Over"

process which Defendants do not defend in their pleading, and through the use of a clearly

conflict-laden hearing officer, Henry Lesansky, Ph.D., to effectuate Director Brown's

determination to avoid responsibility for the Jail Escape.[4]

## II.    INJUNCTIVE RELIEF SHOULD BE GRANTED

Defendants misstate the standard for preliminary injunction orders.  The four-part test

that must be satisfied before injunctive relief should be granted requires that Plaintiffs

demonstrate: (1) a substantial likelihood of success on the merits; (2) that they would suffer

irreparable harm if the relief is denied; (3) that an injunction would not substantially injure other

interested parties; and (4) that the public interest would be furthered by the injunction.  See

Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998).  Citing Davenport v. Int'l

Bhd of Teamsters, Defendants suggest that the second prong requires that the irreparable harm

that Plaintiffs would suffer be "*extraordinary*"; however, the word "*extraordinary*" does not

appear in the Court of Appeal's statement of the standard, nor on the page cited by Defendants,

nor anywhere else in the entire opinion.  Davenport v. Int'l Bhd of Teamsters, 166 F.3d 356, 360

(D.C. Cir. 1999).  To suit their own needs and improperly provide support for their position,

Defendants clearly misstated the standard by adding qualifying words to the standard as stated by

the Court of Appeals.

---

[4]        To protect their administrative rights, the DOC Employees will be noting an appeal to the OEA of the "Do Over."  However, the OEA is not an alternative to a federal court's determination of Plaintiffs' right to a preliminary injunction based upon the Government having violated their constitutional rights.

A.    **Plaintiffs Have Shown a Likelihood to Succeed on the Merits.**

As discussed in previous pleadings, Plaintiffs have a protected property interest in their public employment.  As such, the District of Columbia must abide by procedures as are necessary to afford procedural due process before taking any adverse action.  See Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985).  The administrative hearing process of the CMPA and the CBA, with which the Employees fully complied, are those procedures for the DOC Employees.

Defendants contend that the grievance provisions set forth in the CBA are irrelevant and that even if they were applied, Article 11, Section 9(A) of the CBA exempts summary removals from grievance procedures.  Article 11, Section 9(A) does not exempt summary removals from all grievance procedures set forth in the CBA; rather, this section indicates that certain notice requirements do not apply to cases of summary removal.  Specifically, Section 9(A) exempts summary discipline only from the requirement that an employee against whom adverse action is proposed be given advance written notice of 20 days and the opportunity to respond within six days.  The provision for summary removal appears in Article 11, Section 10 which requires that 48 hour notice be given to the Union Chairman.  The restrictions on summary removal are more severe because the Supreme Court generally has not sanctioned hearings after removal.  Post-removal hearings are only constitutionally permissible under circumstances where the health and safety of the citizenry is in immediate risk.  See FDIC v. Mallen, 486 U.S. 230, 240 (1988) ("An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." (emphasis supplied)).

Defendants further argue that Article 10 of the CBA, which Defendants contend governs summary removals, does not specifically prohibit Director Brown from rescinding and canceling the initial terminations notices and issuing new notices.  The CBA also does not preclude Director Brown from hanging the DOC Employees.  Defendants simply do not understand that once procedures are defined for the protection of employment rights, those procedures cannot be changed at the whim of the Director.  In particular, the Director cannot change procedures in order to change the outcome.

Defendants once again argue that 6 DCMR § 6-1616(a) permits Director Brown to dismiss the initial notices of summary removal and issue new ones, essentially allowing for a "do over."  Defendants argue that § 6-1616 justifies this "do over" of the administrative process because that provision of the DCPM would permit the agency director to "issue a final decision sustaining, reducing, or dismissing the summary removal action."  Defendants note yet again that nothing in § 6-1616 *prohibits* Director Brown from initiating new summary removals.  This argument is flawed in that the D.C. Personnel Manual ("DCPM") specifically provides that any Collective Bargaining Agreement trumps the provisions of the DCPM when in conflict.  Section 1601.2 of the DCPM states:

> Any procedural system for the review of adverse actions negotiated between the District of Columbia and a labor organization shall take precedence over the provisions of this chapter for employees in a bargaining unit represented by a labor organization, to the extent that there is a difference.

6 DCMR § 1601.2.  Hence, the DOC and Director Brown are bound by the provisions of Article 11, Section 9(D) of the CBA.  Moreover, as discussed below, the DOC and Director Brown cannot change the procedural rules promised to the Employees because the Government is obliged to scrupulously adhere to its own processes.

The CBA offers the DOC only three options in response to the Office of
Administrative Hearings' ("OAH") recommendations.  The DOC is allowed to 1) sustain
or reduce the penalty proposed; 2) remand the matter for further consideration; or 3)
dismiss the charges.  See CBA Article 11, Section 9(D).  The DOC may not increase the
recommended penalty and there is certainly no language in the CBA which allows for the
cancellation of the proposed action and then re-adjudication of the matter.  The CBA
specifically defines the procedures which the DOC must follow when proposing the
dismissal of employees.  See Lopez v. FAA, 318 F.2d 242, 246 (D.C. Cir. 2003)
(standing for the proposition that government agencies must abide by internal, procedural
regulations defining due process rights when proposing dismissal of employees).  Courts
have long recognized that "an agency is bound to the standards by which it professes its
actions to be judged."  Id. (referring to Service v. Dulles, 354 U.S. 363, 373-76 (1957)).
Furthermore, a government agency must engage in "scrupulous compliance" with its own
procedures for discipline and removal of employees.  Lerner v. District of Columbia, 362
F. Supp.2d 149, 161 (2005) U.S. Dist. LEXIS 3565 (D.D.C. March 4, 2005).  See also
Mazaleski v. Treusdell, 562 F.2d 701, 720 (D.C. Cir. 1977) (stating, "[w]here …. a
government employee has no procedural due process rights apart from those which the
agency has chosen to create by its own regulations, scrupulous compliance with those
regulations is required to avoid any injustice").  Any manipulation of such procedures is
an unconstitutional violation of due process.  Id.

The Fifth Amendment due process rights of the DOC Employees have been violated.
Defendants submit that no violation has occurred because Plaintiffs are entitled to no more than
notice and a right to be heard.  The DOC Employees contend that they were provided notice and

an opportunity to be heard, after which they earned back their jobs according to the rules adopted

by the DOC and the District of Columbia. Those rules require the Director to follow the

recommendation of the Hearing Officers *whom he selected*, the Judges of the OAH. Moreover,

the DOC has offered no argument justifying Director Brown's unconstitutional delay before the

OAH, a failing that every Judge noted.

**B.      Plaintiffs Continue to Suffer Irreparable Harm.**

Plaintiffs recognize that in the context of government employment, irreparable harm

requires more than a showing of financial distress or inability to find other employment.

McElrath v. Kemp, 714 F. Supp. 23, 28 (D.D.C. 1989). Plaintiffs further acknowledge that in

this context, an injunction will not be issued unless the applicant can show irreparable harm in

the form of "extraordinary" circumstances. Farris v. Rice, 433 F. Supp. 2d 76, 80 (D.D.C. 2006).

Plaintiffs submit that the situation in which they find themselves is so extraordinary and departs

so far from any normal case of injury to a discharged employee that a grant of injunctive relief is

appropriate. See Bonds v. Heyman, 950 F. Supp. 1202, 1211 (D.D.C. 1997) (Lamberth, J.). In

Bonds, Judge Lamberth granted preliminary injunctive relief, based on a number of factors

unique to the employee in that case, barring the defendant employer from terminating the

employee pending the outcome of a civil rights lawsuit against the federal employer.

Defendants accuse Plaintiffs of making bare allegations, unsupported by affidavits or

other admissible evidence, of problems that may arise if they are terminated. In order to provide

support for the circumstances described in Plaintiffs' Memorandum of Points and Authorities in

Support of Plaintiffs' Motion for Emergency Restraining Order and Preliminary Injunction

("Plaintiffs' Memorandum"), an affidavit of each Plaintiff has been filed with the Court outlining

the extraordinary circumstances each Employee now faces. The information detailed in the

affidavits demonstrates that these Employees, more so than the employee in <u>Bonds</u>, will suffer and have suffered irreparable injury.  The circumstances involving the DOC Employees clearly fit in this category.

Defendants note that a key factor in this determination is whether the injury that plaintiff will suffer is truly irreparable.  Plaintiffs' Memorandum advances the proposition that several courts consider the violation or deprivation of a constitutional right sufficient to show irreparable harm.  Despite the obvious violation of the constitutional rights of the DOC Employees, Defendants suggest that this injury is not irreparable.  <u>See</u> Defendants' Opposition at 9 (<u>citing</u> <u>Sampson v. Murry</u>, 415 U.S. 61 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm.")).  As Plaintiffs stated in their Memorandum, loss of a constitutional right is a loss that cannot adequately be compensated or corrected.  <u>See</u> Plaintiffs' Memorandum at 16.  Once the loss is suffered, no adequate means of restoring that right is available.  The rationale for this justification for preliminary relief is that the Government, unrestrained by limited resources, may routinely deny due process to its employees while they whither from the deprivation of their chosen careers and loss of security and income.  Does the Government doubt the loss of reputation, strained marriages, financial peril, loss of the American Dream, and jeopardy to the education of children that these Employees have and will suffer?  <u>See</u> Affidavits of Plaintiffs.[5]

### C.    <u>The Balance of Equities and Public Interest Favor Plaintiffs.</u>

The judges of the OAH uniformly found no nexus between the conduct of the Employees and the escape.  Therefore, it is preposterous for Director Brown to maintain that the escape of these murderers was caused by these DOC Employees.  The escape was the product of a

---

[5]      The Affidavits of the Plaintiffs were filed with the Court on January 2, 2008 in a Notice of Filing as Exhibits 74-81.

woefully understaffed Jail and the failure of its leadership. The DOC/FOP recognized the danger on the morning of the escape. When the DOC/FOP leadership requested a lockdown of the Jail that morning, the request was ignored.

Defendants state that an internal investigation revealed that the prisoners were able to escape from custody because of the neglect and intentional conduct of Plaintiffs. Yet, disinterested administrative law judges determined that these DOC Employees had not committed misconduct or gross misconduct and their summary removal could not be justified. Under oath, Director Brown could not explain why the Internal Investigation conducted by his Office of Internal Affairs did not disclose the unprecedented understaffing that day and the request of FOP officials to lockdown the inmates. See Brown Testimony pp. 1336-38, attached hereto as Exhibit 85.

This is clearly another attempt by the DOC to scapegoat a few employees for the shortcomings of the DOC and the consequences of Director Brown's failure to respond to and remedy those shortcomings. Defendants suggest that the citizens of the District will be safer with Plaintiffs removed from their positions. On the contrary, with the revelation of the truth about the Jail Escape and Director Brown's egregious violation of his employees' constitutional rights, perhaps the Mayor will choose to ensure the safety of the citizens by removing Director Brown from his position.

Dated January 7, 2008                              Respectfully submitted,

                                                   HANNON LAW GROUP, LLP


                                                   _____/s/ J. Michael Hannon_____
                                                   J. Michael Hannon, #352526
                                                   Katie E. Miele, Pro Hac Vice
                                                   1901 18th Street, NW
                                                   Washington, DC 20009
                                                   (202) 232-1907
                                                   Fax:  (202) 232-3704
                                                   jhannon@hannonlawgroup.com
                                                   kmiele@hannonlawgroup.com

                                                   *Attorneys for Plaintiffs*


                          **CERTIFICATE OF SERVICE**

        I hereby certify that a copy of the foregoing, **Plaintiffs' Reply to Defendants'
Opposition to Plaintiffs' Motion for Preliminary Injunction** was sent via electronic filing this
7th day of January, 2008 to:

David A. Jackson, Esq.
Office of the Attorney General
441 Fourth Street, NW
6 South
Washington, DC 20001


                                                   _____/s/ J. Michael Hannon_____
                                                   J. Michael Hannon

11

EXHIBIT 85

1195

<u>VOLUME 6</u>

GOVERNMENT OF THE DISTRICT OF COLUMBIA

PUBLIC EMPLOYEE RELATIONS BOARD

- - - - - - - - - - - - - - - x
                                        :

In the Matter of:           :

                                :

FRATERNAL ORDER OF POLICE/   :
  DEPARTMENT OF CORRECTIONS  :
  LABOR COMMITTEE,         :

                                :

       Complainant,      :

                                :

   -vs-               : PERB Case No. 06-U-50
                                :

DISTRICT OF COLUMBIA     :
  DEPARTMENT OF CORRECTIONS, :

                                :

       Respondent.       :

                                :

- - - - - - - - - - - - - - - x

Washington, D.C.

Thursday, December 6, 2007

Proceedings took place, pursuant to notice, on Thursday, December 6, 2007, at 10:52 a.m., at the District of Columbia Public Employee Relations Board, 717 14th Street, N.W., 11th Floor, Washington, D.C. 20005.

BEFORE:

GLORIA JOHNSON, Esq., Hearing Examiner

PRO-TYPISTS, INC.
PROFESSIONAL TRANSCRIPTION SERVICE
WASHINGTON, D.C.
(202) 347-5395
www.pro-typists.com

1258

1      <u>AFTERNOON PROCEEDINGS</u>

2           (Whereupon, at 1:41 p.m., the hearing

3      resumed.)

4           THE HEARING EXAMINER:  Good afternoon.  My

5      name is Gloria Johnson, I'm the Hearing Examiner in

6      this case.  Could I have you raise your right hand,

7      please?

8      Whereupon,

9                     DEVON BROWN

10     having been called as a witness by Counsel for the

11     Respondent, and having been duly sworn by the Hearing

12     Examiner, was examined and testified as follows:

13          THE HEARING EXAMINER:  Thank you.  Can you

14     state your full name for the record, please?

15          THE WITNESS:  Devon Brown.

16          THE HEARING EXAMINER:  Ms. Naylor or Mr.

17     O'Neill.

18                 DIRECT EXAMINATION

19          BY MS. NAYLOR:

20      Q    Director Brown, we've already established

21     this, but what is your official position with DOC?

22      A    I'm the director of the Department of

1336

1    siren.

2         Q    Okay.

3         A    I think they replaced the switch in some way

4    so that it was very clear which position was on and

5    which position was off, maybe even putting two switches

6    in, one clearly indicating on, one clearly indicating

7    off, but it all had to do with the switches.

8         Q    You indicated that the investigative report

9    you anticipated would be thorough.

10        A    I did.

11        Q    And did you ever review the staffing level at

12   the jail during the shift on which the escape occurred?

13        A    The deputy brought me the staffing level.

14        Q    Is the staffing level reported in this

15   investigation?

16        A    I don't recall, I haven't reviewed that

17   again.  I don't know, sir.

18        Q    But you anticipated this to be a thorough

19   report.

20        A    Yes.

21        Q    Do you know what the staffing level was

22   during the time of the escape relevant to other periods

1337

1    of time at the jail?

2        A    I know it was a weekend and I know that the

3    staffing level is not the same on a weekend that it

4    would be during the week, it's not required to be.  I

5    mean there's less movement, some posts are collapsed,

6    so you wouldn't find the same staffing level on that

7    day that you normally would during the week.

8        Q    Mr. Brown, as the director of the Department

9    of Corrections, do you know what the staffing level was

10   of the shift on which this escape occurred on June 3d

11   of 2006?

12       A    I reviewed the staffing level.  What it

13   exactly was, at this time I don't recall.

14       Q    Can you tell us as the director of the

15   Department of Corrections whether the staffing level on

16   the day of the escape was at an acceptable level?

17       A    Yes.

18       Q    How are you able to tell us that?

19       A    Because I recall asking that particular

20   question.

21       Q    Of whom?

22       A    To my deputy when we reviewed the staffing

1338

 1    level.  And it was explained to me that that was

 2    sufficient staffing for that day.

 3        Q    Did you inquire as to how many persons were

 4    working overtime on that shift?

 5        A    I do recall asking that question.

 6        Q    What was the response?

 7        A    She gave me the response, but what it was,

 8    the exact number, I don't recall.

 9        Q    Do you have a recollection of being concerned

10    about that?

11        A    No, sir, I did not.

12        Q    Do you know whether there were any posts that

13    were shut down?

14        A    My --

15            MS. NAYLOR:  Objection.  I believe that this

16    is beyond the scope of the direct examination.

17            THE HEARING EXAMINER:  Mr. Hannon?

18            MR. HANNON:  I'll move on.

19            BY MR. HANNON:  (Resuming)

20        Q    Let's go back to the purple book.  You said

21    that when there's a jail escape, quote, you "failed in

22    your mission," end quote.  Is that what you said on