UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CYNTHIA WASHINGTON *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 07-1031 (RMU) |
| | : | | |
| v. | : | Document No.: | 19 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

DENYING THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

### I. INTRODUCTION

Today presents the question of whether a party may lose his job before his day in court. The plaintiffs, employees suspended with pay from the D.C. Department of Corrections ("DOC"), request that the court issue a preliminary injunction ordering the defendant[1], the District of Columbia, not to terminate the plaintiffs' employment while their civil suit, challenging the constitutionality of ongoing disciplinary procedures, is pending in this court. The defendant, mindful of its personnel prerogatives, opposes such relief. In weighing the equities of a preliminary injunction the court, like the performer in a high-wire act, walks a fine line, balancing doubt against danger. Both tip against the movant here: the probabilities of success do not roll in the plaintiffs' favor and the prospect of irreparable injury has no clear definition. The court, therefore, cannot grant preliminary injunctive relief – better to abide awhile and proceed after a sustained scrutiny rather than a hurried glance. The motion is denied, with special reference reserved to Justice Frankfurter's reflection that: "Mere speed is not a test of justice.

---

[1] For the sake of simplicity and in light of a pending challenge to the composition of the defendants, the court adopts the singular.

Deliberate speed is. Deliberate speed takes time. But it is time well spent."[2]

## II.  BACKGROUND

### A.  Factual History

On June 3, 2006, two inmates escaped from the D.C. Jail. Pls.' Mot. for Prelim. Inj. ("Pls.' Mot.") at 2. They were recaptured without incident the next day. First Am. Compl. ¶ 6. The day after their capture, DOC Director Devon Brown issued written notification to twelve D.C. Jail employees, including the plaintiffs, putting them on paid administrative leave pending further investigation of the escape. *Id.* On July 26, 2006, at a press briefing Director Brown announced the summary firings of the plaintiffs for dereliction of duty. *Id.* ¶ 9. On August 1, 2006, the plaintiffs received written notice of their terminations, and on August 24, 2006, they learned that an administrative review would be conducted by the Office of Administrative Hearings ("OAH"). Pls.' Mot. at 5. On December 11, 2006, the OAH issued a report and recommendation concluding that the summary removals could not be sustained and recommending that the plaintiffs be reinstated. *Id.* On March 2, 2007, after a request from Director Brown for reconsideration, OAH affirmed its conclusions. *Id.* On March 16, 2007, Director Brown rescinded the summary removals but replaced them with non-summary termination notices predicated on the same allegations of misconduct and negligence. *Id.* at 6; Def.'s Opp'n to Pls.' Mot. for Prelim. Inj. ("Def.'s Opp'n") at 3.

### B.  Procedural History

The plaintiffs filed a complaint with this court on June 8, 2007. First Am. Compl. The

---

[2]   *First Iowa Coop. v. Power Comm'n*, 328 U.S. 152, 188 (1946).

complaint challenges the procedures by which the plaintiffs were initially terminated, then reinstated, and finally placed on leave pending termination. *Id.* ¶¶ 1-31. Specifically, the plaintiffs allege violations of their Fifth Amendment rights to Due Process, defamation and the intentional and negligent infliction of emotional distress. *Id.* ¶¶ 32-52. On July 31, 2007, the defendant filed a motion to dismiss. And on August 28, 2007, the plaintiffs filed a motion for partial summary judgment. Those motions were under consideration when the court received an emergency motion for a temporary restraining order from the plaintiffs on December 20, 2007. The motion indicated that Dr. Henry Lesansky, the hearing officer supervising the plaintiffs' second round of administrative review, had recommended the plaintiffs' removal. Pls.' Mot. at 7. Director Brown adopted his recommendation and issued final notices of termination on December 14, 2007 that went into effect on December 17, 2007. *Id.* The parties reached a voluntary resolution to the motion for a temporary restraining order, and the court issued a consent order staying the terminations pending the disposition of the plaintiff's motion for a preliminary injunction. Order (Dec. 21, 2007). The court now accords the motion its full consideration.

### III. ANALYSIS

#### A. Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates:

> (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin.*

*Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000).[3] It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor. *CSX Transp., Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747). "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.*, 58 F.3d at 747.

Moreover, the other salient factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. *Id.* at 747 (quoting *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986)). Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief

---

[3] Because the terminations became effective on December 14, 2007 and the plaintiffs' motion was not filed until December 20, 2007, the possibility arises that the request, properly conceived, seeks mandatory injunctive intervention. *Veitch v. Danzig*, 135 F. Supp. 2d 32, 35 (D.D.C. 2001). If this were so, then a higher standard of proof would apply than that attendant to a merely prohibitory injunction. *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969). The parties did not discuss this nuance in their briefs, but the court pauses to note that the issue is not dispositive, as the plaintiffs fail to meet their burden even under the lighter standard of a prohibitory injunction.

without considering the other factors. *Id.*

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Id.* Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990).

### B. The Court Denies the Plaintiff's Motion for a Preliminary Injunction

#### 1. The Plaintiffs Do Not Demonstrate A Substantial Likelihood of Success on the Merits

In support of their contention that they are likely to succeed on the merits of their case, the plaintiffs point to the deprivation of their property rights in their employment as well as the unlawful revival of termination proceedings against them. Pls.' Mot. at 8-13. The plaintiffs argue that the District of Columbia Comprehensive Merit Protection Act, D.C. Code §§ 1601.01 *et seq.*, ("CMPA") and their union's Collective Bargaining Agreement ("CBA") with the DOC bestow on them a property interest in their jobs. *Id.* at 9. Both require Director Brown to abide by OAH's recommendation by either "sustain[ing] or reduc[ing] the penalty recommended [,] remand[ing] the matter for further consideration [,] or dismiss[ing] the charge." *Id.* at 11. He may not "increase the penalty." *Id.*

Nor, the plaintiffs continue, may the DOC conduct a "do over" termination proceeding, in lieu of reinstating the plaintiffs and dismissing all charges. *Id.* at 12. The plaintiffs maintain that fairness precludes permitting the DOC to restart termination proceedings *ab initio* and *ad*

*infinitum* until the DOC wins its preferred outcome. *Id.* Indeed, they continue, OAH's decision that summary terminations were inappropriate should be accorded full res judicata effect as an instance of an administrative tribunal acting in a judicial capacity, estopping further proceedings on the issue. *Id.* at 13.

The defendant raises a number of impediments to victory for the plaintiffs. First, the defendant places the court's subject-matter jurisdiction in question. Once an adverse employment decision is issued, an employee may pursue their grievance either through labor arbitration as set forth in the CBA or through an appeal to the OEA. Def.'s Mot. to Dismiss, Ex. A ("CBA") Art. 11, §2. If the employee chooses the former, the Public Employee Relations Board ("PERB") has exclusive jurisdiction over claims on appeal from a CBA arbitration decision. Def.'s Opp'n at 3-4. If the employee selects the latter, further appeal may only be had in the D.C. Superior Court. D.C. Code § 1-606.03(d). Thus, the defendant proposes that, either way, the D.C. District Court is without jurisdiction in this case.

Beyond that threshold hurdle, the defendant maintains that the DOC acted within the scope of the law. The defendant argues that the CMPA determines the plaintiffs' procedural rights, the pertinent rules of which are found in the District's personnel regulations. Def.'s Opp'n at 7. D.C. MUN. REGS. tit. 6, §1616 governs summary removals. Section 1616.6 provides that, "after considering the report and recommendation of the hearing officer" the deciding official shall: "(a) Remand the summary removal action to the hearing officer; (b) Designate a new hearing officer to conduct a review de novo; or © Issue a final decision sustaining, reducing, or dismissing the summary removal action." D.C. MUN. REGS. tit. 6, §1616.6. Director Brown, the defendant represents, chose the latter course, rescinding the first notice of summary removal. Def.'s Opp'n at 7. Nothing in the applicable D.C. regulations prohibit him from initiating new

6

removals, the defendant assures. *Id.*

The question of subject-matter jurisdiction poses more than a doubt. The defendant first raised the objection several months ago in its motion to dismiss. Def.'s Mot. to Dismiss at 10-11. The plaintiffs have not exhausted their administrative remedies. They must still litigate their appeal through the OEA and, after that, they may continue to challenge removal in the D.C. Superior Court. *Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000) (describing the CMPA as "the exclusive remedy for a District employee who has a work related complaint"); *Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 43 (D.D.C. 2005) (applying CMPA's exhaustion requirement strictly). While the court recognizes that the plaintiffs are alleging that the "do over" is *per se* unconstitutional–that is, unlawful even if they are vindicated on appeal– the inflection of a constitutional note does not silence the command of exhaustion. *Marine Mammal Conservancy v. Dep't of Agric.*, 134 F.3d 409, 413-14 (D.C. Cir. 1998). The court will not resolve the question of jurisdiction here, but neither will it ignore the pall it casts over the plaintiffs' legal claims. *Am. Bankers Ass'n*, 38 F. Supp. 2d at 140 (characterizing judicial intervention as unjustified absent a "substantial indication" of likely success on the merits); *Sadhvani v. Chertoff*, 460 F. Supp. 2d 114, 115-17 (D.D.C. 2006) (denying preliminary injunction based on "serious questions" concerning court's jurisdiction).

If jurisdiction is debatable, it is even more of an open question whether a "do over" exceeds DOC's authority. Neither party cites any legal authority definitively addressing this point: the plaintiffs interpreting such silence as indicative of the absence of authority, the defendant presenting it as the absence of a prohibition. Of course, because the movant shoulders the burden, this weighs against the plaintiffs' case. *Benten*, 505 U.S. at 1085. And this is so even before distinguishing between an agency action that is merely illegal and an agency action

so unconstitutional that it warrants judicial redress. *County of Sacramento v. Lewis*, 523 U.S. 833, 864 (1998) (reiterating that "the Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation") (citation omitted). In sum, the plaintiffs fail to meet their burden on this prong.

### 2. The Plaintiffs Do Not Demonstrate Irreparable Injury

The plaintiffs concede that, "[i]n the context of government employment, irreparable harm requires more than a showing of financial distress or inability to find other employment." Pls.' Mot. at 13. They maintain, however, that their recent terminations exhibit "extraordinary circumstances" warranting injunctive relief. *Id.* at 14. The plaintiffs, citing various cases, identify the constitutional violation of their due process rights as a source of irreparable injury. *Id.* at 15-17. They argue that "loss of a constitutional right is a loss that cannot be adequately compensated," *id.* at 16, that their terminations deprive them of retirement benefits and the right to carry a firearm, *id.* at 17, and that their job prospects are limited, *id.* at 18. Specifically, in affidavits filed with the court, the plaintiffs make various averments as to their advanced age, limited education, diminished financial resources, and circumscribed employment opportunities. Pls.' Mot., Exs. 74-81.

The defendant emphasizes the precedent holding that loss of income, without more, does not amount to irreparable harm. Def.'s Opp'n at 8 (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). The plaintiffs' "bare allegations" of pressed circumstances, the defendant argues, do not constitute reliable proof that irreparable harm is certainly impending. *Id.* at 9. And in any event, the defendant continues, should the plaintiffs succeed in their suit, they would receive monetary damages in compensation for any lost wages. *Id.* at 10.

The court, reluctant to pitch against the heavy wind of precedent, cannot conclude that

the plaintiffs have demonstrated a likelihood of irreparable harm flowing from their terminations. In the first place, the court reads differently the cases the plaintiffs cite for the proposition that their terminations constitute a *per se* irreparable injury to their constitutional rights. Two of the cases are distinguishable on the grounds that the circumstances rendered the ability of the terminated plaintiff to recover back pay questionable. *See Jessen v. Vill. of Lyndon Station*, 519 F. Supp. 1183, 1189 (W.D. Wis. 1981) (discerning irreparable injury because sovereign immunity issues made it questionable whether plaintiff could collect back pay); *Faulkner v. N.C. Dep't of Corr.*, 428 F. Supp. 100, 104 (W.D.N.C. 1977) (same). As for the cases cited for the proposition that loss of a constitutional right "is a loss that cannot be adequately compensated," Pls.' Mot. at 16, critical to their holdings was the fact that the terminated plaintiffs were summarily fired and denied any due process, even pre-termination notice and hearings. *Jessen*, 519 F. Supp. at 1189; *Keyer v. Civil Serv. Comm'n of City of New York*, 397 F. Supp. 1362, 1371-72 (E.D.N.Y. 1975). By contrast, the instant plaintiffs "still ha[ve] open avenues of administrative appeal," and their case deals not with the total denial of procedural rights but with "mere 'procedural irregularities in effectuating [the plaintiffs'] discharge.'" *Keyer*, 397 F. Supp. 1371-72. As pled, the plaintiffs' allegations of due process deprivations simply do not exhibit the dimensions of a constitutional violation for which no legal redress is available.

Turning to the specific circumstances of the terminations at issue, the court is likewise unable to discern an irreparable injury. As the Supreme Court has explained:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson*, 415 U.S. at 90. Qualifying its holding, the Court noted that "cases may arise in which

the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." *Id.* at 92 n.68.  Several courts in this district have concluded that plaintiffs have made such a showing.  *See, e.g.*, *Risteen v. Youth for Understanding, Inc.*, 245 F. Supp. 2d 1, 16 (D.D.C. 2002) (discerning irreparable injury when plaintiff demonstrated that he would not have access to "critical medical attention because he has lost his health insurance"); *McVeigh v. Cohen*, 983 F. Supp. 215, 221 (D.D.C. 1998) (concluding that plaintiff's loss of job, income, pension, health and life insurance, coupled with the alleged "stigma" associated with his discharge from the Navy under the "Don't Ask, Don't Tell, Don't Pursue" constituted irreparable harm); *Bonds v. Heyman*, 950 F. Supp. 1202, 1215 (D.D.C. 1997) (discerning irreparable injury when plaintiff was 58 years old, had worked for employer nearly 40 years, had no college education, and was emotionally inseparable from job as evidenced by refusal, despite eligibility, to take retirement at 80% of salary).

      Here, by contrast, the plaintiffs have alleged only a general financial hardship, with specific references to home mortgages and family-members' tuition costs.  Pls.' Mot. at 18. *Carabillo v. ULLICO Inc. Pension Plan & Trust*, 355 F. Supp. 2d 49, 54 (D.D.C. 2004) (stating that a finding of irreparable injury is warranted when the plaintiff "alleges a critical need for healthcare, as opposed to a mere financial hardship").  While most (but not all) of the plaintiffs lack a college education, their circumstances are otherwise indistinguishable from those of prior plaintiffs for whom the courts have withheld the extraordinary grant of injunctive relief.  *See Farris v. Rice*, 453 F. Supp. 2d 76, 80 (D.D.C. 2006) (withholding relief because mere loss of job and salary insufficient to establish irreparable injury); *Zirkle v. District of Columbia*, 830 A.2d 1250 (D.C. 2003), (withholding relief because denial of a prospective job offer insufficient to

establish irreparable injury). Indeed, contrary to the assertions made in their brief, the plaintiffs' affidavits do not establish that their termination will place them in dire straits: despite months spent on paid administrative leave, some have not attempted to seek alternative employment (Ex. 74), while many have obtained work (Exs. 75, 76, 79, 81). Some have alleged that they have taken out loans to supplement their diminished earnings and are depressed by their legal difficulties (Ex. 80). But this alleged harm, without more, is insufficient to support a finding of irreparability. *Sampson*, 415 U.S. at 92 n.68 (advising that "an insufficiency of savings or difficulties in immediately obtaining other employment–external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself–will not support a finding of irreparable injury, however severely they may affect a particular individual"); *Int'l Ass'n of Machinists & Aerospace Workers v. Nat'l Mediation Bd.*, 374 F. Supp. 2d 135, 142 (D.D.C. 2005) (citing *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 367 (D.C. Cir. 1999), in ruling that "a loss of income does not constitute irreparable injury because the financial loss can be remedied with money damages"). The court concludes that none of the plaintiffs has demonstrated that their termination will cause them to suffer irreparable injury.

### 3. The Plaintiffs Do Not Demonstrate that the Balance of Equities Favor Injunctive Relief

The plaintiffs argue that the defendant will suffer no harm were the court to reinstate them. The plaintiffs assert that they are eager to return to work and earn their pay rather than merely languishing on administrative leave. Pls.' Mot. at 19. They offer that this would in fact alleviate the under staffing at the D.C. Jail and inure to the defendant's benefit. *Id.* The defendant argues that reinstating the plaintiffs, after the DOC has judged them partially responsible for two prisoners' escape, would directly compromise the DOC's mission to keep the

public safe, which would in turn lead to a loss of public confidence in the DOC's efficacy. Def.'s Opp'n at 12.

The court begins by observing that the defendant has produced no evidence purporting to show that continuing these plaintiffs on administrative leave would elicit a public outcry. *See Lineback v. Printpack, Inc.*, 979 F. Supp. 831, 849-50 (S.D. Ind. 1997) (chastising employer for tendering "no evidence that its customers . . . would be outraged by a court-ordered reinstatement"). Moreover, the court finds it difficult to believe that delaying the plaintiffs' terminations–which, it bears noting, have been pending for over a year–until the court can address the pending dispositive motions would impose any great hardship on the defendant. *See Natural Res. Defense Council, Inc. v. U.S. Army Corps of Eng'rs*, 457 F. Supp. 2d 198, 236 (S.D.N.Y. 2006) (emphasizing minimal financial prejudice from delay of a few months); *Silva v. Univ. of New Hampshire*, 888 F. Supp. 293, 326 (D.N.H. 1994) (recognizing that, due to the inequality of bargaining power, the brunt of injury from termination falls on the employee rather than the employer). Nevertheless, the defendant has submitted evidence of an internal investigation by the DOC finding that the plaintiffs' negligence and dereliction of duty contributed to the prisoners' escape. Def.'s Opp'n at 11. The plaintiffs challenge these findings, but their efforts, at best, result in an equipoise of evidence insufficient to satisfy their burden as the movant. *See Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.*, 905 F.2d 63, 66 (5th Cir. 1990) (denying preliminary injunction because of movant's failure to establish balance of equities preponderantly in its favor); *Thanos v. Martin*, 1990 WL 16781, at *3 (N.D. Ill. 1990) (denying preliminary injunction because of existence of internal investigation casting doubt on terminated employees' professionalism). This factor, therefore, cannot weigh in the plaintiffs' favor.

### 4. The Plaintiffs Do Not Demonstrate Benefit to the Public Interest

The plaintiffs argue that "the public interest is best served by proper enforcement of the administrative proceedings upon their completion." Pls.' Mot. at 20. Thus, the plaintiffs should not be terminated until a decision is reached "about the lawfulness of the defendants' self-serving 'do over.'" *Id.* The defendant responds that the public interest is furthered by preserving the DOC's ability to discipline employees who it has determined pose a threat to the safety of prisoners, co-workers, and the public. Def.'s Opp'n at 12. If the DOC cannot terminate the plaintiffs, citizens' confidence in the integrity of their government will suffer. *Id.* The plaintiffs reply that, to the contrary, the people's confidence in their government is better served by enforcing accountability from the top rather than by scapegoating a few low-level employees. Pls.' Reply at 10.

For the same reasons that the balance of equities does not favor injunctive relief, the advancement of the public interest does not necessitate injunctive relief. Because the evidence, interpreted most favorably to the plaintiffs, lies in equipoise, no overarching legal principle would be affirmed by reinstating the plaintiffs. *Cf. Knutson v. AG Processing, Inc.*, 302 F. Supp. 2d 1023, 1039 (N.D. Iowa 2004) (granting stay in recognition of moral imperative to discourage proven disability discrimination); *Roig v. Puerto Rico Nat'l Guard*, 47 F. Supp. 2d 216, 222 (D.P.R. 1999) (granting preliminary injunction in recognition of threat to First Amendment freedoms); *Milliron v. Louisville & Jefferson County Metro. Sewer Dist.*, 867 F. Supp. 559, (W.D. Ky. 1994) (granting preliminary injunction in recognition of evidence establishing discharge attributable to exercise of union rights). And it is indisputably in the public's interest for government costs to be minimized. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1474 (8th Cir. 1994) (affirming the government's interest in minimizing public costs). Accordingly,

no relief is available based on this factor.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion for a preliminary injunction.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 11th day of January, 2008.

RICARDO M. URBINA<br>
United States District Judge