**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CYNTHIA WASHINGTON, *et al.,* | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Case Number: 1:07-cv-01031 (RMU) |
| | : | |
| v. | : | |
| | : | |
| DISTRICT OF COLUMBIA, *et al.,* | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, AND IN**
**SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs through their attorneys HANNON LAW GROUP, LLP, submit this

supplemental memorandum in response to the Court's Minute Order of January 14, 2008.

**ADDITIONAL FACTUAL AVERMENTS**

With this pleading, Plaintiffs also are filing their Second Amended Statement of Material

Facts in Support of their Motion for Partial Summary Judgment.  This document brings current

the factual record pertaining to the motion, as well as pertaining to Defendants' Motion to

Dismiss.  In addition, as further supplement to the factual record, Plaintiffs attach as Exhibit B to

this pleading their statutory notice of claim to the District of Columbia filed on August 24, 2007,

pursuant to D.C. Code § 12-309.  This notice is referenced in Plaintiffs' Second Amended

Complaint.[1]  The District of Columbia has refused to voluntarily participate in discovery,

asserting that until its motion to dismiss is ruled upon discovery is premature.  Plaintiffs are

satisfied the factual record now presented for the Court's consideration on their motion for

partial summary judgment.  However, with respect to the Court treating Defendants' motion to

---

[1]       Defendants have moved to dismiss in part on failure of Plaintiffs to comply with the statutory notice
requirement.  The Second Amended Complaint remedies this alleged defect as it pertains to the common law claims.
The Court has not ruled at this time on Plaintiffs' Motion for Leave to File the Second Amended Complaint.

dismiss as a motion for summary judgment with respect to any of the common law claims,

Plaintiffs will be filing a Rule 56(f) affidavit.

**ADDITIONAL LEGAL ARGUMENT**

**I.     PLAINTIFFS' ACTION SHOULD NOT BE DISMISSED.**

The Court in its Memorandum Opinion Denying the Plaintiffs' Motion for Preliminary

Injunction made observations calling into question its subject matter jurisdiction.  While

Plaintiffs recognize that this Court's observations on a preliminary injunction motion are not

determinative of Defendants' motion to dismiss, we would be sorely remiss in not responding to

this issue given the opportunity.

At the outset, it is worth noting that 42 U.S.C. § 1983 was enacted with the intention of

placing citizens of the District of Columbia on an equal footing with citizens of the states.

District Properties Associates v. District of Columbia, 743 F.2d 21, 26 (D.C. Cir. 1984)(citing

H.R. Rep. No. 96-548, 96th Cong., 1st Sess. 1 (1979).  "Congress thus intended that federal

jurisdiction should extend to vindicate the federal rights of citizens of the District of Columbia in

the same way it extends to the citizens of the states."  Id. at 27.  Thus, the determination of

whether a District of Columbia law (here the CMPA) bars federal jurisdiction over Plaintiffs' §

1983 claim rests on analogizing the CMPA to a state statute and considering whether a federal

court could exercise jurisdiction over the claim.  Id.

When Congress enacts legislation applicable only to the District of Columbia, the

enactment, absent evidence of contrary congressional intent, "should be treated as local law,

interacting with federal law as would the laws of the several states."  Id.; Sullivan v. Murphy, 478

F.2d 938, 971-72 (D.C. Cir. 1973) cert. denied, 414 U.S. 880 (1973).  The CMPA was enacted

pursuant to constitutional mandate to "require that the Council of the District of Columbia adopt

a comprehensive merit system of personnel management for the <u>government of the District of Columbia</u>." D.C. Code 1-601.01(1). This statement of purpose provides that the CMPA was unquestionably enacted as a District, or "state" statute, and that the CMPA should be accorded no more weight than a similar state statute. As such, violations of constitutional rights would fall within the federal court's ambit despite any overlap with the CMPA.

Plaintiffs are asserting that Defendants violated their federal, constitutional rights. While <u>Robinson v. District of Columbia</u> 748 A.2d 409 (D.C. 2000) and <u>Johnson v. District of Columbia</u>, 368 F.Supp. 2d 30 (D.D.C. 2005) were informative in the Court's initial Opinion on the preliminary injunction, they are not dispositive in any way to the motion to dismiss. (<u>See</u> Mem. Op. at 7). <u>Robinson</u> did not address a situation where federal jurisdiction was implicated, because in that case the employee had not alleged a deprivation of constitutional rights. <u>Johnson</u> addressed only common law claims brought in federal court which were found capable of resolution through the CMPA.

Additionally, this limitation in <u>Johnson</u> was noted in <u>McManus v. District of Columbia</u>, which stated that "the D.C. Circuit has found that the CMPA did not preclude a plaintiff from bringing a federal law claim in district court where the D.C. system is unable to 'grant appellant the full relief requested in connection with his federal claims.'" 2007 U.S. Dist. LEXIS 94797, 51-52 (D.D.C. 2007). <u>Marine Mammal Conservancy</u>, also cited in this Court's Memorandum Opinion, dealt with the "futility" exception to the exhaustion doctrine. In order to invoke federal jurisdiction where exhaustion has not occurred, "[i]t must appear that pursuing available administrative remedies would have been 'clearly useless,' that the ultimate denial of relief was a

'certainty.'" <u>Marine Mammal Conservancy v. Department of Agric.</u>, 134 F.3d 409, 412-13 (D.C. Cir. 1998). Plaintiffs here are not relying on the futility doctrine.[2]

All these cases are in contrast to Plaintiffs' situation, in that Plaintiffs have followed administrative procedures, only to have the procedures tossed out and a new procedure invented to restart the process when the judgment was not amenable to Director Brown, a clear constitutional violation. Plaintiffs have exhausted the administrative process: i.e., the one in existence when they were first discharged. The DOC has now invented a new process which is nowhere authorized by the City Council, the CBA or otherwise. In order for a federal court to find that a claimant has not exhausted administrative remedies, <u>a fortiori</u> the court must conclude that the administrative remedies are legitimate. <u>See</u> <u>District Properties Associates v. District of Columbia</u>, 743 F.2d 21, 27 n. 3 (D.C. Cir. 1984). Here they are not.

Even so, the District of Columbia Court of Appeals, the Supreme Court, and numerous judges in this Court have held that administrative procedures need not be exhausted in order for a federal court to have subject matter jurisdiction. "[T]here is no requirement to exhaust state law remedies in order to pursue a claim under 42 U.S.C. § 1983." <u>AFGE, Local 3721 v. District of Columbia</u>, 2005 U.S. Dist. LEXIS 8326 at 14 (D.D.C. 2005). <u>See also Patsy v. Board of Regents of State of Florida</u>, 457 U.S. 496, 510-11 (1982); <u>Walton v. District of Columbia</u>, 670 A.2d 1346, 1355 (D.C. 1996); <u>Roach v. District of Columbia</u>, 654 A.2d 1283, 1284 (D.C. 1995).

Because of the constitutional nature of the claim, § 1983 cases do not require administrative exhaustion. This Circuit agrees: "The District Court also seemed to believe that the general rule that appellants must exhaust available and adequate administrative remedies

---

[2]    Judge Lamberth in <u>Johnson</u> also made clear that § 1983 claims brought against city officials in their personal capacity are not subject to the exhaustion requirement. In the Second Amended Complaint, Plaintiffs have clearly alleged constitutional claims against Devon Brown and Henry Lesansky individually. <u>Johnson</u>, 368 F.Supp. 2d 33.

4

before resorting to federal courts, would also act as a bar to this action.  <u>However, the general requirement of exhaustion of administrative remedies is not applicable in § 1983 cases.</u>"

<u>District Properties Associates v. District of Columbia</u>, 743 F.2d at 27 n. 3 (citing <u>Patsy</u>)(emphasis supplied).  Since this case is before the federal court as a valid challenge to a state action on the grounds of constitutional, civil rights, the federal district court has subject matter jurisdiction.

It appears that in the cases where jurisdiction was denied, the constitutional argument was a clearly transparent attempt to subvert the administrative process.  <u>See, e.g.</u>, <u>AFGE</u> (citing the lack of any substantive allegation beyond conclusory rhetoric); <u>Council of School Officers v. District of Columbia</u>, 1991 U.S. Dist. LEXIS 10440 (D.D.C. 1991)(declining jurisdiction due to petitioners "cloaking" their claims with allegations of constitutional infirmity.)  In the present case, Plaintiffs have not brought the constitutional claim as a way to get around the administrative procedure, but because further unauthorized procedures have been imposed.  Moreover, Plaintiffs complaint is replete with factual assertions which make clear that the actions of Devon Brown and the DOC were vindictive and taken in disregard of all civil processes.  In fact, in another proceeding, Director Brown has testified under oath that he did whatever was necessary to accomplish the firings, which he attributed to former Deputy Administrator Bobb.  (<u>See</u> Exhibit 87 at 1267-1268).[3]  The "Do Over" was implemented by Director Brown to make certain Deputy Administrator Bobb's edict was met at whatever costs.

---

[3]     Deputy Administrator Bobb stated at the press conference on July 26, 2005: "We have approved the immediate termination of 10 of the 11 who have been identified in the internal report. . . .  They're no longer on the District payroll as of today".  (<u>See</u> Exhibit 88, DVD of Press Conference, a copy of which shall be delivered to Chambers).

This Court likewise has jurisdiction over Plaintiffs' "defamation plus" claim, because it is a constitutional violation. While common defamation would not rise to the level of a constitutional violation, "comments that imply an inherent or persistent personal condition" are a constitutional violation. Fonville v. District of Columbia, 448 F. Supp.2d 21, 28 (D.D.C. 2006). Specific examples of those behaviors that rise to a constitutional violation include "accusations of dishonesty, commission of a serious felony, manifest racism, serious mental illness, or a lack of intellectual ability." Id. at 29. Director Brown frequently and publicly has accused the Plaintiffs of perpetrating criminal acts in connection with the jail escape. He accused them of being too old to do their jobs. He accused them of being unable to apply the classification system. One example of this is a press release that has been on the DOC web site since July 27, 2006. It states, in relevant part, "As a result of this investigation, 11 individuals have been terminated from employment with the DOC for their roles leading to the escape and to the breach of security." Director Brown's statements clearly constitute a constitutional violation that this Court has the jurisdiction to hear.

Because Plaintiffs have properly invoked this Court's subject matter jurisdiction, the motion to dismiss should be denied as to all counts. Plaintiffs maintain that this Court may not dismiss this action under the "nonjurisdictional exhaustion" doctrine applied by Judge Lamberth in Johnson, 368 F.Supp. 2d at 36.

## II.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Given that the Court should exercise jurisdiction over Plaintiffs' claims, this matter is ripe for partial summary judgment. Under Fed. R. Civ. Pro. 56(e), in response to Plaintiffs' motion, Defendants "may not rest upon the mere allegations or denials of [their] pleading, but [their] response, by affidavits or as otherwise provided in this rule, must set forth specific facts

showing that there is a genuine issue for trial."  Defendants have not contested any of the material facts established by Plaintiffs.

Plaintiffs have filed a Statement of Material Facts Not in Dispute, an Amended Statement of Material Facts, and with this pleading a Second Amended Statement of Material Facts. Defendants have not responded to the Amended Statement, and the Second Amended Statement is being served today.  However, Defendants have responded to the initial Statement of Material Facts Not in Dispute.  Defendants have done so in a pleading denominated "Defendants' Objections to Plaintiffs' Statement of Undisputed Material Facts."  Defendants simply admit or deny each statement without providing any admissible evidence to support their "denials." Therefore, Plaintiffs' Statement of Material Facts stands as the only contrary evidence before the Court on this motion.

Nevertheless, accepting only those assertions which Defendants admit, the following facts must inform the Court's decision on the motion:

The summary removal proceeding was assigned to the D.C. Office of Administrative Hearings (OAH) for report and recommendation to Director Devon Brown, the Deciding Official, who "will issue a final decision."  (SMF 3).  Each written notice provided "Specifications" of the conduct the DOC alleged supported the summary removals.  (SMF 4). Director Brown on behalf of DOC entered into a "Memorandum of Understanding" with OAH setting forth the hearing procedure and providing that "This Designation and MOU is effective October 1st, 2006 and will remain in effect through the latest date that the Director of DOC issues a final decision in any of the Disciplinary Actions."  (SMF 5).  Plaintiffs include with this pleading Exhibit 87 which consists of the sworn testimony of Director Brown in another

proceeding.  In that testimony taken on December 6, 2007, Director Brown testified that the MOU has never been rescinded.  (Exhibit 87 at 1356-58).

Defendants also admit that the final decision by Director Brown "may not impose a harsher penalty than that recommended by the Administrative Judge"  (SMF 8).  After Plaintiffs filed a Writ of Mandamus to Compel Agency Action in the District of Columbia Court of Appeals, Director Brown rescinded the summary removal action and served new termination notices based on the same "Specifications" contained in the initial notice of summary removal. (SMF 12).  The new termination procedure was assigned to a single employee of the DOC, Henry R. Lesansky, Ph.D., the Health Services Administrator, to act as Hearing Officer.  Dr. Lesansky serves at the pleasure of Director Brown, the deciding official.  (SMF 13, 15; Exhibit 87 at 1357).[4]

The Amended Statement of Material Facts from Plaintiffs, to which Defendants have not responded, establishes the following facts.  The Plaintiffs participated in good faith in the hearing process before Dr. Lesansky.  (SMF 17).  On December 14, 2007, the DOC Employees were served with decisions by Director Brown finding unanimously that each employee was to be discharged from service with the DOC for the very same conduct which was previously presented to the Judges of the Office of Administrative Hearings.  (SMF 18).  On December 21, 2007, this Court entered a consent order staying the removal of the DOC Employees pending resolution of Plaintiffs' Motion for a Preliminary Injunction.  (SMF 19).  On January 11, 2008, this Court issued an order denying Plaintiffs' Motion for Preliminary Injunction.  (SMF 20). On January 14, 2008, Defendant DOC again discharged the Plaintiff Employees effective January 16, 2008.  (SMF 21).

---

[4]        Assigning Dr. Lesansky as the hearing officer violates the CBA.  (See SMF 15).  This further buttresses Plaintiffs' claim that the "new procedure" has been invented.

Plaintiffs contend that all but one of the "denials" by Defendants to the Statement of Material facts are immaterial. Moreover, Defendants have not contested the authenticity of any of the 86 Exhibits so far presented to the Court by Plaintiffs, including those in support of the Statements which Defendants deny. (See SMF 6, 7, and 8). The only material fact denied by Defendants is SMF 16 which reads, "No statute, regulation, or provision of the CBA authorizes the DOC to require these DOC Employees to go through a second administrative process." Despite their denial, Defendants have not identified any such provision, and this Court has recognized that no such provision exists in its Memorandum Opinion denying Plaintiffs' motion for preliminary injunction:

> If jurisdiction is debatable, it is even more of an open question whether a "do over" exceeds DOC's authority. Neither party cites any legal authority definitively addressing this point: the plaintiffs interpreting such silence as indicative of the absence of authority, the defendant presenting it as the absence of a prohibition.

(Mem. Op. at 7).

Therefore, the facts are not in dispute. The case tips on the fulcrum set by this Court in its decision denying the motion for preliminary injunction: i.e., whether Director Brown's failure to render Final Decisions that do not impose "a harsher penalty than that recommended by the Administrative Judge[s]" is a deprivation of Plaintiffs' property rights. (See SMF 8, admitted by Defendants). Put another way, is the "Do Over" which has resulted in a revocation of the decision to which the Plaintiffs were entitled at the conclusion of the OAH hearings constitutionally permitted?

While Plaintiffs did not carry their burden at the preliminary injunction stage on this issue, the case is in a very different posture now. The Court must apply the established facts to the law. Defendants admit that the DOC and Director Brown submitted these matters to the

OAH Judges to act as hearing officers.  Defendants admit that the MOU establishing the procedure was to remain in effect until a Final Decision.  The MOU has never been revoked. The MOU was part of the package of procedural rights to which Plaintiffs were entitled as a matter of due process, as admitted by Director Brown.  The CBA, the CMPA and the MOU prohibited Director Brown from imposing a harsher penalty than that recommended by the OAH Judges.  (See SMF 8, admitted by Defendants).  Therefore, Plaintiffs were entitled – as a matter of due process – to a Final Decision from Director Brown returning them to work.  That decision has been denied them.

The legal basis for this Court finding a constitutional violation is simple.  Defendants are obligated by the Constitution to abide by internal, procedural regulations defining due process rights when proposing the dismissal of employees. See Lopez v. FAA, 318 F.2d 242, 246 (D.C. Cir. 2003).  (See also Plaintiffs' Memorandum in Support of Partial Summary Judgment at 18-23).  The Court should not be deterred in finding these actions unconstitutional simply because some other agency or court might make the same decision.  Plaintiffs have exhausted their administrative remedies as a matter of law for the reasons set forth in Part I of this memorandum. In addition, they have exhausted their administrative remedies as a matter of fact and common sense.  The original wrong suffered by Plaintiffs was their termination.  They challenged that termination through a procedure established by Defendants.  At the conclusion of that process, Plaintiffs had won reinstatement according to the rules adopted by Defendants.

Defendants cannot convert this unconstitutional deprivation of property into a merely procedural defect.  It is unconstitutional for a municipality and its agents to deny an earned property right to an employee by inventing new procedures.  It is the "invention" of new procedures – after the fact – and the refusal to grant that which has been earned by Plaintiffs that

constitute a violation of the Constitution.  Simply because at some future date Plaintiffs might

prevail in some other forum is not justification for this Court to refrain from acting.  This is not a

run-of-the-mill tort claim with no real constitutional dimension.  Should this Court fail to

consider this case, the District of Columbia – and in particular the DOC and Director Brown –

have a green light to invent whatever procedures they wish to achieve their ends.  Because

Plaintiffs civil rights have already been denied with significant injury, this Court is empowered

to act on their behalf.

The federal civil rights laws recognize that on occasion a federal court must intrude into

the business of a state.  This is such an occasion.

Dated March 7, 2008                                      Respectfully submitted,

                                                         HANNON LAW GROUP, LLP


                                                         _____/s/ J. Michael Hannon_____
                                                         J. Michael Hannon, #352526
                                                         1901 18th Street, NW
                                                         Washington, DC 20009
                                                         (202) 232-1907
                                                         Fax:  (202) 232-3704
                                                         jhannon@hannonlawgroup.com

                                                         *Attorney for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that a copy of the foregoing was sent via electronic filing, this 7th day of March, 2008 to:

David Jackson, Esq.
Office of the Attorney General
441 Fourth Street, NW
6 South
Washington, DC 20001


               */s/ J. Michael Hannon*
              J. Michael Hannon

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CYNTHIA WASHINGTON, *et al.,*      :

         Plaintiffs,      :      Case Number: 1:07-cv-01031(RMU)

    v.      :

DISTRICT OF COLUMBIA, *et al.,*      :

        Defendants.      :

# SECOND AMENDED STATEMENT OF
# MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF
# PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT[1]

1.      The DOC Employees were summarily fired by Department of Corrections Director Devon Brown and City Administrator Robert Bobb at a news conference on July 26, 2006.

1a.      The District of Columbia amended provisions of the D.C. Personnel Manual ("DCPM") in order to effectuate the summary firing of the DOC Employees that occurred at the Press Briefing of July 26, 2006.  (First Amended Complaint at ¶¶ 12, 13, 14, 19, 38 and 39).   DCPM § 1616.4 provided that in cases of Summary Removal, written notification of the action was to be provided to the employee and the FOP/DOC within three (3) days of removal ("3 Day Rule").  That notice must provide detailed information about the removal, including the reasons for Summary Removal along with identification of critical deadlines in the removal process and pertinent employee rights. Id.

---

[1]      SMF 1(a) through 1(e), 17, and 18 were added in Plaintiffs' Amended Statement of Material Facts Not in Dispute filed on December 20, 2007.  This pleading adds SMF 19-22.

1b.    On the very date of the planned news conference, pursuant to the direction of Director Brown, the D.C. Office of Personnel issued a Variation to DCPM § 1616.4 which allowed the DOC 30 days to provide written notification to the DOC Employees who were fired.  (<u>See</u> Variation, Exhibit 48, filed herewith).  The Director of Personnel found that the variation was necessary and fulfilled the "sprit of the regulations <u>and</u> the efficiency of the D.C. Government; and the integrity of the Career . . . Services."   She found that the variation was necessary for the following reason:

> As part of the investigation that resulted in the summary removal actions taken by the DOC, the agency conducted an examination of witnesses (interviews) via tape recorder; however, as of July 26, 2006, the process to transcribe the tapes of the examination of witnesses has not been completed.

<u>Id</u>.[2]

1c.    The Director of Personnel based her decision on information provided by Joan Murphy with the Human Resources Office of the DOC.  Ms. Murphy advised the Director that the transcription of the tapes had not occurred and could not be completed for at least 30 days.  (Affidavit of Jessica V. Pimentel, Exhibit A filed herewith).

1d.    During a hearing before the D.C. Public Employee Relations Board in PERB Case No. 06-U-50, both Director Devon Brown and Joan Murphy stated under oath that the request for the Variation was made on July 26 because the tapes had not been transcribed.  This testimony occurred on December 6, 2007, in which the undersigned acted as counsel for the Complainant.

---

[2]    The Variation also provided: "The DOC anticipates that it will take approximately <u>30 days from July 26, 2006</u>, for the transcription process to be completed (plus time for the affected employees to review/approve the transcripts) and for the written summary removal notices to be drafted and issued to the employees."  However, the employees were never requested to review and approve the transcripts and preparation of written notices must be done even where the 3 Day Rule applies.

1e.     In conflict with the testimony of Director Brown and Murphy, at the same hearing and on the same date, Neal R. Gross of Neal R. Gross and Co., Inc., a court reporting company, testified that the vast majority of the tapes (13) had already been transcribed and delivered to the DOC on June 27, 2006, a month before the Variation.. (See Affidavit of Neal R. Gross, Exhibit 49 filed herewith).    Tapes of four other interviews of some of the Plaintiffs were ordered by the DOC on July 25, 2006, and were delivered by email on July 27, 2006, the day after the Variation was executed.    Therefore, the rationale presented by the DOC for the Variation was false.

2.      The Department of Corrections did not provide the DOC Employees with a written notice of the proposed summary removals until August 24, 2006.

3.     The notice of summary removals[3] provided that:

> The Office of Administrative Hearings will conduct the administrative review and/or hearing of the proposed removal actions…In conducting the administrative review and/or hearing, your appointed Hearing Officer will review all of the documents giving rise to the charge…this written notice and your response, if there is one.    After conducting the administrative review, your assigned Hearing Officer will make a written report and recommendation to Director Devon Brown, the Deciding Official, who will issue a final decision.

4.     Each Written Notice provided "Specifications" of the conduct the DOC alleged supported the summary removals.[4]

---

[3]      See Exhibit 1, Cynthia Washington Written Notice; Exhibit 2, Herbert Douglas Written Notice; Exhibit 3, Dionne Makins Written Notice; Exhibit 4, Alphonso Bryant Written Notice; Exhibit 5, Lowanda Hinton-Saunders Written Notice; Exhibit 6, Darryl Love Written Notice; Exhibit 7, Malcolm Pointer Written Notice; Exhibit 8, Shantell Hatton Written Notice.

[4]      See Exhibits 1-8.

5.     Department of Corrections Director Devon Brown entered into a "Memorandum of Understanding"[5] with the Office of Administration Hearings, assigning the role of "hearing officer" to the Judges of the Office and outlining the administrative hearing process.  The MOU included the following language; "This Designation and MOU is effective October 1st, 2006 and will remain in effect through the latest date that the Director of DOC issues a final decision in any of the Disciplinary Actions.."

6.     The assigned administrative law judges each issued a Report and Recommendation regarding each DOC Employee on December 11, 2006.[6]

7.     The Report and Recommendation for each DOC Employee concluded that the employee could not be summarily removed and recommended they each be returned to work with the Department of Corrections.[7]

8.     Pursuant to the Collective Bargaining Agreement, the Comprehensive Merit Protection Act, § 1-601.01, *et seq*., and Memorandum of Understanding, Director Devon Brown was required to issue a Final Decision consistent with the recommendations.  The Final Decision must either: sustain the recommendation, reduce the penalty proposed, remand the action, or dismiss the action.  The final decision may not impose a harsher penalty than that recommended by the Administrative Judge.[8]

---

[5]     See Exhibit 9, Designation of Authority And Memorandum of Understanding Between The Office of Administration Hearings and the Department of Corrections for the District of Columbia, specifically Section D. Duration of MOU and Early Termination For Cause.

[6]      See Exhibit 10, Report and Recommendation Cynthia Washington; Exhibit 11, Report and Recommendation Herbert Douglas and Lorenzo Jennings; Exhibit 12, Report and Recommendation Dionne Makins; Exhibit 13, Report and Recommendation Alphonso Bryant; Exhibit 14, Report and Recommendation Lowanda Hinton-Saunders; Exhibit 15, Report and Recommendation Darryl Love; Exhibit 16, Report and Recommendation Malcolm Pointer; Exhibit 17, Report and Recommendation Shantell Hatton.

[7]     See Exhibits 10-17, Section III Recommendation.

[8]     See Exhibit 18, Collective Bargaining Agreement Section 9 D., See 6 DCMR§ 1616.6.

9.      Director Brown did not render a final decision returning the DOC Employees to work as he was obligated to do.

10.      In an effort to enforce their rights, the DOC Employees filed a Petition for Writ of Mandamus to Compel Agency Action in the District of Columbia Court of Appeals on March 12, 2007.[9]

11.      On March 15, 2007, Defendants Department of Correction and Devon Brown rescinded the summary removal action in an attempt to preempt the need for the Writ of Mandamus.  The DOC Employees were delivered these letters after being invited to return to work on March 16, 2007.[10]

12.      At the same time, the DOC Employees were served their notices that the summary removal action had been rescinded, the DOC Employees were each served a twenty day notice of proposed termination.  The specifications in support of the proposed terminations were the exact same acts used to support the summary removals.[11]

13.      Furthermore, the DOC Employees were given letters placing them on administrative leave with pay as of March 16, 2007.[12]

---

[9]      See Exhibit 19, Petition for Writ of Mandamus to Compel Agency Action.

[10]      See Exhibit 20, Summary Removal Rescission Cynthia Washington; Exhibit 21, Summary Removal Rescission Herbert Douglas; Exhibit 22, Summary Removal Rescission Lorenzo Jennings; Exhibit 23, Summary Removal Rescission Dionne Makins; Exhibit 24, Summary Removal Rescission Alphonso Bryant; Exhibit 25, Summary Removal Rescission Lowanda Hinton-Saunders; Exhibit 26, Summary Removal Rescission Darryl Love; Exhibit 27, Summary Removal Rescission Malcolm Pointer; Exhibit 28, Summary Removal Rescission Shantell Hatton.

[11]      See Exhibit 29, Cynthia Washington Notice of Proposed Termination; Exhibit 30, Herbert Douglas Notice of Proposed Termination; Exhibit 31, Lorenzo Jennings Notice of Proposed Termination; Exhibit 32, Dionne Makins Notice of Proposed Termination; Exhibit 33, Alphonso Bryant Notice of Proposed Termination; Exhibit 34, Lowanda Hinton-Saunders Notice of Proposed Termination; Exhibit 35, Darryl Love Notice of Proposed Termination; Exhibit 36, Malcolm Pointer Notice of Proposed Termination; Exhibit 37, Shantell Hatton Notice of Proposed Termination.

[12]      See Exhibit 38, Cynthia Washington Administrative Leave Notice; Exhibit 39, Herbert Douglas Administrative Leave Notice; Exhibit 40, Lorenzo Jennings Administrative Leave Notice; Exhibit 41,

14.     Plaintiffs' notice of proposed termination stated that Henry R. Lesansky, Ph.D., Health Services Administrator, and an employee of the Department of Corrections, had been appointed as Hearing Officer for the new administrative review and/or administrative hearing.[13]

15.     The Collective Bargaining Agreement between District of Columbia Department of Corrections and Fraternal Order of Police Department of Correction Labor Committee guarantees that a "Disinterested Designee/Hearing Officer shall review the proposed action…. The Hearing Officer must be a DS-13 or higher and have no direct or personal knowledge of the matter contained in the disciplinary case, and not be in the chain of command between the proposing and deciding officials."[14] Dr. Lesansky serves at the pleasure of the Director, the deciding official.

16.     No statute, regulation, or provision of the CBA authorizes the DOC to require these DOC Employees to go through a second administrative process.

17.     Nevertheless, the DOC Employees participated in good faith in the new hearings scheduled by Dr. Lesansky. They presented written submissions and all but two Employees made oral presentations which were recorded. (See Submission of Cynthia Washington, Exhibit 50; Submission of Herbert Douglas, Exhibit 51; Submission of Lorenzo Jennings, Exhibit 52; Submission of Dionne Makins, Exhibit 53; Submission of Alphonso Bryant, Exhibit 54; Submission of Lawanda Hinton-Saunders, Exhibit 55; Submission of Darryl Love, Exhibit 56; Submission of Shantell Hatton, Exhibit 57, filed

---

Dionne Makins Administrative Leave Notice; Exhibit 42, Alphonso Bryant Administrative Leave Notice; Exhibit 43, Lowanda Hinton-Saunders Administrative Leave Notice; Exhibit 44, Darryl Love Administrative Leave Notice; Exhibit 45, Malcolm Pointe Administrative Leave Notice; Exhibit 46, Shantell Hatton Administrative Leave Notice.

[13]     See Exhibits 29-37.

[14]     See Exhibit 18, Article II, Section 9, C.

herewith).  The available transcriptions are attached as Exhibits.  (See Oral Presentation of Cynthia Washington, Exhibit 58; Oral Presentation of Herbert Douglas, Exhibit 59; Oral Presentation of Lorenzo Jennings, Exhibit 60; Oral Presentation of Dionne Makins, Exhibit 61; Oral Presentation of Alphonso Bryant, Exhibit 62 ; Oral Presentation of Lawanda Hinton-Saunders, Exhibit 63; Oral Presentation of Darryl Love, Exhibit 64; Oral Presentation of Shantell Hatton, Exhibit 65 ).

18.     On December 14, 2007, the DOC Employees were again served with decisions by Director Brown finding unanimously that each employee was to be discharged from service with the DOC for the very same conduct which was previously presented to the judges of the Office of Administrative Hearings.  (See Dismissal of Cynthia Washington, Exhibit 66; Dismissal of Herbert Douglas, Exhibit 67; Dismissal of Lorenzo Jennings, Exhibit 68; Dismissal of Dionne Makins, Exhibit 69; Dismissal of Alphonso Bryant, Exhibit 70; Dismissal of Lowanda Hinton-Saunders, Exhibit 71; Dismissal of Darryl Love, Exhibit 72; Dismissal of Shantell Hatton, Exhibit 73, filed herewith).

19.     On December 21, 2007, this Court entered a consent order staying the removal of the DOC Employees pending resolution of Plaintiffs' Motion for a Preliminary Injunction.

20.     On January 11, 2008, this Court issued an order denying Plaintiffs' Motion for Preliminary Injunction.

21.     On January 14, 2008, Defendant DOC again discharged the Plaintiff Employees effective January 16, 2008.  They are receiving no benefits whatsoever from the DOC, including medical coverage.

22.    On January 14, 2008, Plaintiff DOC Employees filed Petitions for Appeal of the Agency action to the District of Columbia Office of Employee Appeals. The Petitions were amended on February 6, 2008, to report the second termination which became effective January 16, 2008.

Dated March 7, 2008                              Respectfully submitted,

                                                 HANNON LAW GROUP, LLP


                                                 _____/s/ J. Michael Hannon_____
                                                 J. Michael Hannon, #352526
                                                 1901 18th Street, NW
                                                 Washington, DC 20009
                                                 (202) 232-1907
                                                 Fax: (202) 232-3704
                                                 jhannon@hannonlawgroup.com

                                                 *Attorneys for Plaintiffs*


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via electronic filing, this 7th day of March, 2008 to:

David Jackson, Esq.
Office of the Attorney General
441 Fourth Street, NW
6 South
Washington, DC 20001


                                                 _____/s/ J. Michael Hannon_____
                                                 J. Michael Hannon

EXHIBIT 87

1195

<u>VOLUME 6</u>

GOVERNMENT OF THE DISTRICT OF COLUMBIA

PUBLIC EMPLOYEE RELATIONS BOARD

- - - - - - - - - - - - - - - x
                              :
In the Matter of:             :
                              :
FRATERNAL ORDER OF POLICE/    :
  DEPARTMENT OF CORRECTIONS   :
  LABOR COMMITTEE,            :
                              :
        Complainant,          :
                              :
    -vs-                      : PERB Case No. 06-U-50
                               :
DISTRICT OF COLUMBIA          :
  DEPARTMENT OF CORRECTIONS,  :
                              :
        Respondent.           :
                              :
- - - - - - - - - - - - - - - x

                          Washington, D.C.

                          Thursday, December 6, 2007


        Proceedings took place, pursuant to notice,

on Thursday, December 6, 2007, at 10:52 a.m., at the

District of Columbia Public Employee Relations Board,

717 14th Street, N.W., 11th Floor, Washington, D.C.

20005.

    BEFORE:

        GLORIA JOHNSON, Esq., Hearing Examiner

PRO-TYPISTS, INC.
PROFESSIONAL TRANSCRIPTION SERVICE
WASHINGTON, D.C.
(202) 347-5395
www.pro-typists.com

1196

APPEARANCES:

      On behalf of the Complainant:

          J. MICHAEL HANNON, Esq.
          Hannon Law Group, LLP
          1901 18th Street, N.W.
          Washington, D.C. 20009

      On behalf of the Respondent:

          JONATHAN O'NEILL, Esq.
          KATHRYN NAYLOR, Esq.
          Labor Relations Officers
          Office of Labor Relations and
            Collective Bargaining
          441 4th Street, N.W.
          Suite 200
          Washington, D.C.  20001

          FRED STATEN, JR., Esq.
          Department of Corrections
          1923 Vermont Avenue, N.W.
          Washington, D.C.  20001

ALSO PRESENT:

          NILA S. RITENOUR
          LAURRINE ELLIS
          HAZEL LEE
          JERRIE MOODY

1197

W I T N E S S E S

| Respondent | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Orlando Lee Harper | 1198 | 1211 | – | – |
| Stanley M. Waldren | 1223 | 1229 | 1251 | – |
| Devon Brown | 1258 | 1306 | – | – |
| Complainant | | | | |
| Neal R. Gross (by telephone) | 1399 | – | – | – |

E X H I B I T S

| Respondent | Identification | In Evidence |
|---|---|---|
| 114  8/17/06 Open Letter from Director Brown | 1292 | – |

1258

1    <u>AFTERNOON PROCEEDINGS</u>

2         (Whereupon, at 1:41 p.m., the hearing

3    resumed.)

4         THE HEARING EXAMINER:  Good afternoon.  My

5    name is Gloria Johnson, I'm the Hearing Examiner in

6    this case.  Could I have you raise your right hand,

7    please?

8    Whereupon,

9                    DEVON BROWN

10   having been called as a witness by Counsel for the

11   Respondent, and having been duly sworn by the Hearing

12   Examiner, was examined and testified as follows:

13        THE HEARING EXAMINER:  Thank you.  Can you

14   state your full name for the record, please?

15        THE WITNESS:  Devon Brown.

16        THE HEARING EXAMINER:  Ms. Naylor or Mr.

17   O'Neill.

18                 DIRECT EXAMINATION

19        BY MS. NAYLOR:

20        Q    Director Brown, we've already established

21   this, but what is your official position with DOC?

22        A    I'm the director of the Department of

1268

1    He asked me what I had done, what action I

2    had taken.  I explained to him that it was our standard

3    procedure when employees are accused of serious

4    wrongdoing to place them on administrative leave

5    pending investigation.  And he said in this instance,

6    they were to be removed immediately.

7    And a press conference was held, I attended

8    the press conference with him and the Mayor, and

9    returned to my office afterwards.  I believe I called,

10    I called Joan Murphy while we were waiting in the press

11    office and instructed her, told her what the sentiment

12    of the Mayor's Office was and that we were to look for

13    a means by which we could effect those orders.

14    And when I returned to the office, I summoned

15    her, along with the certain members of the executive

16    team.  And Joan told me that there was only one way

17    that the District Personnel Regulations would allow for

18    such action, that was summary removal.

19    So I instructed her -- I again reiterated

20    what Mr. Bobb had told me and told her to do whatever

21    was necessary to comply with his orders.

22    Q    Did you authorize the variations, the request

1269

1    to seek the variation?

2         A    She informed me that it would be necessary,

3    that there would be I think a 30-day extension, I

4    believe she told me, that it was necessary to get an

5    extension in order for the summary removals to meet the

6    time frames that the code required.  And I instructed

7    her again, "Whatever is necessary, then we are to

8    pursue that."

9         Q    And what is the current status of the summary

10   removals?

11        A    The current status is that they have been

12   remanded to another hearing officer.  The hearing

13   officer has reviewed the findings and we're about to

14   issue them.

15        Q    In terms of the new hearing officer, that's

16   in line with the new advanced notices of termination

17   that were issued, is that correct?

18        A    That's correct.

19             MR. HANNON:  Excuse me, "in line with"?  Go

20   ahead.

21             BY MS. NAYLOR:  (Resuming)

22        Q    The initial summary removal actions that were

1356

1      THE HEARING EXAMINER:  Do you need mine back?

2      MR. HANNON:  No, as long as Ms. Naylor

3  doesn't mind sharing.

4      BY MR. HANNON:  (Resuming)

5      Q    Would you turn to Tab 68, Tab 68?

6      MS. NAYLOR:  There are no tabs in this, I

7  didn't get it tabbed.

8      THE HEARING EXAMINER:  Actually, I don't need

9  one, he can just have this.

10      BY MR. HANNON:  (Resuming)

11      Q    Would you look at that and familiarize

12  yourself with it and look up when you're done?  Do you

13  recognize this document?

14      A    Yes.

15      Q    This is an agreement that you executed with

16  the Office of Administrative Hearings for the judges of

17  that agency to act as the hearing officers --

18      A    Yes.

19      Q    -- in the case of the fired employees,

20  correct?

21      A    Yes, sir.  Excuse me.

22      Q    And in the middle of the first page, it

1357

1    states, "Whereas, it is necessary and desirable that

2    the administrative proceedings are held by a body that

3    is independent of the Department of Corrections and

4    that OAH possesses the expertise and resources for

5    conducting these hearings."

6        A    Yes, sir.

7        Q    Do you agree with that, sir?

8        A    That was the agreement.

9        Q    Is Dr. Lessansky independent of the

10   Department of Corrections?

11       A    Not of the Department of Corrections.

12       Q    Is Dr. Lessansky a Career Service employee?

13       A    No, sir.

14       Q    He is at will.

15       A    He's at will.

16       Q    And you recruited Dr. Lessansky to come to

17   work for you from Maryland, is that correct?

18       A    No, sir.

19       Q    Who did?

20       A    I don't know where he came from.  When he

21   came to us, he had worked for Maryland, but when he

22   came to me for employment, I think he was a consultant.

1358

1    Q    You hired him.

2    A    I hired him.

3    Q    Has this memorandum of understanding been

4    revoked?

5    A    With the Office of Administrative Hearings?

6    Q    Yes, sir.

7    A    It's been concluded, their services are

8    concluded.

9    Q    Has this agreement been revoked?

10    A    It's been concluded.

11    Q    Well, is there any documentation that the

12    Department of Corrections has submitted to the Office

13    of Administrative Hearings indicating that this

14    agreement is no longer effective?

15    A    Yes, sir, it's called payment.

16    Q    Besides payment, anything else?

17    A    Not that I'm aware of, but we paid them, they

18    sent their invoice; that concluded their services to

19    us.

20    Q    And this is the agency of the judges --

21    withdrawn.  Let's turn to 69.  Have you read this

22    letter?

EXHIBIT 88

# DVD of Press Conference

# To be produced to chambers and counsel by hand delivery