UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CYNTHIA WASHINGTON *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 07-1031 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 38 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING THE PLAINTIFFS' MOTION FOR RELIEF FROM ORDER DISMISSING CASE
AND FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT**

**I. INTRODUCTION**

This matter comes before the court on the plaintiffs' motion for relief from the court's order dismissing this case and for leave to file a third amended complaint. The plaintiffs, current and former employees of the District of Columbia Department of Corrections, brought constitutional and state law tort claims against the District of Columbia after the Department of Corrections terminated their employment. In March 2008, the court issued an order dismissing the plaintiffs' amended complaint, determining that the plaintiffs had failed to exhaust their administrative remedies before filing suit. The plaintiffs now seek relief from that order. Because the plaintiffs still have not exhausted their administrative remedies, however, the court sees no reason to grant the requested relief. Accordingly, the court denies the plaintiffs' motion.

**II. FACTUAL & PROCEDURAL BACKGROUND**

As the facts underlying this case were discussed in more detail in the court's memorandum opinion of March 18, 2008, *see* Mem. Op. (Mar. 18, 2008) at 2-4, the court will

only briefly summarize them here.  Following two inmates' highly publicized escape from the District of Columbia Central Detention Facility in June 2006, *see* Am. Compl. ¶ 3, the defendants summarily terminated the plaintiffs' employment in or about August 2006, *see id.* ¶¶ 9-15.  Pursuant to the procedures established in the Comprehensive Merit Personnel Act ("CMPA"), D.C. CODE §§ 1-601.01 *et seq.*, the plaintiffs initiated an administrative action in the Office of Employee Appeals ("OEA") contesting the propriety of their termination, *see* Am. Compl. ¶ 16.

While the administrative action was still proceeding in the OEA, the plaintiffs filed a complaint against the defendants in this court in June 2007.  *See generally* Compl.  Shortly thereafter, the plaintiffs filed an amended complaint asserting a procedural due process claim under 42 U.S.C. § 1983, as well as common law tort claims of "defamation plus" and intentional and negligent infliction of emotional distress.  *See* Am. Compl. ¶¶ 32-57.  The defendants filed a motion to dismiss the amended complaint in July 2007, which the court granted on March 18, 2008.  *See* Order (Mar. 18, 2008).  As the court explained in the memorandum opinion accompanying the order, the dismissal was appropriate because the plaintiffs had failed to exhaust their administrative remedies before filing suit.  *See* Mem. Op. (Mar. 18, 2008) at 6-17.

In July 2009, the plaintiffs filed the instant motion requesting relief from the court's March 18, 2008 order.  *See generally* Pls.' Mot.  The defendants filed an opposition on August 11, 2009, *see generally* Defs.' Opp'n, to which the plaintiffs replied on August 18, 2009, *see generally* Pls.' Reply.  The court turns now to the applicable legal standard and the parties' arguments.

### III.  ANALYSIS

#### A.  Legal Standard for Relief Under Federal Rule of Civil Procedure 60(b)

In its discretion, the court may relieve a party from an otherwise final judgment pursuant to any one of six reasons set forth in Rule 60(b). FED. R. CIV. P. 60(b); *Lepkowski v. Dep't of Treasury*, 804 F.2d 1310, 1311-12 (D.C. Cir. 1986). First, the court may grant relief from a judgment involving "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). Relief under Rule 60(b)(1) turns on equitable factors, notably whether any neglect was excusable. *Pioneer Inv. Servs. Co. v. Brunswick Ass'n Ltd. P'ship*, 507 U.S. 380, 392 (1993). Second, the court may grant relief where there is "newly discovered evidence" that the moving party could not have discovered through its exercise of due diligence. FED. R. CIV. P. 60(b)(2). Third, the court may set aside a final judgment for fraud, misrepresentation or other misconduct by an adverse party. *Id*. 60(b)(3); *Mayfair Extension, Inc. v. Magee*, 241 F.2d 453, 454 (D.C. Cir. 1957). Specifically, the movant must show that "such 'fraud' prevented him from fully and fairly presenting his case," and that "the fraud is attributable to the party or, at least, to counsel." *Richardson v. Nat'l R.R. Passenger Corp.*, 150 F.R.D. 1, 7 (D.D.C. 1993) (internal citations omitted). Fourth, the court may grant relief in cases in which the judgment is "void." FED. R. CIV. P. 60(b)(4). A judgment may be void if the court lacked personal or subject matter jurisdiction in the case, acted in a manner inconsistent with due process or proceeded beyond the powers granted to it by law. *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 871 (4th Cir. 1999). Fifth, the court may grant relief if the "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." FED. R. CIV. P. 60(b)(5); *Twelve John Does v. District of*

*Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (noting that not all judgments having continuing consequences are "prospective" for the purposes of Rule 60(b)(5)). Sixth, the court may grant relief from a judgment for "any . . . reason that justifies [such] relief." FED. R. CIV. P. 60(b)(6). Using this final catch-all reason sparingly, courts apply it only in "extraordinary circumstances." *Pioneer Inv. Servs.*, 507 U.S. at 393.

A party proceeding under one of the first three reasons must file his Rule 60(b) motion within one year after the judgment at issue. FED. R. CIV. P. 60(c)(1). A party relying on one of the remaining three reasons may file his Rule 60(b) motion within a reasonable time. *Id*. The party seeking relief from a judgment bears the burden of demonstrating that he satisfies the prerequisites for such relief. *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002).

### B. The Court Denies the Plaintiffs' Motion for Relief from the Order of March 18, 2008 and for Leave to File a Third Amended Complaint

Invoking Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6), the plaintiffs ask that the court grant them relief from its order of March 18, 2008. *See generally* Pls.' Mot. Although they acknowledge that the administrative proceedings have yet to conclude,[1] *see id.* at 1-2, they assert that the administrative judge refused to consider their constitutional claims, *see id.* at 2. "Therefore," the plaintiffs argue, "insofar as [they] were required to pursue their administrative remedies to exhaustion, they have no administrative remedies with regard to the violations of

---

[1]  More specifically, the plaintiffs represent that they filed a petition for review of their termination in the OEA on January 14, 2008, and that an administrative judge issued an "initial opinion and order" on June 22, 2009. *See* Pls.' Mot. at 2, 4. Either party may then appeal the administrative judge's decision, first to the Superior Court of the District of Columbia and then to the District of Columbia Court of Appeals. *See* D.C. CODE § 1-606.03(d). Thus, as both parties acknowledge, the administrative process is still ongoing. *See* Pls.' Mot. at 1-2; Defs.' Opp'n at 4-6.

their constitutional rights. This Court is the only open venue for them." *Id.* The plaintiffs ask that the court reopen, and then stay, this case while they exhaust their administrative remedies with respect to their state law tort claims. *See id.* The plaintiffs' request is premised on their concern that the statute of limitations on their claims will have run by the time their administrative remedies are exhausted.[2] *See id.* at 3.

The plaintiffs assert that they are entitled to relief from the court's March 2008 order under both Rule 60(b)(5) and Rule 60(b)(6). *See id.* at 3-4. Rule 60(b)(5) entitles them to relief, they maintain, because "applying [the March 2008 memorandum opinion and order] prospectively is no longer equitable" in that it may result in the running of the statute of limitations. *Id.* Likewise, the plaintiffs contend, the catch-all provision articulated in Rule 60(b)(6) entitles them to relief because they "would be severely prejudiced if the statute of limitations ran on their claims." *Id.* at 4.

The defendants oppose the plaintiffs' motion, arguing first that Rule 60(b)(5) applies only to judgments that "apply prospectively and thus require[] future consequences or implications." Defs.' Opp'n at 1. The defendants assert that in the court's March 2008 order, rather than prescribing a future course of conduct, the court simply dismissed the plaintiffs' complaint outright. *Id.* at 1-2. Accordingly, the defendants argue, the plaintiffs' reliance on Rule 60(b)(5) is misplaced. *Id.*

Turning their attention to Rule 60(b)(6), the defendants emphasize the stringent standard applied to requests for relief under this provision. *Id.* at 3. The defendants assert that the

---

[2] The plaintiffs correctly acknowledge that other judges in this district have equitably tolled statutes of limitations in cases in which the plaintiffs exhausted their administrative remedies before filing suit. *See* Pls.' Mot. at 2-3.

plaintiffs' motion constitutes an improper attempt to reargue a legal theory upon which the court has already ruled, namely, the contention that the plaintiffs need not exhaust their administrative remedies with respect to their state law claims before asserting constitutional claims in this court. *Id.* at 4-5.  Moreover, the defendants argue, the fact that the plaintiffs' request under Rule 60(b)(6) is based on their purported entitlement to equitable tolling is unavailing because the court is in no position to determine whether the statute of limitations should be equitably tolled before the plaintiffs have exhausted their administrative remedies.  *Id.* at 5-6.

The court firmly agrees with the defendants that the plaintiffs' request lacks merit.  As the court held in its March 2008 memorandum opinion, because the plaintiffs' state law tort claims and their constitutional claims "are 'premised on the same facts' and 'the administrative process [is] fully capable of granting full relief,'" the plaintiffs must exhaust their administrative remedies before bringing suit in this court.  Mem. Op. (Mar. 18, 2008) at 13 (citing *Nat'l Treasury Employees Union v. King*, 961 F.2d 240, 243 (D.C. Cir. 1992)).  "Were the court to decide the merits of the plaintiffs' constitutional claims now," the court explained, "it would prejudge local procedural questions pending before a local adjudicatory body."  *Id.* at 12.

The fact that the administrative judge recently refused to consider the plaintiffs' constitutional claims in the OEA proceedings, *see* Pls.' Mot. at 2, 4, does not alter this determination.  As the court stated in its March 2008 memorandum opinion, the plaintiffs are barred from asserting their constitutional claims in this court pending exhaustion of their administrative remedies not because the administrative proceeding may yield a ruling on those claims, but rather, because resolution of the state law claims may obviate the need for the court to rule on the constitutional claims.  *See* Mem. Op. (Mar. 18, 2008) at 12-13.

This principle is well-established. In *Wallace v. Lynn*, 507 F.2d 1186 (D.C. Cir. 1974), for example, the Circuit held that the plaintiffs, employees alleging that they had been unlawfully suspended, were required to exhaust their administrative remedies despite the fact that they were asserting constitutional claims over which the administrative adjudicatory body lacked jurisdiction. *Id.* at 1190-91. Indeed, the Circuit noted, "the very fact that constitutional issues [were] put forward constitute[d] a strong reason for not allowing . . . suit either to anticipate or take the place of" the administrative proceeding. *Id.* at 1190. Although the administrative body lacked the authority to render a decision on the plaintiffs' constitutional claims, "there [were] grounds on which [the plaintiffs] could succeed in nullifying the suspensions through the administrative process and eliminating any need for the courts to pass on the constitutional issues. If the administrative appeals open to [the plaintiffs] . . . [were] unsuccessful," the Circuit concluded, "the constitutional issues [would] remain alive and judicial intervention in this employment dispute [would] become appropriate at that time." *Id.* at 1190-91; *see also Am. Coalition for Competitive Trade v. Clinton*, 128 F.3d 761, 766 n.6 (D.C. Cir. 1997) (noting that, "[t]o be sure, administrative agencies . . . cannot resolve constitutional issues," and explaining that "the premise of administrative exhaustion requirements for petitioners with constitutional claims is that agencies may be able to otherwise address petitioners' objections, allowing the courts to avoid unnecessary constitutional decisions"); *Hoey v. District of Columbia*, 540 F. Supp. 2d 218, 227-29 (D.D.C. 2008) (dismissing the plaintiff's procedural due process claim because the plaintiff, a District of Columbia police officer, had failed to exhaust his administrative remedies in the OEA before commencing suit in this court).

The reasoning articulated in *Wallace* and its progeny applies equally to this action. To

explain why this is the case, the court can do no more than quote from its previous memorandum opinion and hope that the plaintiffs understand the court's directive more clearly the second time around:

> The plaintiffs' due process claims are predicated on the failure of the [defendants] to properly adhere to the CMPA's requirements for disciplinary actions. The CMPA provides a remedy for such claims: an appeal to OEA or resort to grievance arbitration. Allegations that District officials failed to comply with the procedural requirements for adverse actions against employees . . . may be raised in the course of challenging the adverse action. *See Dist. of Columbia v. Thompson*, 593 A.2d 621, 628 (D.C. 1991) (discussing how procedural inadequacies related to an adverse action, such as "allegedly inaccurate letters of warning," may be addressed under the CMPA) . . . . Were this court to attempt to resolve [those allegations] here, it would (1) deprive local adjudicatory apparati of their independent authority to rule as they deem fit; (2) ignore the expertise of local appellate institutions more familiar with their own governing sources of law; and (3) prematurely decide a case or controversy that might, if allowed to unfold at its own pace, resolve itself. The court refuses to do so.

Mem. Op. (Mar. 18, 2008) at 13-14. Put more simply, at this stage the plaintiffs are required to exhaust their administrative remedies with respect to their state law tort claims. If they do not prevail in the administrative proceeding, only then may they attempt to vindicate, in this court, the constitutional claims that are closely intertwined with their tort claims.

### IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion for relief from the order of March 18, 2008 and for leave to file a third amended complaint. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 27th day of January, 2010.

RICARDO M. URBINA<br>United States District Judge